UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re FRANKLIN BANK CORP.,<br>SECURITIES LITIGATION | )<br>)  CIVIL FILE NO.<br>)  4:08-CV-01810<br>)<br>)<br>)  CLASS ACTION |

LEAD PLAINTIFFS' MEMORANDUM RESPONSIVE TO THE COURT'S
ALLOWANCE OF ADDITIONAL BRIEFING REGARDING
THE MOTION FOR RELIEF FROM ORDER

## I.    PRELIMINARY STATEMENT

Lead Plaintiff, the Franklin Investor Group, tenders this Memorandum consistent with the Court's solicitation of additional briefing addressing the Motion for Relief from Order (the "Motion for Reconsideration") filed by the Harold Roucher Trust (the "Trust") on March 24, 2009. In the Motion for Reconsideration, notwithstanding that the Court has only recently designated the Franklin Investor Group as the Lead Plaintiff empowered to pursue all securities claims against Defendants under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA"), the Trust seeks appointment as a separate lead plaintiff with authorization to file yet another complaint on behalf of those who acquired the preferred stock of Franklin Bank Corp. ("Franklin") during the relevant Class Period. This sort of request is not uncommon, but courts applying the PSLRA have time and again rejected similar proposals made by the holders of "niche" securities. *See, e.g., Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150-51 (N.D. Cal. 1999). Instead, in situations in which it is advisable to add another party to a securities lawsuit so as to unquestionably

grant a lead plaintiff standing to litigate certain types of claims, authorities have sanctioned the filing of an amended complaint identifying new *named* – as opposed to *lead* – plaintiffs to cure this potential deficiency. *See, e.g., Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004) ("[T]he PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." (citation omitted)). This Court should do the same: Lead Plaintiff respectfully suggests that the Court should deny the Motion for Reconsideration in lieu of an Order setting a deadline for the submission of an amended complaint adding a preferred shareholder as a named plaintiff.

## II.   ARGUMENT

With the enactment of the PSLRA, one intent of Congress was to transfer "control of [securities] litigation to lead plaintiffs with substantial holdings [of] the securities of the issuer." *Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 70 (E.D.N.Y. 2000) (quotation omitted). When it breathed life into this objective, the national legislature was naturally aware that "the plaintiff with the largest financial interest [regularly would] not have standing to sue on all causes of action." *In re: Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002). That being so, it is only sensible that "[n]othing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case." *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728, at *10 (S.D.N.Y. Apr. 17, 2006) (quotation omitted). Quite to the contrary, "any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff – namely, to empower one or several investors with a major stake in the litigation to

2

exercise control over the litigation as a whole." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d

Cir. 2004). To overcome any arguments based on standing that defendants may eventually raise, a

lead plaintiff must only "construct[] a consolidated complaint that brings claims on behalf of a

number of named parties besides the Lead Plaintiffs themselves." *Global Crossing, Ltd. Sec. Litig.*,

313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003).[1]

Clearly, this widely accepted analysis flies directly in the face of the "relief" the Trust now

desires, and courts throughout the country have in no uncertain terms rejected virtually identical

attempts to flout the lead plaintiff process. *See, e.g., In re: XM Satellite Radio Holdings Sec. Litig.*,

237 F.R.D. 13, 20 (D.D.C. 2006) ("[T]he fact that plaintiffs might have different types of securities

does not require a separate class or co-lead plaintiffs because lead plaintiffs need not satisfy all

elements of standing with respect to the entire lawsuit under the PSLRA." (quotation omitted)); *In

re Smith Barney*, 2006 U.S. Dist. LEXIS 19728, at *11 ("Any requirement that a different lead

plaintiff be appointed to bring every single available claim would contravene the main purpose of

having a lead plaintiff . . . ." (quotation omitted)); *In re: Initial Pub. Offering*, 214 F.R.D. at 123

("[The notion that] the court should cobble together a lead plaintiff group that has standing to sue

on all possible causes of action . . . has been rejected repeatedly by courts in th[e Second] Circuit and

undermines the purpose of the PSLRA."); *In re Tyco Int'l, Ltd. Sec. Litig.*, No. 00-MD-1335-B, 2000

U.S. Dist. LEXIS 13390, at *25 n.14 (D.N.H. Aug. 17, 2000) ("[T]he [PSLRA] seems to

---

[1]Of course, until naming additional parties who acquired different types of securities during the class period, a lead plaintiff pursuing claims within the jurisdiction of the United States Court of Appeals for the Fifth Circuit cannot "seek relief on [their] behalf." *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 529 F. Supp. 2d 644, 723 (S.D. Tex. 2006); *see also In re U.S. Liquids Sec. Litig.*, Civil Action No. H-99-2785, 2002 U.S. Dist. LEXIS 26714, at *17 (S.D. Tex. Apr. 29, 2002). It is for this reason that Lead Plaintiff did not include in its original complaint claims for preferred shareholders.

