UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THE HAROLD ROUCHER TRUST U/A DTD 09/21/72, et al, <br><br> Plaintiff, <br> v. <br><br> FRANKLIN BANK CORP., et al., <br><br> Defendant. | CIVIL ACTION NO. 4:08-cv-1810 |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion for Relief From Order. After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Plaintiff's Motion should be granted in part.

### I.  BACKGROUND

The underlying dispute is a class action suit alleging securities fraud against Franklin Bank Corp ("Franklin"). In November 2008, another court in this district appointed The Franklin Investor Group ("the Investor Group") as the lead plaintiff pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4 ("the November Order"). (Doc. No. 91.)  In reaching its conclusion, that court considered the fact that the Investor Group had the most net shares purchased and net funds expended of any other investment group. That court also found that the Investor Group satisfied the Federal Rule of Civil Procedure 23(a) requirements for a class representative.

Shortly after the November Order, the Investor Group filed a Consolidated Amended Complaint in which it limited the class of plaintiffs to common stockholders of the bank instead of allowing all securities purchasers to participate. (Doc. No. 100.) This limitation removed the Harold Roucher Trust ("the Trust"), and all other preferred stockholders, from the case. The Harold Roucher Trust believes that this was not a careless mistake, but rather a conscious decision by the Investor Group to limit the class to common stockholders. The Trust argues that the Investor Group misled it and other purchasers of Franklin preferred stock during the class period by repeatedly stating that it would represent all purchasers of Franklin securities. Further, the Trust alleges that, because the case involves a limited fund, there is a conflict of interest between the preferred and common stockholders. As a result, the Trust seeks to be appointed lead plaintiff for the preferred stockholders.

Citing Fifth Circuit precedent, the Investor Group argues that it did not assert claims on behalf of the preferred stockholders in the Consolidated Amended Complaint because it lacks standing to prosecute those claims. The Investor Group then argues that the Trust's Motion is premature, and represents that, in the Enron litigation, the lead plaintiff was given three years to find an additional plaintiff with standing to bring claims on behalf of the foreign debt securities holders. The Investor Group also contends that allowing the addition of a second lead plaintiff would thwart the purpose of the PSLRA and would cause additional expense to Plaintiffs. As a solution, the Investor Group Investor Group asks that it be granted leave to file a Second Amended Complaint to add the preferred stockholders' claims and the Trust as an additional plaintiff.

**II.    ANALYSIS**

### A. Appointment of Lead Plaintiff

Under 15 U.S.C. § 78u-4(a)(3)(B)(i) of the PSLRA, in class actions brought under federal securities law, "the court shall consider any motion made by a purported class member" in determining the adequacy of a proposed lead plaintiff to oversee the class action. *In re Enron Corporation Securities Litigation*, 206 F.R.D. 427, 439 (S.D.Tex. 2002). The Securities Exchange Act of 1934 requires the Court to adopt a rebuttable presumption that the most adequate plaintiff is the person or group who:

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "Furthermore, 'the presumption [of the adequacy of the plaintiff with the largest financial interest in the outcome of the litigation] described in [15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)] may be rebutted only upon proof by a member of the purported plaintiff class that the proposed individual or entity will not fairly and adequately protect the interests of the class or that he/she/or it is subject to unique defenses that render [him/her/or it] incapable of adequately representing the class." *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)) (alterations in original)). "Under ... the Exchange Act, therefore, the lead plaintiff must possess not only the largest financial interest in the outcome of the litigation, but also must meet the requirements of Federal Rule of Civil Procedure 23." *In re Enron*, 206 F.R.D. at 441. Under Rule 23, in order to serve as a class representative, a party must demonstrate that:

>(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 26.

The fourth prong, the adequacy inquiry, "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Berger v. Compaq Computer Corporation*, 257 F.3d 475, 479-480 (5th Cir. 2001) (quoting *Amcham Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "Furthermore, because absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times. Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only where those differences create conflicts between the named plaintiffs' and the class members' interests." *Id.* at 480.

In instances where conflicts of interest exist between different groups of plaintiffs, the court can appoint a separate lead plaintiff and lead counsel for distinct groups of claimants. *In re Enron*, 206 F.R.D. at 444 (collecting cases). The Court is required to ensure that independent classes with conflicts are protected by subdivision and separate representation. *Id.* (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999); *Amchem Prods. v. Windsor*, 521 U.S. at 626-627). A sister court has addressed a dispute between common and preferred stockholders who sought to have separate lead plaintiffs in a securities matter. *See In re Enron*, 206 F.R.D. at 445-446. In that case, the preferred stockholders alleged possible conflicts of interest to justify the appointment of a separate lead counsel. The district court rejected their request, noting that, at that early stage in

the litigation, there was only a possibility of a conflict of interest, all purchasers' claims arose out of the same company misrepresentations and omissions, and the ongoing bankruptcy proceeding would control the priority of payment to the securities holders. *Id.* In the instant case, the Trust has made a stronger argument that a conflict of interest presently exists between the preferred and common stockholders. For instance, it argues that the Investor Group will not have an incentive to pursue the Securities Act claims, but that the funding of the resolution of these claims will come from the same insurance proceeds used to fund the Exchange Act claims pursued by the Investor Group. Further, the trust argues that it is in the interest of the preferred, but not the common, stockholders to oppose Defendant's motion in the Delaware bankruptcy court to allow payment of defense costs from the Directors & Officers' Liability Insurance. The Trust cites authorities from other district courts which appointed a separate lead plaintiff for the common stockholders even when the preferred stockholders suffered a much greater financial loss. *Zirkin v. Quanta, Captial Holdings, Ltd.*, No. 1:07-cv-00851 (S.D.N.Y. May 7, 2007) (Doc. No. 111, Ex. 3-4.)

The Investor Group's filing of the Consolidated Amended Complaint further demonstrates the need for a separate lead plaintiff in this matter. As the Investor Group admits in its response to the Trust's Motion, it did not include the preferred stockholders in the amended complaint because it does not have standing to pursue their claims. The Investor Group argues that the Trust's Motion is premature; it then argues that, in the *Enron* litigation, the lead plaintiff was given three years to find an additional plaintiff with standing to bring claims on behalf of the foreign debt securities holders. As a solution, the Investor Group proposes that it be granted leave to file a Second Amended

5

Complaint adding the preferred stockholders' claims and adding the Trust as an additional plaintiff.

The Court does not consider this proposed solution to be satisfactory. While other courts have found that lead plaintiffs who lack standing to pursue certain claims can appoint class representatives, *see In Re Intial Public Offering Securities Litigation*, 214 F.R.D. 117, 124 (S.D.N.Y. 2002), the Court cannot force the Trust to serve in that capacity. The Investor Group's willingness to drop the claims of the preferred stockholders from its Consolidated Amended Complaint, without notice, overcomes the presumption that the plaintiff that suffered the greatest financial loss should serve as lead plaintiff. Further, the Court disagrees with the Investor Group's interpretation of the language in the Enron case—the district court in that case did not grant the lead plaintiff three years to find a plaintiff with standing, but rather the lead plaintiff had three years to do so while the litigation was pending, and failed. *See In re Enron Corp. Securities*, 529 F.Supp.2d 644, 724 (S.D.Tex. 2006).

### III. CONCLUSION

For these reasons, the Trust's Motion is **GRANTED IN PART** as the Court will allow the preferred stockholders to appoint a separate lead plaintiff. The Trust should provide written submissions demonstrating its "willingness, experience, and ability to handle class actions, to take an active role in and control of the litigation, and to protect the interests of absent members." *Id.* (citations omitted).

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 6th day of July, 2009.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**