UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re FRANKLIN BANK CORP.** **SECURITIES LITIGATION** | § § | |
| **The HAROLD ROUCHER TRUST U/A** **DTD 09/21/72, Individually and On Behalf of** **All Others Similarly Situated,** | § § § § | **C.A. NO.: 4:08-cv-01810** **CLASS ACTION** |
| **Plaintiffs** | § § | |
| **VS.** | § § | |
| **RBC CAPITAL MARKETS CORP., et al.,** | § § § | |
| **Defendants** | § | |

**DEFENDANT DELOITTE & TOUCHE LLP'S MOTION TO DISMISS WITH
PREJUDICE PLAINTIFFS' AMENDED CONSOLIDATED PREFERRED STOCK
PURCHASER COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

CRUSE, SCOTT, HENDERSON & ALLEN, LLP
George W. "Billy" Shepherd
Texas Bar No. 18219700
S.D. Tex. I.D. No. 10666
2777 Allen Parkway, 7th Floor
Houston, Texas 77019
Telephone:   (713) 650-6600
Facsimile:   (713) 650-1720
Email: bshepherd@crusescott.com

LATHAM & WATKINS LLP
Peter A. Wald (*pro hac vice*)
James J. Farrell (*pro hac vice*)
Terri L. Lilley (*pro hac vice*)
355 South Grand Ave.
Los Angeles, CA 90071-1560
Telephone:   (213) 485-1234
Facsimile:   (213) 891-8763

ATTORNEYS FOR DEFENDANT
DELOITTE & TOUCHE LLP

## TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF PROCEEDING ....................................................................1

II.  ISSUES TO BE RULED ON/STANDARD OF REVIEW ..............................................2

     A.   Standards for Deciding the Issue ....................................................................2

     B.   Standard on Appellate Review ........................................................................3

III. PRELIMINARY STATEMENT ....................................................................................4

IV.  FACTUAL AND PROCEDURAL BACKGROUND .....................................................6

     A.   D&T's Role As Independent Auditor ..............................................................7

     B.   OIG Investigation ...........................................................................................9

     C.   The Audit Committee Investigation ................................................................9

     D.   Procedural History ........................................................................................11

V.   SUMMARY OF THE ARGUMENT ...........................................................................13

VI.  ARGUMENT AND AUTHORITIES ...........................................................................14

     A.   The PSLRA Requires That the Claim Against D&T Be Dismissed for Failure to
          Plead a Strong Inference of Scienter ..............................................................14

     B.   To Plead Scienter, Plaintiffs Must Allege Facts Demonstrating the Auditor
          Conducted "No Audit at All" .........................................................................15

     C.   The Few Allegations Addressing D&T's Actions Fail to Establish Scienter ........16

     D.   Plaintiffs' "Scienter Allegations" Omit D&T ...............................................19

          1.   The Wolfe Letter ................................................................................20

          2.   The FDIC Examination Report ............................................................21

          3.   The OIG Report ...................................................................................21

VII. CONCLUSION ............................................................................................................23

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes, Inc.*,
292 F.3d 424 (5th Cir. 2002) ........................................................................ 17

*Bily v. Arthur Young & Co.*,
3 Cal 4th 370 (1992) ...................................................................................... 8

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*,
497 F.3d 546 (5th Cir. 2007) ........................................................................ 3

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*,
511 U.S. 164, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994) ............................ 16

*Deehaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*,
454 F.3d 1168 (10th Cir. 2006) .................................................................... 8

*Elam v. Neidorff*,
544 F.3d 921 (8th Cir. 2008) ........................................................................ 5

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976) ................................ 2

*Fener v. Operating Eng'rs Constr. Indiv. & Misc. Pension Fund (Local 66)*,
No. 08-10576, 2009 WL 2450674 (5th Cir. Aug. 12, 2009) .......................... 6

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) ........................................................................ 17

*Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) ................................................................ 2, 17, 19

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ........................................................................ 19

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ........................................................................ 5

*Higgenbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ........................................................................ 5

*In re Dell, Inc. Sec. Litig.*,
591 F. Supp. 2d 877 (W.D. Tex. 2008) ................................................ passim

*In re Downey Sec. Litig.*,
No. CV-08-3261-JFW (RZx), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ........ 19

LA\2049714.9

**INDEX OF AUTHORITIES** (continued)

Page(s)

*In re Enron Corp. Sec., Derivative & MDL-1446 "ERISA" Litig.,*
  Nos. H-01-3624 & H-04-0088, 2005 WL 3704688 (S.D. Tex. Dec. 5, 2005) ................... 8

*In re Ikon Office Sol'ns, Inc.,*
  277 F.3d 658 (3d Cir. 2002) ............................................................. 8

*In re Impac Mortgage Holdings, Inc. Sec. Litig.,*
  554 F. Supp. 2d 1083 (C.D. Cal. 2008) ................................................ 8

*In re Integrated Elec. Servs., Inc. Sec. Litig.,*
  No. Civ.A. 4:04-CV-3342, 2006 WL 54021 (S.D. Tex. Jan. 10, 2006) .......................... 18

*In re K-Tel Int'l, Inc. Sec. Litig.,*
  300 F.3d 881 (8th Cir. 2002) .......................................................... 6

*In re Marsh & McLennan Cos., Inc. Sec. Litig.,*
  501 F. Supp. 2d 452 (S.D.N.Y. 2006) ........................................... 8, 16, 20

*In re SeraCare Life Scis., Inc.,*
  No. 05-CV-2335-H (CAB), 2007 WL 935583 (S.D. Cal. Mar. 19, 2007) ...................... 16

*In re Worldcom, Inc. Sec. Litig.,*
  346 F. Supp. 2d 628 (S.D.N.Y. 2004) ................................................... 8

*In re Worlds of Wonder Sec. Litig.,*
  35 F.3d 1407 (9th Cir. 1994) ....................................................... 3, 15

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group Inc.,*
  537 F.3d 527 (5th Cir. 2008) ................................................... passim

*Konkol v. Diebold, Inc.,*
  590 F.3d 390 (6th Cir. 2009) .......................................................... 5

*Kramer v. Smith Barney,*
  80 F.3d 1080 (5th Cir. 1996) .......................................................... 4

*LaRoe v. Blue Cross Blue Shield,*
  No. 3:03-CV-2381-K, 2004 WL 1585842 (N.D. Tex. July 13, 2004) ............................ 7

*Lattanzio v. Deloitte & Touche LLP,*
  476 F.3d 147 (2d Cir. 2007) ....................................................... 16, 20

*Melder v. Morris,*
  27 F.3d 1097 (5th Cir. 1994) ......................................................... 18

LA\2049714.9

**INDEX OF AUTHORITIES** (continued)

Page(s)

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
    540 F.3d 1049 (9th Cir. 2008) ........................................................................ 14

*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.,*
    487 F.3d 261 (5th Cir. 2007) .......................................................................... 14

*Papasan v. Allain,*
    478 U.S. 265, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)........................... 7, 17

*Philadelphia v. Fleming Cos., Inc.,*
    264 F.3d 1245 (10th Cir. 2001) ....................................................................... 5

*Plotkin v. IP Axess, Inc.,*
    407 F.3d 690 (5th Cir. 2005) .............................................................. 7, 14, 17

*PR Diamonds, Inc. v. Chandler,*
    364 F.3d 671 (6th Cir. 2004) ............................................................. 3, 15, 16

*R2 Invs. LDC v. Phillips,*
    401 F.3d 638 (5th Cir. 2005) ........................................................................... 2

*Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.,*
    482 F.3d 372 (5th Cir. 2007) ......................................................................... 16