3

contemplate, even in consolidated actions . . ., the appointment of a lead plaintiff for a single purported plaintiff class."); *Greenberg*, 80 F. Supp. 2d at 69-70 (refusing to appoint separate lead plaintiffs for multiple subclasses as "contrary to the unambiguous language in the [PSLRA]"); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999) ("[S]peculations about possible conflicts do not rebut the statutory presumption that one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories."). Again, in order to render it beyond dispute that a lead plaintiff has standing to advance the full panoply of securities claims against defendants, the majority approach allows for the preparation of an amended complaint specifying additional named plaintiffs. *See, e.g., Hevesi*, 366 F.3d at 83 ("[T]he PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class."); *In re Smith Barney*, 2006 U.S. Dist. LEXIS 19728, at *12 (confirming that "lead plaintiff may include additional named plaintiffs in this consolidated action" if additional representation is warranted); *In re: Initial Pub. Offering*, 214 F.R.D. at 122-23 (allowing amendment of complaints to, among other things, add named plaintiffs with standing to bring certain claims); *See generally Averdick v. Hutchison Tech., Inc.*, Civil File No. 05-2095 (MJD/SRN), 2006 U.S. Dist. LEXIS 47445, at *17-*18 (D. Minn. Feb. 9, 2006) (explaining difference between *named* plaintiffs and *lead* plaintiffs).

The Trust has shown absolutely no need for the Court in this case to depart from the mainstream of this nation's law.[2] Lead Plaintiff respectfully proposes that this Court deny the

---

[2]True enough, a palpable conflict between the holders of two classes of securities may counsel for the appointment of separate lead plaintiffs, but in such cases the interests of the diverse groups must be so divergent as to be "'apparent, imminent, and on an issue at the very heart of the suit.'" *In re Tyco*, 2000 U.S. Dist. LEXIS 13390, at *32 (quoting *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975)). The Trust's almost inconceivable speculation about the potential source of

4

Motion for Reconsideration and instead establish a deadline for the filing of an amended complaint adding a named plaintiff who acquired preferred shares of Franklin stock.

### III.    CONCLUSION

In essence, and as revealed by the preceding paragraphs, the Motion for Reconsideration asks this Court to take action that "would be contrary to the unambiguous language in the [PSLRA] and run counter to one of the stated purposes of the [statute] which is to minimize costs and to give control of the litigation to lead plaintiffs with substantial holdings [of] the securities of the issuer." *Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 70 (E.D.N.Y. 2000) (quotations omitted). The Court should decline this invitation,[3] and instead enter its Order setting a deadline for Lead Plaintiff to file an amended complaint adding a named plaintiff who acquired Franklin preferred stock during the Class Period.

Dated:  April 7, 2009.

---

conflicts in this action hardly fits this bill. (*See* Mot. Hr'g Tr., 30 ll. 5-11, Mar. 31, 2009 (supposing that conflict may arise if Franklin – a company currently in the process of liquidating – should ever return as a Defendant in this suit).) Moreover, and along these same lines, courts have generally rejected "speculations about possible conflicts" in this context. *See, e.g., Aronson*, 79 F. Supp. 2d at 1151. The Trust's wild theories here amount to nothing more than speculation, at best.

[3]It is also notable that, under the prevailing method for calculating relevant losses, the Trust's financial interest in Frankin securities is less than $15,000 (*see* Class Action Cert. of Jerry Roucher (Ex. to Class Action Compl. Violations Fed. Sec. Laws (Docket No. 1))), compared to the Lead Plaintiff's financial interest exceeding $650,000 (Order Designating Lead Pl. 3 (Docket No. 91)). The Trust's relatively meager holdings provide another reason to deny the Motion for Reconsideration. *See In re: XM Satellite Radio*, 237 F.R.D. at 20-21 (refusing to "fragment[] the litigation" based in part on the fact that niche plaintiff's "financial loss [was] so dwarfed by that of the stockholders").

Dated:  April 7, 2009

Respectfully Submitted,

**CAULEY WILLIAMS BATES**
 **BOZEMAN & PULLIAM, PLLC**

_____  by permission

J. Allen Carney
Arkansas Bar No. 94122
Admitted Pro Hac Vice
11311 Arcade Drive, Suite 200
Little Rock, Arkansas  72212
 (501) 312-8500 telephone
(501) 312-8505 facsimile

*Attorney in Charge for Lead Plaintiff*
*Franklin Investor Group*

Of counsel:

**CAULEY WILLIAMS BATES**
 **BOZEMAN & PULLIAM, PLLC**

Darrin Williams
Arkansas Bar No. 94069
Admitted Pro Hac Vice
Randall K. Pulliam
Arkansas Bar No. 98105
Texas Bar No. 24048058
Admitted Pro Hac Vice
11311 Arcade Drive, Suite 200
Little Rock, Arkansas  72212
 (501) 312-8500 telephone
(501) 312-8505 facsimile

and

Liaison Counsel:

**HAGANS BURDINE MONTGOMERY**
 **& RUSTAY, PC**

William Fred Hagans
State Bar No. 08685500
Federal Bar No. 2457

6

Jennifer Rustay
State Bar No. 24002124
Federal Bar No. 23980
3200 Travis, Fourth Floor
Houston, Texas 77006
Telephone: 713.222.2700
Telecopier: 713.547.4950

## CERTIFICATE OF SERVICE

I hereby certify that I have e-filed this pleading and accordingly forwarded a true and correct copy of the foregoing upon all known counsel pursuant to all applicable rules of procedure and/or The Southern District's Administrative Procedures for Electronic Filing in Civil and Criminal Cases.

_____
J. Allen Carney