*Rodríguez-Ortiz v. Margo Caribe, Inc.,*
    490 F.3d 92 (1st Cir. 2007)............................................................................. 5

*Rosenzweig v. Azurix Corp.,*
    332 F.3d 854 (5th Cir. 2003) ......................................................................... 16

*Simons v. Dynacq Healthcare, Inc.,*
    No. 03-5825, 2005 WL 1801946 (S.D. Tex. July 28, 2005) .................... passim

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,*
    365 F.3d 353 (5th Cir. 2004) ...................................................................... 2, 5

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
    552 U.S. 148, 128 S. Ct. 761 L. Ed. 2d 627 (2008)........................................ 16

*Tellabs, Inc. v. Makor Issues & Rights Ltd.,*
    551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)........................ passim

*United States v. N. Am. Constr. Corp.,*
    173 F. Supp. 2d 601 (S.D. Tex. 2001) ............................................................. 7

**INDEX OF AUTHORITIES** (continued)

<b>Page(s)</b>

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998) ................................................................................................ 16

**Statutes**

15 U.S.C. § 77k ................................................................................................................... 12

15 U.S.C. § 77o ................................................................................................................... 12

15 U.S.C. § 78j ..................................................................................................................... 1

15 U.S.C. § 78u-4 ............................................................................................... 2, 14, 16, 19

**Other Authorities**

H.R. Rep. No. 104-369 (1995) (Conf. Rep.),
  *reprinted in* 1995 U.S.C.C.A.N. 730 .............................................................................. 14

**Rules**

Federal Rule of Civil Procedure 12 ...................................................................................... 2

Federal Rule of Civil Procedure 9 ................................................................................... 2, 14

**Regulations**

17 C.F.R. § 240.10b-5 .......................................................................................................... 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re FRANKLIN BANK CORP. SECURITIES LITIGATION | § § § | |
| The HAROLD ROUCHER TRUST U/A DTD 09/21/72, Individually and On Behalf of All Others Similarly Situated, | § § § § § | C.A. NO.: 4:08-cv-01810 CLASS ACTION |
| Plaintiffs | § § | |
| VS. | § § | |
| RBC CAPITAL MARKETS CORP., et al., | § § | |
| Defendants | § § | |

**DEFENDANT DELOITTE & TOUCHE LLP'S MOTION TO DISMISS WITH
PREJUDICE PLAINTIFFS' AMENDED CONSOLIDATED PREFERRED STOCK
PURCHASER COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

## I.   NATURE AND STAGE OF PROCEEDING

Lead Plaintiff Harold Roucher Trust U/A DTD 09/21/72 ("Roucher Trust") has belatedly

asserted a claim for securities fraud against Defendant Deloitte & Touche LLP ("D&T") under

Section 10(b) of the Exchange Act of 1934[1] and Rule 10b-5[2] thereunder, on behalf of itself and

all others (collectively, "Plaintiffs") who purchased Series A Non-Cumulative Perpetual

Preferred Stock of Franklin Bank Corp. ("Franklin Bank" or the "Bank") between January 31,

2007 and August 6, 2008.

This action was first filed on June 6, 2008.  D&T was not named as a defendant in any of

the initial actions; nor in the consolidated complaint filed by Franklin Investor Group in March

2009; nor in a parallel action filed by Roucher Trust two months later.  D&T was not named as a

defendant until August 11, 2009, in the Preferred Stock Purchaser Complaint (the "Aug. 11

---

[1]        15 U.S.C. § 78j(b).

[2]        17 C.F.R. § 240.10b-5.

Complaint"), when the Court allowed Roucher Trust to bring claims, as a separate lead plaintiff, on behalf of purchasers of Franklin Bank's preferred stock whose claims had been abandoned by Franklin Investor Group.  Roucher Trust filed an Amended Consolidated Preferred Stock Purchaser Complaint (the "Complaint")[3] on December 22, 2009, by stipulation of the parties.

D&T respectfully submits this Motion to Dismiss with Prejudice Plaintiffs' Complaint for failure to meet the stringent pleading standards necessary to state a claim against D&T.

## II.   ISSUES TO BE RULED ON/STANDARD OF REVIEW

The single issue here is whether Plaintiffs' 10(b) claim against D&T should be dismissed under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim because the Complaint fails the stringent pleading standards of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[4]

### A.   Standards for Deciding the Issue

To state a securities fraud claim, a plaintiff must, *inter alia*, allege with specificity facts sufficient to establish that the defendant acted with scienter as to "each act or omission alleged." 15 U.S.C. § 78u-4(b)(2); *Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009).  Under controlling precedent, a defendant acted with scienter if it made a false statement with the "intent to deceive, manipulate, or defraud" or with "severe recklessness in which the danger of misleading buyers or sellers [of the underlying security wa]s either known to the defendant or [wa]s so obvious that the defendant must have been aware of it." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005); *Southland Sec. Corp v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (same); *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12, 96 S. Ct. 1375, 1381, 47 L. Ed. 2d 668, 677 (1976) (defining scienter as a "mental state embracing intent to deceive, manipulate, or defraud").

---

[3]    Unless otherwise specified, all instances of "¶ __" or "¶¶ __" refer to numbered paragraphs of the Complaint; all internal citations and quotation marks are omitted; and all elisions, emphases, or modifications within quotations are added.

[4]    15 U.S.C. § 78u-4.

That standard is "especially stringent when the claim is made, as it is here, against an outside auditor." *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 899 (W.D. Tex. 2008) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 693 (6th Cir. 2004)). This is because courts recognize that it rarely makes sense for an independent auditor to risk its valuable reputation by participating in a fraud from which only the auditor's client might benefit. *Simons v. Dynacq Healthcare, Inc.*, No. 03-5825, 2005 WL 1801946, at *3 (S.D. Tex. July 28, 2005) ("the more logical inference is that [an auditor] would go to great effort to avoid engaging in anything resembling securities fraud"); *see also In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427 n.7 (9th Cir. 1994) ("It is highly improbable that an accountant would risk surrendering a valuable reputation for honesty and careful work by participating in a fraud"). Indeed, the degree of recklessness necessary to plead scienter of an independent auditor "entails a mental state so culpable that it approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 899-900 (alteration in original) (quoting *PR Diamonds*, 364 F.3d at 693). Mere deviation from accounting or auditing principles simply is not enough. *Id.*

The Supreme Court recently emphasized that the inference of scienter must be "more than merely 'reasonable' or 'permissible' – it must be cogent and compelling." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2499, 2510, 168 L. Ed. 2d 179, 193 (2007) ("*Tellabs*"). Indeed, the inference must be "at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324; *see also Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 551 (5th Cir. 2007) (same). Thus, applying the PSLRA standard requires courts to weigh competing inferences – including nonculpable explanations for the alleged conduct – and determine which is more plausible. *Tellabs*, 551 U.S. at 314; *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group Inc.*, 537 F.3d 527, 532-533 (5th Cir. 2008).

### B.     Standard on Appellate Review

A district court's decision on a motion to dismiss under Rule 12(b)(6) is reviewed *de*

*novo. Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533 (reviewing *de novo* and reversing district court's denial of a motion to dismiss securities fraud action where complaint failed to allege scienter).

## III.   PRELIMINARY STATEMENT

Plaintiff's claim against D&T is based on alleged material misrepresentations in two documents: D&T's "Report of Independent Registered Accounting Firm"[5] on Franklin Bank's 2006 consolidated financial statements[6] and its "Attestation Report of Independent Registered Public Accounting Firm"[7] on "Management's Report on Internal Controls Over Financial Reporting" prepared by Franklin Bank.  Both the 2006 Audit Report and the 2006 Attestation Report were issued on March 14, 2007.  Judged by PSLRA pleading standards, Plaintiffs' Complaint falls far short, offering no facts from which the Court could infer that D&T acted with scienter in preparing either the 2006 Audit Report or the 2006 Attestation Report.  In the more than ten pages of the Complaint devoted to alleging scienter, D&T is never even mentioned.  (Compl. pp. 47-58.)  Moreover, those allegations speak to purported wrongdoing that took place in 2007 and 2008 – years for which D&T issued neither an audit report nor an attestation report.  Finally, even if everything alleged regarding D&T's actions is taken as true and construed liberally in Plaintiffs' favor, it suggests nothing more than that D&T's 2006 Audit and/or Attestation Report turned out to be incorrect.  Nowhere is a single fact alleged that suggests D&T intended its auditing work, either on Franklin Bank's 2006 consolidated financial statements or on the Bank's 2006 management review of its internal controls over financial reporting, to aid Franklin Bank's purported securities fraud in 2007-08.  In sum, the Complaint presents a classic (and impermissible) endeavor in pleading fraud by hindsight[8] – an unabashed

---

[5]      Hereinafter, "2006 Audit Report."

[6]      For ease of reference, this brief will refer to Franklin Bank's consolidated financial statements as "financial statements."

[7]      Hereinafter, "2006 Attestation Report."

[8]      The practice of pleading "fraud by hindsight" – asking the court to infer earlier guilty knowledge from circumstances that later came to pass – has been rejected repeatedly as

LA\2049714.9

attempt to make D&T the insurer for losses that Plaintiffs allege they experienced more than two years after D&T last completed an audit of Franklin Bank's financial statements.

When the real estate market declined sharply and unexpectedly in 2007 and 2008, Franklin Bank purportedly began efforts to mask the impact of rising defaults and foreclosures on the Bank's financial statements and to conceal the consequent rapid erosion in the quality of the Bank's real estate based assets. Finally, in November 2008, Franklin Bank failed, as the FDIC's Office of the Inspector General ("OIG") would later determine, due to mismanagement.

The Complaint challenges a host of statements made by Franklin Bank and its executives during that tumultuous eighteen-month period – statements that appeared in Franklin Bank's unaudited reports of its financial performance during *2007*, a year for which D&T issued no audit report.[9] Yet the Complaint challenges only two statements made by D&T – the *2006* Audit and Attestation Reports. Because D&T is accountable under the securities laws only for its own statements, the overwhelming majority of the allegations in the Complaint simply have no bearing on the single 10(b) claim against D&T.

Plaintiffs never allege anything about how D&T conducted its audit of Franklin Bank's

---

inadequate to meet PSLRA pleading standards. *Tellabs, Inc.*, 551 U.S. at 320-22 (observing that the Second Circuit formulated the "strong inference" scienter pleading standard as a means to "ward off allegations of fraud by hindsight" and that when it enacted the PSLRA, Congress adopted the Second Circuit standard); *see also Southland Sec. Corp.*, 365 F.3d at 383 ("fraud cannot be proved by hindsight"); *Konkol v. Diebold, Inc.*, 590 F.3d 390, 403 (6th Cir. 2009) (rejecting hindsight allegation that "the fact that something turned out badly must mean defendant knew earlier that it would turn out badly"); *Elam v. Neidorff*, 544 F.3d 921, 930 (8th Cir. 2008) (no scienter where "plaintiffs' allegations rest on nothing more than hindsight"); *Higgenbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 759-60 (7th Cir. 2007) (refusing to infer scienter based on hindsight allegations); *Rodríguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 97 (1st Cir. 2007) (rejecting allegations that "essentially inferr[ed] earlier knowledge based only on the situation that later came to pass"); *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (PSLRA intended to "put an end to the practice of pleading fraud by hindsight"); *Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1260 (10th Cir. 2001) (hindsight pleading does not establish scienter under recklessness standard).

[9]     D&T was still working to complete its audit of the Bank's 2007 financial statements when federal regulators took over the Bank in November 2008. As a result, D&T never reached any conclusions regarding the accuracy of the Bank's 2007 financial statements and never issued an audit report on those financial statements.

2006 financial statements.  They identify no specific missteps in the 2006 audit process and no audit procedures that should have been performed but were not.  Nor do they identify a single incriminating fact that D&T allegedly learned during the course of its audit work but failed to consider properly.  Plaintiffs' theory appears to be that merely because D&T audited the Bank's financial statements for 2006, which later were expected to be restated, it should, for that reason alone, compensate Franklin Bank's preferred stockholders for money they claim to have lost when the Bank failed in November 2008.  But the securities laws are not intended to be a "scheme of investor's insurance,"[10] and to plead the scienter necessary to state a securities fraud claim against an independent auditor such as D&T, Plaintiffs must allege facts demonstrating that the audit work underlying D&T's 2006 Audit and Attestation Reports was so deficient that it amounted to "no audit at all."[11]  Plaintiffs' allegations do not suggest and certainly do not raise a *strong inference* of any such thing.  Instead of pleading facts suggesting misdeeds by D&T, the Complaint relies on allegations – like those courts have rejected repeatedly as inadequate – that D&T *must* have performed its audit poorly because it may have failed to ferret out possible errors in the Bank's application of Generally Accepted Accounting Principles.[12]

Because the Complaint neither pleads a strong inference of scienter as to D&T nor mentions any fact that could form the basis for an improved pleading, the single fraud claim belatedly brought against D&T should be dismissed with prejudice.

## IV.   FACTUAL AND PROCEDURAL BACKGROUND[13]

---

[10]    *Fener v. Operating Eng'rs Constr. Indus. & Misc. Pension Fund (Local 66)*, 579 F.3d 401, 411 (5th Cir. 2008).

[11]    *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 900.

[12]    Generally Accepted Accounting Principles ("GAAP") "are the official standards adopted by the American Institute of Certified Public Accountants ('the AICPA'), a private professional association, through three successor groups it established:  The Committee on Accounting Procedure, the Accounting Principles Board ('APB'), and the Financial Accounting Standards ('FAS') published by the [Financial Accounting Standards Board]."  *In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889-90 (8th Cir. 2002).

[13]    For purposes of this motion to dismiss, D&T assumes the truth of factual allegations in the Complaint, unless contradicted by documents filed with the SEC and relied upon or incorporated by reference in the Complaint.  *LaRoe v. Blue Cross Blue Shield*, No. 3:03-CV-

Franklin Bank was a state-chartered savings bank, headquartered in Houston, that was established in 1987 by the Texas Department of Savings and Mortgage Lending ("Texas DSML") and insured by the FDIC. (RJN, Ex. B at 2.) It ultimately grew to operate forty-six full-service branches throughout Texas, with commercial loan offices in six states and forty-two mortgage banking offices in twenty-two states. (*Id.*) In 2007 and 2008, however, the Bank began to experience significant delinquencies and losses, from which it was unable to recover. (*Id.* at 12.) On November 7, 2008, the Texas DSML closed the Bank and named the FDIC as receiver. (*Id.* at 1; ¶ 37.) The Bank is being liquidated in Chapter 7 bankruptcy proceedings in the District of Delaware. (¶ 10.)

## A.    D&T's Role As Independent Auditor

D&T was named belatedly as a defendant in this action solely because it was the independent auditor of Franklin Bank's 2006 financial statements. (¶ 22; *see also infra* Part IV.D.) The 2006 financial statements and D&T, however, play only marginal roles in this litigation, which concerns issues that first arose in 2007 and 2008. D&T never issued an opinion on Franklin Bank's 2007 financial statements, which form the centerpiece of this litigation. The Audit Committee's investigation of *unaudited* 2007 financial statements ultimately resulted in a conclusion by the Bank that its 2006 audited financials also would require restatement, albeit in a much smaller amount than even a single quarter of the unaudited 2007 financials. (RJN, Ex. C at 2-3, 6-8; *see infra* Ex. A.)

Even if this case were focused on the 2006 financial statements – and it is not – D&T's issuance of an opinion on those financial statements, without more, is no basis for a fraud claim.

---

2381-K, 2004 WL 1585842, at *1 (N.D. Tex. July 13, 2004) ("allegations which are contradicted by the facts pleaded or set out in the exhibits attached to or incorporated in the pleading" need not be accepted as true); *United States v. N. Am. Constr. Corp.*, 173 F. Supp. 2d 601, 617 (S.D. Tex. 2001) (same). D&T does not – and the Court should not – accept as true Plaintiffs' conclusory assertions of fact or law. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L. Ed. 2d 209, 233 (1986) ("a legal conclusion couched as a factual allegation" need not be accepted as true); *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("conclusory allegations, unwarranted factual inferences, or legal conclusions" need not be accepted as true).

LA\2049714.9

That is because the issuance of an unqualified opinion by an auditor is no "guarantee that a client's accounts and financial statements are correct," but "certifies *only* that [the auditor] exercised appropriate, not flawless, levels of professional care and judgment"[14] in conducting the audit in accordance with Generally Accepted Auditing Standards.[15] An independent auditor does not prepare the audited company's financial statements. It only expresses an opinion on them. The financial statements are prepared by the audited company.[16] Thus, as is customary, Franklin Bank prepared its own financial statements and bore the responsibility for ensuring that its financial reporting conformed with GAAP. D&T's role was limited to auditing the 2006 financial statements and providing an opinion with respect to those statements.

In addition to its 2006 Audit Report, D&T's 2006 Attestation Report stated that it had audited the effectiveness of Franklin Bank's internal control over its financial reporting, concluding that as of December 31, 2006, the Bank "maintained effective internal control over financial reporting." (¶ 47.) D&T attested only to the effectiveness of Franklin Bank's internal controls over financial reporting. It did not opine on the relative safety or risk of the Bank's business strategy, which the OIG (in 2009) found had led to the Bank's demise.[17]

---

[14]      *In re Ikon Office Sol'ns, Inc.*, 277 F.3d 658, 673 (3d Cir. 2002); *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1174 (10th Cir. 2006).

[15]      Generally Accepted Auditing Standards ("GAAS") are the "auditing standards with which an auditor must comply in performing its annual audit." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, Nos. H-01-3624 & H-04-0088, 2005 WL 3704688, at *18 (S.D. Tex. Dec. 5, 2005).

[16]      *Id.* at *18 ("While financial statements are prepared by the management of a company, an accountant serving as the company's auditor may give an opinion as to whether the financial statements have been presented in conformity with [generally accepted accounting principles ("GAAP")].") (alteration in original) (quoting *In re Worldcom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 664 (S.D.N.Y. 2004))); *see also Bily v. Arthur Young & Co.*, 3 Cal 4th 370, 380-84, 399 (1992) (discussing independent auditor's limited role and noting, "An auditor is a watchdog, not a bloodhound.").

[17]      *See, e.g., In re Impac Mortgage Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1100-01 (C.D. Cal. 2008) (underwriting practices not encompassed in internal controls over financial reporting); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 489 (S.D.N.Y. 2006) ("to make the auditor responsible for its client's off-balance sheet misconduct extends the accountant's responsibility beyond the scope of the auditing relationship").

### B.   OIG Investigation

As part of its administrative responsibilities after the Bank's failure, the OIG conducted a material loss review to determine why Franklin Bank failed.  Plaintiff relies heavily on this OIG Report, but selectively quotes from it to omit the key conclusions, which establish that the Bank's demise had nothing to do with any alleged wrongdoing by D&T.  The OIG attributed Franklin Bank's failure to poor management.  (RJN, Ex. B at 3 ("Overall, Franklin failed due to [a] high-risk business strategy.").)  The OIG determined that Franklin Bank failed because it invested in risky loans; relied on expensive and risky funding; and was unprepared to weather a declining economic environment.  (*Id.*)  When the economy declined sharply in 2007 and 2008, the Bank was unable to survive.  (*Id.*)

The OIG Report also noted that more aggressive FDIC supervision might have prevented the Bank's failure or mitigated the agency's losses.  The OIG recognized that the "FDIC and [Texas] DSML performed timely joint safety and soundness examinations," in which the Bank received high ratings until October 2007, when its rating first slipped, indicating increasing risk. (*Id.* at 11.)  Significantly, this first sign of trouble occurred seven months *after* D&T issued the 2006 Audit and Attestation Reports which are the sole basis for Plaintiffs' claim against D&T. In July 2008, the joint safety and soundness examination of Franklin Bank resulted in the Bank's rating being downgraded further, "indicating extremely unsafe and unsound practices or conditions, critically deficient performance, and inadequate risk management practices."  (*Id.*) The OIG found that the FDIC had not recognized the risk posed by Franklin Bank's loan portfolio and had not timely identified problems with loan administration – the Bank's "risk profile and asset quality weaknesses became evident only after the real estate market deteriorated and significant delinquencies and losses occurred, *starting in 2007*."  (*Id.* at 12.)  Thus, according to the OIG, the problems that caused the Bank's demise were not identified until well after D&T's last audit report.

### C.   The Audit Committee Investigation

In addition to the problems that surfaced as the economy declined, on February 19, 2008,

Craig Wolfe, vice president of loss mitigation at Franklin Bank, sent a letter (the "Wolfe Letter") to the Bank's Internal Audit Department.  (¶ 82 & Ex. 2 at 1.)  In his letter, Mr. Wolfe reported a number of recently discovered issues that he believed indicated problems with the Bank's financial reporting and internal controls, adding that he was unwilling to sign a 2007 Sarbanes-Oxley compliance attestation because of those problems.  (¶¶ 82-83 & Ex. 2 at 1-6.)  Although the Complaint alleges that Mr. Wolfe had been at the Bank since 2003, it does not allege that Mr. Wolfe had any reservations about signing the similar compliance attestation in 2006.  (¶ 82.)  Mr. Wolfe also made it clear that these issues had been hidden from D&T, warning that if the Bank did not "take prompt and thorough corrective actions to remedy" the issues raised in his letter, he would disclose his concerns to Franklin Bank's "Board *and to [its] auditors* and the appropriate regulatory agencies."  (Compl. Ex. 2 at 6.)

Upon receiving the Wolfe Letter, Franklin Bank's Audit Committee commenced an internal investigation.  (¶ 82.)  D&T suspended its 2007 audit work pending the outcome of that inquiry.  (*See* ¶ 74 (noting that D&T was "expected to resume the audit of Franklin's financial statements for 2007" subject to its review of a written plan to address the issues uncovered in the internal investigation).)  The Audit Committee initially indicated that Franklin Bank would need to restate its unaudited financial results as reported for the third quarter of 2007, and to delay filing of its financial results for the quarter and year ending December 31, 2007.[18]  (¶ 77; RJN Ex. D (May 20, 2008 Form 8-K).)  After identifying these issues affecting the Bank's unaudited financial reports for 2007, the Audit Committee followed up with a review of the Bank's audited financial disclosures going back to 2004.[19]  (¶¶ 35, 77.)

On August 6, 2008, Franklin Bank announced its then-current, unaudited estimates of all anticipated changes to the Bank's previously reported financial statements, all of which were subject to completion of the audit of the Bank's 2007 financial statements.  (¶¶ 36, 41-42, 50, 52-

---

[18]   As explained above, D&T never opined on Franklin Bank's 2007 financial statements.

[19]   D&T issued opinions on Franklin Bank's audited financial statements for each of the fiscal years 2004, 2005, and 2006.

LA\2049714.9

54, 56, 59, 61, 63, 68-69; RJN, Ex. C at 6-9 (Aug. 6, 2007 Form 8-K).)  That announcement revealed no material inaccuracies in the audited financial statements for 2004 or 2005 audited by D&T, but the Audit Committee announced its conclusion that some adjustments to Franklin Bank's 2006 audited financial statements would be required.  (¶ 77.)  The anticipated cumulative adjustments to the consolidated balance sheet and income statement for the *entire 2006 fiscal year*, however, were significantly smaller – both proportionally and in net dollars – than the equivalent adjustments projected for either of Franklin Bank's two most recently reported *single quarters* of unaudited financial data for 2007.  (RJN, Ex. C at 6-8; *see infra*, Ex. A (summarizing anticipated bottom-line adjustments reported in the August 6, 2008 Form 8-K for each period).)

D&T resumed its work upon completion of the internal investigation, and was still in the field attempting to complete the 2007 audit and to determine the magnitude of any 2006 restatement on November 7, 2008, when federal regulators entered the Bank.  (¶¶ 37, 81.)  As a result, the 2007 audit was never completed and no restatement occurred[20] before the Texas DSML closed the Bank and named the FDIC as receiver.

### D.     Procedural History

A review of the procedural history in this action illustrates that D&T was added to this litigation in the eleventh hour when Roucher Trust realized that the resources of the existing defendants would be insufficient to cover the Plaintiffs' hoped-for damages.

Roucher Trust filed the initial complaint in this action on June 6, 2008, which like others filed in its wake, asserted securities fraud claims on behalf of both preferred and common stockholders against the Bank and a number of its individual officers and directors, but not against D&T.  (*See, e.g.*, June 6, 2008 Compl., Docket No. 1.)  Franklin Investor Group was appointed lead plaintiff and filed its consolidated amended complaint on March 6, 2009, once again asserting no claim against D&T.  (Consolidated Common Stockholders' Complaint,

---

[20]     The Complaint refers to various financial data as having been "restated." (*See, e.g.*, ¶¶ 42, 53-54, 59, 63, 68, 76.)  That is inaccurate.  As the Complaint acknowledges elsewhere, Franklin Bank's financials were never restated before the Bank failed.  (¶¶ 36-37, 77, 80-81; RJN Ex. C at 2 (Aug. 6, 2008 Form 8-K).)

Docket No. 100.)  Surprisingly, the consolidated amended complaint asserted claims only on behalf of the purported class of purchasers of common (not preferred) stock.  Roucher Trust, a purchaser of Franklin Bank's preferred stock, responded to its unexpected omission from the class by filing a new class action asserting claims under Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77o.[21]  The new complaint added RBC Capital Markets Corporation as a defendant, but once again D&T was not named.  Concurrently, Roucher Trust also sought designation as a second lead plaintiff to assert claims on behalf of preferred stock purchasers.[22]

The record reveals that these procedural peculiarities – the strategic deletion of the preferred stock purchasers from the proposed class and Roucher Trust's resulting efforts to become a second lead plaintiff – arose because the fund from which Plaintiffs might recover had, as a result of the Bank's bankruptcy, become limited to Franklin Bank's director and officer insurance coverage ("D&O policy").[23]  (*See* Motion, Docket No. 103 at 6 & n.2 (common and preferred classes competing for a limited fund); Transcript, Docket No. 108 at 12:2-8 (claims proceeding against Franklin Bank's D&O policy).)  Indeed, briefing and argument on Roucher Trust's Motion exposed the fact that the D&O policy represented essentially the only asset available to pay for (1) the defense of the only remaining defendants (former Franklin Bank officers and directors); (2) recovery by the purported class; and (3) litigation costs and fees of plaintiffs' counsel.  (*See* Response, Docket No. 106 at 3 (relief sought against "an insurance policy that 'wastes' in defending this action"); Transcript, Docket No. 108 at 6:25-7:8 (conflict between "Preferreds and Common" over the Bank's D&O policy); *id.* at 15:22-16:13 (separate classes will waste the D&O policy on defense costs leaving less for recovery); *id.* at 23:15-19 (preferred stock purchasers may have been excluded because counsel for common stock class

---

[21]   *Roucher Trust v. RBC Capital Markets Corp.*, No. 4:09-CV-01348 (S.D. Tex. filed May 4, 2009).

[22]   (Motion for Relief from Order, Docket No. 103.)

[23]   After the Bank failed, was placed in receivership, and filed for Chapter 7 bankruptcy protection, but before the consolidated amended complaint was filed, all claims against Franklin Bank were severed and stayed.  (Minute Order, Docket No. 92.)

was trying to "do right by [their clients]" in recovering from a limited fund); *id.* at 25:21-26:9 (preferred and common shareholders competing for the same limited fund).) These arguments and observations perhaps explain D&T's last-minute addition as a long-shot defendant (and deep pocket).

Ultimately, the Court granted Roucher Trust's Motion permitting common and preferred stockholders to pursue parallel but separate litigation;[24] consolidated *Roucher Trust* with the *In re Franklin Bank* litigation;[25] appointed Roucher Trust as lead plaintiff for the "Preferred Stock Purchaser Class;"[26] and permitted Roucher Trust to file a Preferred Stock Purchaser Complaint by August 11, 2009.[27] When Roucher Trust filed the August 11 Complaint – its *third* arising from Franklin Bank's demise – D&T was added as a defendant even though no new facts had come to light relating to D&T and despite the fact that D&T never opined on the 2007 financial statements that are the focus of this litigation. Upon later agreement of the parties, Roucher Trust filed this Complaint on December 22, 2009.[28]

## V.   **SUMMARY OF THE ARGUMENT**

The PSLRA and Rule 9(b) impose an exceptionally rigorous pleading burden on Plaintiffs seeking to state a Section 10(b) claim against an outside auditor. Plaintiffs must plead with particularity that the auditor's work was so deficient that it amounted to "no audit at all." Plaintiffs have failed to meet that burden here. They claim that D&T's 2006 Audit and Attestation Reports were misstated, but fail to plead a single, particularized fact to support any inference of scienter on the part of D&T as to either statement. The few allegations about D&T's conduct do not speak to scienter. Plaintiffs set forth a laundry list of Generally Accepted Auditing Standards, and *conclude* without alleging any facts that D&T must have violated those

---

[24]     (Order, Docket No. 117.)
[25]     (Order, Docket No. 122.)
[26]     (Order, Docket No. 128.)
[27]     (Order, Docket No. 132.)
[28]     (Order, Docket No. 166.)

LA\2049714.9

standards.  That is insufficient.  Moreover, the Complaint's "scienter" allegations never mention D&T or any alleged wrongdoing purportedly discovered before D&T issued its 2006 Audit and Attestation Reports.  Because Plaintiffs' scienter allegations do not meet the rigorous pleading requirements of the PSLRA and Rule 9(b), the Complaint should be dismissed with prejudice.

## VI.   ARGUMENT AND AUTHORITIES

### A.   The PSLRA Requires That the Claim Against D&T Be Dismissed for Failure to Plead a Strong Inference of Scienter

The PSLRA was enacted as a check on out-of-control, lawyer-driven litigation arising "whenever there is a significant change in an issuer's stock price . . . with only faint hope that the discovery process might lead eventually to some plausible cause of action."  H.R. Rep. No. 104-369, at *31 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.C.A.N. 730.  Under the PSLRA and Rule 9(b), claims for securities fraud are subject to rigorous pleading requirements, and must be pled with particularity.  15 U.S.C. § 78u-4(b); Fed. R. Civ. P. 9(b); *Tellabs, Inc.*, 551 U.S. at 313 ("Exacting pleading requirements are among the control measures Congress" intended); *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 532-33 ("PSLRA set high standards . . . in order to check frivolous, lawyer-driven litigation"); *Plotkin*, 407 F.3d at 696 (securities fraud claim must plead details of why statements were fraudulent); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1054-55 (9th Cir. 2008) ("formidable pleading requirements to properly state a [§ 10(b)] claim").

To state a claim for securities fraud, a plaintiff must allege that a defendant made a "(1) misstatement or omission (2) of material fact (3) in connection with the purchase or sale of a security, which was made (4) with scienter, and upon which (5) the plaintiffs justifiably relied, (6) proximately causing injury to the plaintiffs."  *Plotkin*, 407 F.3d at 696; *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 532; *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 264 n.5 (5th Cir. 2007).  Plaintiffs' 10(b) claim against D&T fails as a matter of law because the Complaint does not and cannot meet the PSLRA's stringent standards for pleading scienter against an independent auditor.

-14-

LA\2049714.9

**B.    To Plead Scienter, Plaintiffs Must Allege Facts Demonstrating the Auditor Conducted "No Audit at All"**

As discussed above, the PSLRA requires plaintiffs to establish scienter by pleading particularized facts with specificity.  The properly pled facts, taken together with documents incorporated in the complaint by reference and matters subject to judicial notice, must give rise to a strong inference that the defendant made each challenged statement with scienter.  *Tellabs*, 551 U.S. at 321-23; *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533.  In this context a "strong inference" means one so "cogent" and "compelling" that no competing innocent inference is more likely than the inference that the defendant made the challenged statement with scienter.  *Tellabs*, 551 U.S. at 323-24; *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533.

When applied to claims against independent auditors, such as D&T, the scienter pleading requirement is "especially stringent."  *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 899 (quoting *PR Diamonds, Inc.*, 364 F.3d at 693).  That stringency arises in part from the obvious innocent inference that an auditor would not "risk surrendering a valuable reputation for honesty and careful work by participating in a fraud" for no other reason than to avoid losing a fee-paying client.  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427 n.7 (9th Cir. 1994).  Indeed, "the more logical inference is that [an auditor] would go to great effort to avoid engaging in anything resembling securities fraud [because a]ccountants are regularly sued for huge amounts and the legal fees alone for the defense of even non-meritorious cases can easily consume all or a large fraction of the amount of fees that [the auditor] had earned in its work on behalf of [its client]."  *Simons*, 2005 WL 1801946, at *3.

Accordingly, the degree of recklessness required to plead scienter of an independent auditor "entails a mental state so culpable that it approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company."[29]  *In re Dell, Inc. Sec. Litig.*, 591 F. Supp. 2d at 899-900.  Mere deviation from accounting or auditing principles is not enough.  *Id.*  Rather, a

---

[29]    Alteration in original.

plaintiff must establish that the audit was:

> so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts.

*Id.* at 900 (emphasis in original); *see also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003) (must establish severe recklessness; even "inexcusable negligence" is insufficient).

Here, Plaintiffs attribute only two statements to D&T: The 2006 Audit and Attestation Reports.[30] (¶¶ 45, 47.) Plaintiffs fail to plead a single, particularized fact to support any inference of scienter on the part of D&T as to either statement, and nothing in the Complaint establishes the requisite "cogent and compelling" inference that D&T's 2006 audit amounted to "no audit at all." As a result, the 10(b) claim against D&T must be dismissed.

## C.    The Few Allegations Addressing D&T's Actions Fail to Establish Scienter

The Complaint fails as a threshold matter because it makes little discernable effort to allege that D&T acted with scienter. *See* 15 U.S.C. § 78u-4(b)(2) (plaintiff must "state with particularity facts giving rise to a strong inference of scienter"); *Tellabs*, 551 U.S. at 326,

---

[30]    The bulk of the allegations in the Complaint challenge purportedly false statements made not by D&T, but by Franklin Bank and its officers and directors. (¶¶ 31-34, 41-44, 46, 49-57, 59-64, 66, 68-71.) D&T, however, is responsible only for its own statements. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 158, 128 S. Ct. 761, 769, 169 L. Ed. 2d 627, 638 (2008) (conduct of secondary actors must satisfy each element of a Section 10(b) claim); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191, 114 S. Ct. 1439, 1455 128 L. Ed. 2d 119, 141 (1994) (no private right of action for aiding and abetting a Section 10(b) violation); *Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 385-86 & nn.22-24 (5th Cir. 2007) (complaint must allege defendant *made* a purported public misrepresentation); *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007) (misstatement must be "attributed to the accountant at the time of its dissemination;" Plaintiff "cannot rely on accountant's alleged assistance in the drafting or compilation" (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 174 (2d Cir. 1998)); *Simons*, 2005 WL 1801946, at *4 (allegations regarding financial statements on which auditor did not opine are irrelevant to auditor's liability); *In re SeraCare Life Scis., Inc.*, No. 05-CV-2335-H (CAB), 2007 WL 935583, at *10 (S.D. Cal. Mar. 19, 2007) (auditor not liable for quarterly statements that it allegedly edited and evaluated, but did not audit); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d at 478 (alleged misrepresentations in unaudited sections of Forms 10-K not attributable to auditor).

-16-

("omissions and ambiguities count against inferring scienter"); *Flaherty*, 565 F.3d at 207-08 (same, quoting both the PSLRA and *Tellabs*); *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533 ("must state with particularity facts giving rise to a strong inference that the defendant acted with [scienter]").

The only section of the Complaint dedicated to D&T's alleged conduct is tellingly entitled "Deloitte Failed to Audit Franklin in Accordance with GAAS." (Compl. at p. 61.)  It is unclear whether the ensuing paragraphs are intended to plead D&T's scienter or merely that D&T's 2006 Audit and Attestation Reports were incorrect. (*See, e.g.*, ¶ 97 ("falsely represented . . . financial results [complied] with GAAP."); ¶ 98 ("Deloitte's statements were untrue"); ¶ 105 ("Deloitte's public statements . . . were untrue, and contained omissions of material facts.").)  What is clear is that Plaintiffs' own characterization of these allegations describes negligence, not fraud.  Even if the Complaint managed to allege that D&T had failed to comply with GAAS, that pleads (at best) negligence because it is well-established that GAAS or GAAP violations alone are never sufficient to plead scienter.  *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 534 ("[M]ere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter."); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002) (same); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 290-91 (5th Cir. 2006) (even detailed expert allegations that auditor failed to follow GAAS were insufficient); *Simons*, 2005 WL 1801946, at *2 (dismissing claims against auditor because '34 Act claims cannot be maintained for negligent conduct).

A single conclusion appears to be the whole of Plaintiffs' scienter allegations against D&T.  (¶ 106 ("The enormity and breadth of problems cited by the FDIC in its examination reports spanning several years highlights the knowledge and recklessness of Deloitte.").)  The allegation is wholly conclusory, offering not a single fact in support.  Thus, it is properly disregarded on a motion to dismiss.  *Papasan*, 478 U.S. at 286; *Plotkin*, 407 F.3d at 696; *see also Simons*, 2005 WL 1801946, at *4 (failure to allege *with particularity* how government investigations put auditor on notice of internal control problems).  Parroting the words

-17-

"knowledge and recklessness" without any supporting facts[31] raises no inference of scienter.

The "factual" allegations in this section fall into two categories, neither of which speaks to scienter:  (1) those that directly assert that D&T's statements were false (¶¶ 97, 98, 105); and (2) those that amount to little more than a laundry list of GAAS standards, each in support of the conclusory assertion:  "Had Deloitte complied with GAAS, the only reasonable professional conclusion it could have drawn was that" the Bank's internal controls were ineffective and/or its financial statements did not comply with GAAP.  (¶¶ 99-104; *see also* ¶ 105 (concluding that D&T violated GAAS because it lacked a sufficient "basis to express an unqualified opinion in its 2006 audit of Franklin").)  Because Plaintiffs fail to allege specifically what those audit procedures involved or how D&T's procedures failed to conform to GAAS, however, they have not even pled a violation.  *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 903.  Unable to plead *facts*, Plaintiffs may not substitute their own conclusion that D&T *must* have violated GAAS because it allegedly failed to detect the errors that led the Bank to announce that it believed it would have to restate its 2006 financial statements.[32]  Such circular pleading has long been rejected as inadequate to support an inference of scienter.  *Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994) ("boilerplate averments that the accountants violated particular standards are not, without more, sufficient to support inferences of fraud"); *In re Integrated Elec. Servs., Inc. Sec. Litig.*, No. Civ.A. 4:04-CV-3342,  2006 WL 54021, at *3 (S.D. Tex. Jan. 10, 2006) (plaintiff may not plead scienter by "list[ing] a series of accounting principles that Defendants are said to have

---

[31]     As explained below, the only facts alleged anywhere in the Complaint regarding the "enormity and breadth of problems cited by the FDIC" are found in (1) improperly quoted portions of a 2008 FDIC examination report and (2) mischaracterizations of a 2009 OIG Report, neither of which reveal how D&T could have ascertained in 2006 the problems that would arise at Franklin Bank during 2007 and 2008. *See infra* Part VI.D.2-VI.D.3.

[32]     Moreover, the mere fact that certain financial information required restatement similarly is insufficient to establish scienter. *In re Integrated Elec. Servs., Inc. Sec. Litig.*, 2006 WL 54021, at *3 ("[T]he law is clear that a restatement of financial data, by itself, does not create a strong inference of scienter."). Without more, a restatement is not even evidence of fraud; it merely establishes that the company caught and corrected an error in its financial statements. (RJN, Ex. F (SFAS No. 154) (defining "restatement" as a revision of a financial statement to correct an error).)

violated"). Plaintiffs allege no more, and the 10(b) claim against D&T, accordingly, should be dismissed.

### D.    Plaintiffs' "Scienter Allegations" Omit D&T

Strikingly, D&T is completely omitted from the only section of the Complaint that appears intended to plead scienter – a section entitled "Defendants Knew or Recklessly Disregarded Accounting Problems, Weakness in Internal Controls [a]nd [t]he Falsity of Public Statements About Loan Quality." (¶¶ 82-88); *see also Tellabs*, 127 S. Ct. at 2511 ("omissions and ambiguities count against inferring scienter"). The PSLRA *requires* that "the complaint shall, with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with [scienter]." 15 U.S.C. § 78u-4(b)(2); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238, 243, 258-59 (5th Cir. 2003) (rejecting "puzzle-pleading" which requires a court to sift carefully through disjointed allegations in an effort to piece together a claim that may be hidden in the complaint); *In re Downey Sec. Litig.*, No. CV-08-3261-JFW (RZx), 2009 WL 2767670, at *3-4 (C.D. Cal. Aug. 21, 2009) (explaining why puzzle-pleading cannot meet PSLRA standards); *see generally Flaherty*, 565 F.3d at 207 (PSLRA requires particularity for pleading scienter); *Ind. Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 533 (same). Yet, Plaintiffs' Complaint never alleges a single fact to support an inference – and certainly not a strong inference – that D&T knew of or recklessly disregarded inaccuracies that were later discovered in Franklin Bank's 2006 audited financial statements.[33]

---

[33]    The August 6, 2008 Form 8-K reported several inaccuracies to be corrected in Franklin Bank's prior reports of its quarterly financials for the first three quarters of 2007, its 2006 and 2007 asset quality, and its audited financial statements for 2006. (RJN, Ex. C at 2 (Form 8-K).) D&T's 2006 Audit Report, like all such opinions, was specifically limited to Franklin Bank's financial statements; specifically, its "consolidated balance sheets" and "the related consolidated statements of operations, stockholders' equity, and cash flows" (commonly referred to, along with the associated footnotes, as the audited financial statements), which were reported in Item 8 of the Bank's 2006 Form 10-K. (RJN, Ex. E at 74 (Franklin Bank Form 10-K (filed Mar. 14, 2007)); *see also id.* at pp. 75-115 (2006 audited financial statements). As such, D&T did not opine on most of the subsequently discovered inaccuracies, which occurred outside the audited financial statements, including those in the Bank's unaudited quarterly disclosures for 2007 – a year for which D&T did not issue any audit report – and those in Franklin Bank's "asset quality information and ratios" as of December 31, 2006, March 31, 2007, June 30, 2007, and

-19-

These scienter allegations focus on three documents that purportedly imply that unspecified "defendants" knew of or recklessly disregarded problems at Franklin Bank. (*See* ¶¶ 82-83 (Wolfe Letter); ¶¶ 84-85 (FDIC Examination Report); ¶¶ 86-87 (OIG Report).) Yet the Complaint does not hint at, much less "allege with particularity," how these documents "should have put [D&T] on notice" of concerns that arose later regarding Franklin Bank's 2006 financial statements. *Simons*, 2005 WL 1801946, at *4. Nor could it – none of those documents *existed* when D&T issued its 2006 Audit and Attestation Reports.[34] Moreover, all of those documents focus on issues at Franklin Bank in 2007 or later, periods on which D&T never opined.

### 1.    The Wolfe Letter

On February 19, 2008, Mr. Wolfe sent a letter to Franklin Bank to explain his refusal to sign the 2007 Sarbanes-Oxley compliance attestation. (¶ 82, p. 47). D&T, however, never opined on Franklin Bank's 2007 financial statements. There is no allegation that Mr. Wolfe had any concern about signing the Sarbanes-Oxley compliance attestation for any year that D&T audited, and nowhere does the letter suggest Mr. Wolfe believed the problems he identified existed before 2007. Moreover, the Complaint claims the Wolfe Letter is "evidence[ of] defendants' efforts at concealing the fraud at Franklin" (*id.*), but the letter itself reveals that the alleged wrongdoing *had been concealed from D&T*. (Compl. Ex. 2 at 6 ("Unless I hear back from you by February 26, 2008 with your proposed course of action, I plan to disclose my concerns to [the] Bank's auditors . . . .").) Therefore, the Wolfe Letter does not support a claim of fraud against D&T for its 2006 audit, but does establish that D&T had been *kept in the dark*

---

September 30, 2007 – none of which were included in the audited financial statements. *Simons*, 2005 WL 1801946, at *4 (allegations regarding financial statements on which auditor did not opine are irrelevant to auditor's liability); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d at 478 (alleged misrepresentations in unaudited sections of Forms 10-K are not attributable to the auditor); *Lattanzio*, 476 F.3d at 153 ("misstatement [must be] attributed to the accountant at the time of its dissemination").

[34]    Mr. Wolfe's letter was dated February 19, 2008. (¶ 82.) The Complaint alleges that the FDIC examination report was dated as of March 31, 2008 and not released until sometime in 2009. (¶ 86.) The OIG Report is dated July 2, 2009. (¶ 86.) In contrast, D&T's 2006 Audit and Attestation Reports were issued on March 14, 2007. (¶¶ 45, 47.)

-20-

about problems in the Bank's 2007 financial reporting.  This squarely undercuts any inference of scienter by D&T.

### 2.    The FDIC Examination Report

D&T, along with Defendant RBC Capital Markets Corporation, has moved separately to strike improper allegations based on the FDIC Examination Report.[35]  But even if the allegations are not stricken, Plaintiffs' purported quotations and characterizations of the Examination Report are insufficient to raise any inference, much less a strong inference, of scienter on the part of D&T.  Based on the FDIC Examination Report, Plaintiffs allege that Franklin Bank "received unsatisfactory ratings for its Risk Management, earning unsatisfactory marks for its capital, asset quality, management, earnings and liquidity" *as of March 31, 2008*.  (¶ 84, at 49.)  It purports to quote the Examination Report as declaring that "a capital injection of approximately $165,000,000 [wa]s necessary to allow the institution to achieve a 'Well Capitalized' designation" *as of March 31, 2008*.  (*Id.* at 50.).  That is followed by "an extensive litany of deficiencies at the Bank," which ostensibly are quoted, in extracted passages, for five and one-half pages in the Complaint.  (*Id.* at pp. 50-55.)  Yet nothing in that "litany" is purported to have occurred earlier than "the second half of 2007."  The FDIC Examination Report allegations are silent about Franklin Bank's financial reporting in 2006 – the last year on which D&T opined – and accordingly have nothing to contribute to this Court's analysis of whether D&T acted with scienter in issuing its 2006 Audit and Attestation Reports.

### 3.    The OIG Report

The OIG Report was prepared after Franklin Bank was closed in November 2008, and was made publicly available in July 2009.  (¶ 86-87; RJN, Ex. B at 1-2.)  Plaintiffs allege that the OIG Report "found . . . concerns" dating back as far as "September 2003."  (¶ 85; *see also* ¶ 87 (mentioning "management and board of directors failures . . . dating to 2003, . . . repeatedly

---

[35]    (*See generally* Joint Mot. of Defs. RBC Capital Markets Corp. and Deloitte & Touche LLP to Strike Certain Factual Allegations in Pls.' Am. Consolidated Preferred Stock Purchaser Compl., Docket No. 176, filed Mar. 4, 2010.)

LA\2049714.9

reported concerns since 2004, [and] highlighted since at least 2004.") Yet even here, the Complaint alleges only vague "deficiencies" and "weaknesses." Plaintiffs never specify with particularity (1) what the FDIC is purported to have believed the Bank was doing wrong; (2) that any specific problems, beyond vague "concerns," actually existed *during* 2006; or most importantly for purposes of this motion, (3) that D&T knew or had reason to know of any of the purported weaknesses and deficiencies during its 2006 audit. (¶¶ 38, 86-87.) Moreover, the OIG Report acknowledges that the FDIC, along with the Texas DSML, conducted regular reviews and gave Franklin Bank high ratings until October 2007, long after D&T's 2006 Audit and Attestation Reports had been issued. Thus, the allegations based on the OIG report come nowhere close to raising a strong inference that D&T acted with scienter when it opined on Franklin Bank's 2006 financial statements and internal controls over financial reporting.

In fact, the OIG Report itself undermines the Complaint's vague allusions to historic "concerns" at Franklin Bank, and in fact found no fault with the Bank's accounting and internal controls or with its independent auditors *in 2006*. Appendix 3 of the report provides tables summarizing FDIC findings from 2003 through 2008. (RJN, Ex. B at 22-24.) From those tables, it is clear that *in 2006*, the FDIC: (1) found "[a]ppropriate internal controls [we]re in place;"[36] (2) did not note any "[a]ccounting and financial reporting concerns;"[37] and (3) found "[a]dequate risk management[, which] identifie[d], measure[d], monitor[ed], and control[led liquidity] risk."[38] Moreover, although the 2009 OIG Report takes issue with Franklin Bank's historic methodologies for calculating the Bank's allowance for loan and lease losses ("ALLL"), the FDIC did not find the Bank's ALLL to be "substantially deficient" or its policies to be "in contravention of [any] policy statement" *in 2006*.[39] Importantly, Franklin Bank's loan loss

---

[36]    (*Compare* ¶¶ 38, 86, *with* RJN, Ex. B at 22.) It is unclear from the OIG Report what specific "internal controls" are at issue. D&T's Attestation Report applied only to Franklin Bank's internal controls over financial reporting, whereas the OIG Report suggests that the FDIC reviewed internal controls over operations. (*See supra* at 9-10.)

[37]    (*Compare* ¶ 38, *with* RJN, Ex. B at 22.)

[38]    (*Compare* ¶¶ 38, 86, *with* RJN, Ex. B at 24.)

[39]    (*Compare* ¶¶ 38, 87, *and* RJN, Ex. B at 9, *with* RJN, Ex. B at 23.)

-22-

provisions were not among the items that were being considered for restatement in the 2006 audited financial statements.[40] Thus, not only do the Complaint's OIG Report allegations fail to support an inference that D&T acted with scienter when it issued its 2006 Audit and Attestation Reports; the OIG Report itself undermines any suggestion that D&T's 2006 audit amounted to an "egregious refusal to see the obvious, or to investigate the doubtful." *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d at 900.

## VII.   CONCLUSION

Plaintiffs have failed to plead facts that can support a strong inference of scienter – as required by Rule 9(b) and the PSLRA – with respect to D&T. Moreover, the Complaint never mentions any fact that could form the basis for an improved pleading. Accordingly, the single 10(b) claim against D&T should be dismissed with prejudice.

---

[40]      (*See* RJN, Ex. C; *id.*, Ex. E at 110.)

LA\2049714.9

Dated:  March 5, 2010                    Respectfully submitted,

                                         CRUSE, SCOTT, HENDERSON & ALLEN, LLP

                                             /s/ George W. "Billy" Shepherd
                                             George W. "Billy" Shepherd
                                             Texas Bar No. 18219700
                                             S.D. Tex. I.D. No. 10666
                                             2777 Allen Parkway, 7th Floor
                                             Houston, Texas 77019
                                             Telephone:   (713) 650-6600
                                             Facsimile:   (713) 650-1720

                                         LATHAM & WATKINS LLP

                                             James J. Farrell (admitted *pro hac vice*)
                                             Terri L. Lilley (admitted *pro hac vice*)
                                             Farbod Moridani (admitted *pro hac vice*)
                                             355 South Grand Ave.
                                             Los Angeles, CA 90071
                                             Phone: (213) 485-1234
                                             Fax: (213) 891-8763

                                             Peter Wald (admitted *pro hac vice*)
                                             Attorney-in-Charge
                                             505 Montgomery St., Ste. 1900
                                             San Francisco, CA 94111-2566
                                             Phone: (415) 395-8006
                                             Fax: (415) 395-8095

                                         ATTORNEYS FOR DEFENDANT
                                         DELOITTE & TOUCHE LLP

### Certificate Of Service

     I hereby certify that on Friday, March 5, 2010, a true and correct copy of the foregoing instrument was forwarded via electronic filing to all ECF registrants in this matter.


                                             /s/ George W. "Billy" Shepherd
                                         Billy Shepherd

LA\2049714.9