IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re FRANKLIN BANK CORP.<br>SECURITIES LITIGATION | CIVIL ACTION NO.: 4:08-cv-01810<br>CLASS ACTION |

**MEMORANDUM IN SUPPORT OF DEFENDANT RBC CAPITAL
MARKETS CORPORATION'S MOTION TO DISMISS AMENDED
<u>CONSOLIDATED PREFERRED STOCK PURCHASER COMPLAINT</u>**

## TABLE OF CONTENTS

Page

I.  **PRELIMINARY STATEMENT** ...........................................................................1

II. **BACKGROUND** .............................................................................................3

    A.  The Parties and the Preferred Stock Offering ...........................................3

    B.  Nature and Stage of the Proceedings ......................................................6

III. **STATEMENT OF THE ISSUES** ....................................................................7

IV. **STANDARD OF REVIEW** ...............................................................................8

V.  **ARGUMENT** ....................................................................................................8

    A.  The Section 11 Claim Against RBC is Time-Barred. ...............................8

    B.  The Section 11 Claim Against RBC Should be Dismissed as Deficient
        Under Rule 9(b) of the Federal Rules of Civil Procedure for Failure to
        Plead With Particularity. ......................................................................11

    C.  The Section 11 Claim Against RBC Should be Dismissed Because
        Roucher Fails to Allege Facts Suggesting That There Were Material
        Misstatements in the Offering Documents. ...........................................13

VI. **CONCLUSION** ................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arazie v. Mullane,*
   2 F.3d 1456 (7th Cir. 1993) ................................................................ 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .............................................................. 3, 13, 17

*Dodds v. Cigna Securities, Inc.,*
   12 F.3d 346 (2d Cir. 1993) ................................................................ 9

*ECA v. JP Morgan Chase Co.,*
   No. 07-1786-cv, 2009 WL 129911 (2d Cir. Jan. 21, 2009) ................................. 16

*In re Dynegy, Inc. Sec. Litig.,*
   339 F.Supp.2d 804 (S.D. Tex. 2004) .............................................. 9, 11

*Jensen v. Snellings,*
   841 F.2d 600 (5th Cir. 1988) ............................................................. 9

*Jones v. Alcoa, Inc.,*
   339 F.3d 359 (5th Cir. 2003) ............................................................. 8

*Kansas Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.,*
   20 F.3d 1362 (5th Cir. 1994) ............................................................. 9

*Krim v. Banctexas Group, Inc.,*
   989 F.2d 1435 (5th Cir. 1993) .......................................................... 16

*Kurtzman v. Compaq Computer Corp.,*
   2002 WL 32442832 (S.D. Tex. March 30, 2002) ................................... 12

*Lormand v. US Unwired, Inc.,*
   565 F.3d 228 (5th Cir. 2009) ............................................................. 8

*Melder v. Morris,*
   27 F.3d 1097 (5th Cir. 1994) ...................................................... 12, 13

*R2 Investments LDC v. Phillips,*
   401 F.3d 638 (5th Cir. 2005) ............................................................. 2

*Ramming v. U.S.,*
   281 F.3d 158 (5th Cir. 2001) ............................................................. 8

*Rios v. City of Del Rio,*
    444 F.3d 417 (5th Cir. 2006) ................................................................. 13

*Rombach v. Chang,*
    335 F.3d 164 (2d Cir. 2004) ................................................................. 12

*Shushany v. Allwaste, Inc.,*
    992 F.2d 517 (5th Cir. 1993) ........................................................... 12, 13

*Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.,*
    365 F.3d 353 (5th Cir. 2004) .............................................................. 8, 16

*Taubenfeld v. Hotels.com,*
    385 F. Supp. 2d 587 (N.D. Tex. 2004) ................................................... 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ............................................................................... 2

*Tuchman v. DSC Communications Corp.,*
    14 F.3d 1061 (5th Cir. 1994) ................................................................. 12

*U.S. ex rel. Grubbs v. Kanneganti,*
    565 F.3d 180 (5th Cir. 2009) ................................................................. 13

**STATUTES**

15 U.S.C. § 77k(b)(3) .................................................................................. 15

15 U.S.C. § 77m ....................................................................................... 7, 8

**RULES**

Fed. R. Civ. P.  9(b) ......................................................................... 2, 7, 12, 13

Fed. R. Civ. P. 12(b)(6) .............................................................................. 8, 9

Fed. R. Evid. 210 ........................................................................................ 2

**REGULATIONS**

64 Fed. Reg. 45150 (1999) .......................................................................... 16

**MEMORANDUM IN SUPPORT OF DEFENDANT**                                    **Page iii**
**RBC CAPITAL MARKETS CORP.'S MOTION TO DISMISS**

Defendant RBC Capital Markets Corporation ("RBC") respectfully submits this memorandum in support of its motion to dismiss the Amended Consolidated Preferred Stock Purchaser Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) and states as follows:

## I.
## PRELIMINARY STATEMENT

The Harold Roucher Trust ("Roucher"), purportedly acting on behalf of purchasers of preferred stock issued by Franklin Bank Corporation ("Franklin") in May 2006, alleges that RBC violated Section 11 of the Securities Act of 1933 ("Section 11") in its role as underwriter of the preferred stock offering.  In classic "fraud by hindsight" fashion, Roucher bases its Section 11 claim against RBC on an offering that took place *years* before Franklin first announced that its Audit Committee had commenced an internal investigation into accounting and disclosure issues related to its single-family residential mortgage and Real Estate Owned ("REO") business. Without a scintilla of evidence, Roucher contends that RBC "knew of or should have known of Franklin's existing financial and accounting issues," and "knew or should have known that the complained of statements were misleading when made. . . ."  Amended Complaint at ¶¶ 19, 21. [1] As discussed more fully below, such generic and baseless allegations of securities fraud must be rejected, and the Amended Complaint dismissed, on several grounds.

*First,* Roucher's Section 11 claim against RBC is barred by the applicable one-year statute of limitations, based, *inter alia*, on Roucher's own judicial admission that "the truth was

---

[1]   Unless otherwise indicated, all internal quotations and omissions have been omitted and all emphasis added.

*fully revealed* after the close of business on May 1, 2008," more than one year prior to the filing of the Amended Complaint first naming RBC as a defendant.[2]

*Second,* Roucher fails to state a claim for violations of Section 11 under the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  Where, as here, a plaintiff alleges that an underwriter "*knew or should have known*" of the alleged fraudulent misstatements by Franklin, and otherwise alleges the existence of a fraudulent course of conduct, the Section 11 claim must be pled with particularity, notwithstanding Roucher's glib disclaimer that "this claim does not sound in fraud."  Amended Complaint at ¶ 113.  Under Rule 9(b), Roucher is *required* to allege the facts constituting the misrepresentations in the May 2006 registration statement with specificity and utterly fails to do so.

*Finally,* Roucher's Section 11 claim is erroneously based on allegations relating to the alleged falsity of Franklin's historical financial statements.  The Section 11 claim cannot be based on the contention that any of Franklin's year-end financial statements violated Generally Accepted Accounting Principles ("GAAP") since none of the audited financial statements incorporated into the Registration Statement were ever restated and Roucher fails to allege any facts suggesting that those financial statements were materially misstated.  The remainder of Roucher's financial statement claim is slender in the extreme, and subject to dismissal based on the allegations in the Amended Complaint and other judicially noticeable facts.[3]

---

[2]  *The Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp., et al.*, Civil Action No. 4:08-cv-1810, filed June 6, 2008 (Corrected Complaint filed June 10, 2008) (the "Original Complaint") at ¶ 51.  RBC respectfully requests this Court take judicial notice of Roucher's previous filings pursuant to Fed. R. Evid. 210.

[3]  RBC is entitled to rely upon materials documents or reports relied on in the Amended Complaint and on other facts that the Court may judicially notice, including documents filed with the SEC.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also R2 Investments LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005).  RBC respectfully requests that the Court take judicial notice of the documents attached as Exhibits A-H to the Declaration of Samantha A. Lunn ("Lunn Decl."), filed concurrently herewith.

The sole attack on the remaining financial statements is limited to the unaudited financial statements for the first quarter of 2006, which were incorporated by reference into the Registration Statement.  Roucher asserts that those quarterly financial statements must have been false because, *more than two years later,* Franklin announced that it intended to restate its 2006 year-end financial statements, which included the first quarter results.  But Roucher does not allege with specificity any GAAP violations in connection with the first quarter results and fails to allege any "red flags" that put RBC on notice of any material GAAP violations in those financial statements at the time of the offering.  Moreover, the judicially noticeable facts demonstrate that if there were any GAAP violations, they were immaterial as a matter of law.  Accordingly, the Section 11 claim against RBC based on these few months of unaudited interim financial statements is groundless.

Notwithstanding the fact that Franklin admittedly suffered tremendous business reversals in 2008 and was seized by the FDIC in September 2008, those facts cannot be used retrospectively to support the conclusion that Roucher posits here – namely, that the Registration Statement issued in *early 2006* contained material misstatements for which RBC should be held to account.  The Supreme Court has consistently admonished trial courts to apply rigorous analysis to allegations of fraudulent conduct such as those set forth in the Complaint.  *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  RBC respectfully submits that under those Supreme Court standards, this lawsuit must be dismissed.

## II.
## BACKGROUND

### A.      The Parties and the Preferred Stock Offering

Franklin was a Texas-based bank holding corporation headquartered in Houston.  Amended Complaint at ¶ 10.  On May 5, 2006, Franklin offered 3.45 million shares of preferred

stock to the public (the "Preferred Offering").  These preferred shares were issued pursuant to a registration statement initially filed with the SEC on April 20, 2006 and amended on May 1, 2006 and May 4, 2006 (the "Registration Statement") and the prospectus initially filed with the SEC on April 20, 2006 and amended on May 1, 2006 and May 4, 2006 (the "Prospectus," and together with the Registration Statement, the "Offering Documents").  Amended Complaint at ¶ 1.  RBC underwrote the Preferred Offering.  *Id.* at ¶ 18.  Deloitte & Touche LLP ("Deloitte") was the Bank's outside auditor and audited the 2004 and 2005 year-end financial statements that were incorporated into the Offering Documents.  *Id.* at ¶ 22.

By the spring of 2008, however, the news about Franklin was, to say the least, adverse – and purchasers of Franklin's preferred stock were put on notice of their claims no later than May 1, 2008.  The drumbeat of bad news commenced on March 14, 2008, when Franklin announced that it had discovered issues relating to its accounting practices and internal controls and had launched an internal investigation.[4]  The March 14 Press Release disclosed that Franklin would delay filing its Annual Report on Form 10-K for 2007 (the "2007 10-K") due to "possible accounting disclosure and other issues related to single-family residential mortgages and residential real estate owned that could affect Franklin's 2007 financial statements."  *Id.* at ¶ 72.  Franklin also disclosed that its "[a]udit committee commenced an independent internal investigation into [those] issues with the assistance of independent legal and accounting advisors."  *Id.* at ¶ 72.

In addition to the March 14, 2008 press release, on that same day Franklin filed a Form 12b-25 notice of late filing stating that it "expects to report a net loss for the year ended

---

[4]   The March 14, 2008 Press Release is attached to the Lunn Decl. as Exh. A.

December 31, 2007 . . . [and s]ubject to completion of the Audit Committee's investigation . . . Franklin expects to record an impairment of goodwill for the year ended December 31, 2007 of approximately $65.0 million and an increase in the allowance for loan losses of over $23.0 million."[5]

Franklin's adverse disclosures continued on March 26, 2008, when it disclosed that it was not in compliance with American Stock Exchange ("AMEX") Rules 134 and 1101 due to the delayed filing of its 2007 Annual Report.[6]  On April 4, 2008, Franklin announced that it had submitted a plan to the AMEX suggesting that it intended to be in compliance with AMEX rules by June 17, 2008.[7]  The April 4 Press Release also disclosed that if the plan is accepted, "the plan will continue to be subject to periodic review to determine whether Franklin is making progress consistent with the plan," and if the plan is not accepted or Franklin does not make progress, "the AMEX may initiate delisting procedures as appropriate."  *Id.*  On April 22, 2008, Franklin announced that the AMEX approved Franklin's compliance plan and granted the Bank until June 30, 2008 to file its 2007 10-K, and until July 31, 2008 to file its Quarterly Report on Form 10-Q for the period ending March 31, 2008.[8]

Finally, on May 1, 2008, Franklin announced that it had amended the call reports it submitted to the FDIC for the periods ended September 30, 2007 and December 31, 2007.[9]  As Roucher admits in the Amended Complaint, the May 1 Press Release disclosed that the Bank's September 2007 Form 10-Q should no longer be relied upon, as a result of the incorrect call

---

[5]  The March 14, 2008 Form 12b-25 is attached to the Lunn Decl. as Exh. B.
[6]  The March 26, 2008 Press Release is attached to the Lunn Decl. as Exh. C.
[7]  The April 4, 2008 Press Release is attached to the Lunn Decl. as Exh. D.
[8]  The April 22, 2008 Press Release is attached to the Lunn Decl. as Exh. E.
[9]  The May 1, 2008 Press Release is attached to the Lunn Decl. as Exh. F.

reports, and as a result of the fact that Franklin had determined that its past accounting for delinquent single family loans being serviced by third parties, other REO, and Franklin's loan modification programs all needed to be revised.  Amended Complaint at ¶ 73.  The May 1 Press Release also contained detailed information on the extent to which Franklin's loan portfolio was non-performing.  *Id.* at ¶ 73.

Roucher itself described the above disclosures of Franklin's ills in its Original Complaint as follows:

> 50.  For example, the Company's preferred stock closed at $10.95 per share on Friday, March 14, 2008.  That evening, Franklin issued a press release disclosing that it would be unable to timely file its 2007 10-K.  On the next day of trading, before the markets opened, the Bank filed an 8-K with the SEC attaching the March 14th press release as an exhibit.  Reacting to this news, the preferred shared dipped to $7.50, a decline of over 30%.

> 51.  *The truth was fully revealed after the close of business on May 1, 2008*, and Franklin's common stock plunged in value when the markets reopened.  While shares ended the day at $1.72 on May 1st, they had fallen to $1.03 – a decline of over 40% -- in just the next two days of trading.  The Bank's preferred shares suffered a similarly steep decline:  they retreated from $7.55 to $4.85 per share on May 2nd alone, a decline of over 35%.

Original Complaint at ¶¶ 50-51.

## B.      Nature and Stage of the Proceedings

Between June and July 2008, several plaintiffs filed complaints on behalf of investors who held common or preferred stock in Franklin, asserting violations of sections 10(b) and 20(a) of the Securities Exchange Act against Franklin and Individual Directors Anthony Nocella and Russell McCann (the "Original Action").  Roucher filed its original complaint on June 6, 2008 and its corrected complaint on June 10, 2008 on behalf of purchasers of common and preferred stock of Franklin.  After briefing on the matter by all plaintiffs, this Court appointed the Franklin Investor Group as lead plaintiff on November 19, 2008.  On March 6, 2009, the Franklin Investor

Group filed a consolidated amended complaint on behalf of only the common stock holders. Roucher then filed a motion with this Court in the Original Action for relief from the order naming the Franklin Investor Group lead plaintiff and seeking to be appointed lead plaintiff for preferred stock purchasers.  RBC was not named by Roucher, the Franklin Investor Group, or any other putative lead plaintiff as a defendant to the Original Action.

This ongoing litigation notwithstanding, on May 4, 2009, Roucher filed a separate action against RBC and the Individual Defendants alleging Section 11 and Section 15 claims on behalf of preferred stock holders (the "Roucher Trust Action").  This was the first time that RBC had been sued in connection with the Franklin preferred stock offering.  On July 17, 2009, this court consolidated the Original Action and the Roucher Trust Action, and on July 27, 2009, this Court appointed Roucher as the lead plaintiff for the Preferred Stock Purchaser Class in the Consolidated Action.  On August 11, 2009, Roucher filed a consolidated preferred stock purchaser complaint, adding Deloitte as a defendant.  On December 22, 2009 Roucher filed the operative Amended Complaint.

## III.
## STATEMENT OF THE ISSUES

1.      The Section 11 claim against RBC is time-barred because Roucher failed to bring such claims within one year after discovery of the alleged misstatements should have been made by the exercise of reasonable diligence.  15 U.S.C. § 77m.

2.      The Section 11 claim against RBC should be dismissed as deficient under Rule 9(b) of the Federal Rules of Civil Procedure for failure to plead with particularity.

3.      The Section 11 claim against RBC should be dismissed because Roucher fails to allege facts suggesting that there were material misstatements in the Offering Documents, as required under Section 11.

## IV.
## STANDARD OF REVIEW

A complaint filed after the applicable statute of limitations period should be "dismiss[ed] under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred" and where the plaintiff does not plead any tolling of the limitations period. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).  Moreover, a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001); *see Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (affirming in part dismissal of Section 10(b) claim under Rule 12(b)(6)).  In deciding RBC's motion, while assuming the truth of all factual allegations in the Amended Complaint, the Court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

## V.
## ARGUMENT

**A.     The Section 11 Claim Against RBC is Time-Barred.**

Claims brought under Section 11 are governed by the one-year statute of limitations in Section 13 of the Securities Act:  "[n]o action shall be maintained to enforce any liability created under section 77k . . . of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . ."  15 U.S.C. § 77m.  The one-year limitations period begins to run on the date a putative plaintiff is placed on inquiry notice:  "when the plaintiff has actual knowledge of the facts giving rise to his claims *or* has notice of facts that in the exercise of reasonable diligence should have led to such knowledge." *In re Dynegy, Inc. Sec. Litig.*, 339 F.Supp.2d 804,

845 (S.D. Tex. 2004).  "The requisite knowledge that a plaintiff must have to begin the running of the limitations period is merely that of the *facts* forming the *basis* of his cause of action . . . not that of the existence of the cause of action itself."  *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988).  "An investor does not have to have notice of the entire [wrong] being perpetrated to be on inquiry notice."  *Dodds v. Cigna Securities, Inc.,* 12 F.3d 346, 352 (2d Cir. 1993).

Resolution of the issue of inquiry notice is appropriate at the motion to dismiss stage. *Dodds*, 12 F.3d at 352; *see also Kansas Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366-70 (5th Cir. 1994) (dismissing claim as time barred under Rule 12(b)(6)). "[W]here facts alleged in plaintiff's pleading make clear that a claim is barred, dismissal under Rule 12(b)(6) may be granted."  *In re Dynegy*, 339 F.Supp. at 804.

Here, Roucher did not sue RBC until May 4, 2009 and no other investor sued RBC before that date.  However, Roucher itself has admitted, and public disclosures of which this Court may take judicial notice fully confirm, that the truth about Franklin was "fully revealed" no later than May 1, 2008.  Roucher's Section 11 claim against RBC is, therefore, time-barred.

As Roucher acknowledged in the Original Complaint, the facts disclosed by Franklin leading up to and in the May 1 Press Release were sufficient to put a shareholder on notice of misstatements concerning Franklin.  For example, the March 14 Press Release not only revealed that Franklin would be unable to file its 2007 Form 10-K on time, it explicitly disclosed that the Bank's internal controls and accounting mechanisms may be deficient.  Those disclosures relate directly to the Plaintiff's claim that the Registration Statement failed to advise investors that the Bank's "accounting practices and internal controls were materially deficient."  Amended Complaint at ¶ 32.  Also, the March 14 Press Release references the publicly-available SEC

filing of the same day that revealed that, in anticipation of the findings from the Audit

Committee investigation, the Bank expected to record an impairment of goodwill for 2007 and

an increase in the allowance for loan losses.  The May 1 Press Release contained equally harsh

news, and sent Franklin's preferred stock spiraling down.  The May 1 Press Release revealed that

(a) Franklin's non-performing loans at the end of 2007 were actually $176.6 million (versus

$86.031 million previously reported); (b) its REO was $51.1 million (versus $38.538 million

previously reported); and (c) its net loss for 2007 was actually $52.1 million (versus $45.2

million previously reported).  From these two press releases, a reasonable investor would have

been on notice that Franklin's previous financial statements may not be reliable and that the Bank

may not have reserved adequately for loan losses.

Market reaction to Franklin's disclosures demonstrates that investors were, indeed, put on

notice of Franklin's problems.  As set forth by Roucher in the Amended Complaint,

> Franklin's preferred stock closed at $10.95 per share on Friday, March 14, 2008.
> That evening, Franklin issued a press release disclosing that it would be unable to
> timely file its 2007 10-K.  On the next day of trading, before the market opened,
> the Bank filed an 8-K with the SEC attaching the March 14th press release as an
> exhibit.  *Reacting to this news*, the preferred shares dipped to $7.50, a decline of
> over 30%.

Amended Complaint at ¶ 109.[10]  In response to the May 1 Press Release, the price of the

Preferred Stock sank over 35%.  *See id.* at ¶ 110.  The multiple sharp drops in the price of the

Preferred Stock during the period March 14 to May 2, following Franklin's corrective

disclosures, dramatically underscore that holders of the Preferred Stock were on notice of their

---

[10]  That the preferred stock had dropped from the offering price of $25.00 per share (Amended Complaint at ¶ 1) to
$10.95 per share by March 14, 2008, a loss of more than half its value, suggests that enough negative news
about Franklin had entered the market to put an investor on inquiry notice by that time – if not earlier.

claims.  What else can rationally explain the massive sell-off of those securities, if not that investors were made aware of pervasive issues concerning Franklin's financial statements?

Moreover, Roucher itself captured the essence of these disastrous announcements by Franklin when it alleged that "the truth was fully revealed" by May 1:

> 50.  For example, the Company's preferred stock closed at $10.95 per share on Friday, March 14, 2008.  That evening, Franklin issued a press release disclosing that it would be unable to timely file its 2007 10-K.  On the next day of trading, before the markets opened, the Bank filed an 8-K with the SEC attaching the March 14th press release as an exhibit.  Reacting to this news, the preferred shared dipped to $7.50, a decline of over 30%.

> 51.  *The truth was fully revealed after the close of business on May 1, 2008*, and Franklin's common stock plunged in value when the markets reopened.  While shares ended the day at $1.72 on May 1st, they had fallen to $1.03 – a decline of over 40% -- in just the next two days of trading.  The Bank's preferred shares suffered a similarly steep decline:  they retreated from $7.55 to $4.85 per share on May 2nd alone, a decline of over 35%.

Original Complaint at ¶¶ 50 & 51.  There can be no question that Roucher has characterized these two press releases as both corrective and highly material to investors and cannot now be allowed to argue that such announcements did not place a reasonable investor on notice.

The foregoing amply demonstrates that Roucher was on notice of its Section 11 claim arising out of the preferred stock offering no later than May 1, 2008 – and probably months earlier than that.  Therefore, Roucher's Section 11 claim against RBC, filed on May 4, 2009, is barred by the statute of limitations and must be dismissed.

**B.     The Section 11 Claim Against RBC Should be Dismissed as Deficient Under Rule 9(b) of the Federal Rules of Civil Procedure for Failure to Plead With Particularity.**

Roucher's Section 11 claim against RBC must meet the heightened pleading standard of Rule 9(b).  "When § 11 claims sound in fraud instead of negligence, the plaintiff is required to plead the circumstances constituting the alleged fraud with particularity to satisfy Rule 9(b)."  *In re Dynegy Sec. Litig*. 339 F.Supp.2d at 827; *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir.

1994) (holding that Rule 9(b) applies to Securities Act claims grounded in fraud). The Fifth Circuit has held that Rule 9(b) in a securities case requires a plaintiff to specify the time, place, and contents of the fraud, the identity of the defrauding party and what that party received by its fraudulent conduct. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993); *see also Tuchman v. DSC Communications Corp.*, 14 F.3d 1061 (5th Cir. 1994). "[B]oilerplate disclaimers of fraud are not dispositive of whether a claim under the 1933 Securities Act sounds in fraud." *Kurtzman v. Compaq Computer Corp.*, 2002 WL 32442832 at *24 (S.D. Tex. March 30, 2002). A securities fraud allegation requiring the application of Rule 9(b) generally uses words such as "inaccurate," "misleading," "untrue," and "false." *Rombach v. Chang*, 335 F.3d 164, 174 (2d Cir. 2004).

Roucher's allegations against RBC clearly sound in fraud. Roucher alleges that RBC "knew or should have known of Franklin's existing financial and accounting issues" and "that the complained of statements were misleading when made." Amended Complaint at ¶¶ 19, 21. Roucher further alleges that "[a]ll of the foregoing statements concerning financial condition and internal controls . . . were materially false and misleading because *defendants* knew or recklessly disregarded that" Franklin overstated its revenues and earnings, Franklin's credit loss reserves were not adequate, Franklin's method of identifying real estate risks was inadequate, and Deloitte's audit of Franklin's 2006 financial statements was not made in accordance with generally accepted accounting standards. Amended Complaint at ¶ 48. Roucher also claims "Defendants" knew of or recklessly disregarded Franklin's internal control and accounting deficiencies and undercapitalization as a result of the FDIC investigation and the whistle-blower letter; and due to RBC's constant communication with the Bank principals, RBC knew or should have known of the issues at Franklin. Amended Complaint at ¶¶ 19, 21, 82-84.

What Roucher alleges in support of its Section 11 claim, it then alleges again to support its Section 10(b) claim for fraud.  Amended Complaint at ¶¶ 112, 131.  In *Melder,* plaintiffs argued that their Securities Act claims were inappropriately subjected to the heightened pleading standards of Rule 9(b).  But the court found that "argument [ ] untenable in light of the complaint's wholesale adoption of the allegations under the securities fraud claims for purposes of the Securities Act claims."  *Melder*, 27 F.3d at 1100 n.6.  As in *Melder*, Roucher applies the whole of its Section 10(b) fraud allegations to the Section 11 claim against RBC.

Despite making allegations against RBC that sound in fraud, Roucher fails to specify the particulars of its Section 11 claim as required by *Shushany*.  Nowhere does Roucher allege who at RBC acquired the alleged knowledge of misstatements by Franklin, when or from whom it was acquired or even what facts RBC supposedly learned.  This failure to allege specifically the who, what, when, and where of its allegations against RBC is fatal to its claims under Rule 9(b).  *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (requiring plaintiff to plead "the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby.").

**C.     The Section 11 Claim Against RBC Should be Dismissed Because Roucher Fails to Allege Facts Suggesting That There Were Material Misstatements in the Offering Documents.**

In assessing the adequacy of Roucher's allegations, it is necessary to distinguish between allegations of fact, on the one hand, and unsupported inferences and conclusory allegations, on the other.  It is only allegations of fact that must be accepted on a motion to dismiss; the rest may be rejected.  *Twombly*, 550 U.S. at 546-47 (2007) (plaintiff must rely on "more than labels and conclusions, and a formulaic recitation of a cause of action's elements" to state a plausible claim for relief); *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (holding that "conclusory

allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

Here, Roucher has sued RBC solely under Section 11 for supposed material misstatements in the Offering Documents for Franklin's May 5, 2006 preferred stock offering. Roucher, however, has pled no *facts* suggesting that the Offering Documents contained any material misstatements. Instead, Roucher relies upon alleged misstatements made after the preferred stock offering, in documents not contained within or incorporated into the Offering Documents, and seeks to draw the impermissible inference that those somehow demonstrate that the Offering Documents contained material misstatements. The documents Roucher cites to support that impermissible inference, however, the July 2009 FDIC Office of Inspector General Report ("OIG Report")[11] and Franklin's August 6, 2008 Form 8-K,[12] actually provide no such support.

Roucher alleges that the Offering Documents were false because they failed to disclose that: (1) Franklin's accounting function and internal controls were materially deficient; (2) the Bank had inadequate loan loss reserves; (3) Franklin accounted for loan loss reserves improperly; (4) Franklin's accounting for delinquent loans, REO, loan modifications, investment securities and Bank owned life insurance was improper; (5) the Bank's Allowance for Loan and Lease Losses ("ALLL") methodology was a "subject of concern;" (6) the Bank failed to implement suggestions made by its examiners; and (7) the Bank engaged in high-risk subprime

---

[11] *See, e.g.* Amended Complaint at ¶ 38. A true and correct copy of the OIG Report is attached to the Lunn Decl. as Exh. G.

[12] *See, e.g.* Amended Complaint at ¶ 36. A true and correct copy of the August 6 Form 8-K is attached to the Lunn Decl. as Exh. H.

lending.  Amended Complaint at ¶ 32.  In addition, Roucher alleges that, because of the foregoing, the financial statements contained in the Offering Documents were misstated.

The Preferred Offering took place in May 2006.  The only financial statements contained within or incorporated into the Offering Documents were Franklin's 2004 and 2005 year-end financial statements and its quarterly statement for the first quarter of 2006.[13]  In August 2008, Franklin made clear that the investigation it had undertaken embraced all time periods dating back to 2004.  Franklin's financial statements for 2004 and 2005, however, were never called into question.  And nowhere in the Amended Complaint does Roucher allege any specific accounting violation as to the unaudited financials for the first quarter of 2006.  The Amended Complaint is entirely devoid of any factual allegation pointing to errors, much less material errors, in any of the financial statements incorporated into the Offering Documents.  Indeed, the Amended Complaint's silence on this point is deafening.

Roucher does allege that Franklin admitted, in the August 6, 2008 8-K, that its interest income for 2006 was misstated.  Amended Complaint at ¶ 36.  As an initial matter, the 2006 year-end financial statements were not included in the May 2006 Offering Documents and Roucher nowhere alleges that the bank's first quarter 2006 financial statements were materially misstated as to interest income.  Second, the preliminary estimates of errors in reported interest income for the full year were immaterial as a matter of law.  The reported errors reduced 2006 total interest income by $1.325 million out of $291.6 million, or 0.46%, and reduced net interest income by $1.36 million out of $92.718 million, or 1.47%.  Either is clearly immaterial.  *See, e.g.*

---

[13]  Since the 2004 and 2005 year-end financial statements were audited (expertised) by Franklin's independent auditors, RBC was entitled to rely upon those financial statements without more as Roucher has alleged no facts suggesting that RBC should have known the auditor's opinions were not correct.  15 U.S.C. § 77k(b)(3).

SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (1999)[14] ("the misstatement or omission of an item that falls under a 5% threshold is not material in the absence of particularly egregious circumstances, such as self-dealing or misappropriation by senior management."); *Krim v. Banctexas Group, Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993) (understatement of loans by 7% not material as a matter of law); *ECA v. JP Morgan Chase Co.*, No. 07-1786-cv, 2009 WL 129911 at *11 (2d Cir. Jan. 21, 2009) ("The five percent numerical threshold is a good starting place for assessing the materiality of the alleged misstatement."); *Taubenfeld v. Hotels.com*, 385 F. Supp. 2d 587, 593-94 (N.D. Tex. 2004) (understatement of revenue by 1.5% and of reserves by 1.0% immaterial).

Roucher also seeks to rely on the Office of Inspector General Report ("OIG Report") in asserting falsity of the Offering Documents.  However, there is nothing in that report that challenges the financial statements incorporated by reference into the May 2006 public offering documents.  It simply does not speak to the time period at issue.  And any conclusions within the OIG Report as to financial statements *not* incorporated into the Offering Documents are irrelevant.  It simply does not follow as a matter of law or logic—and therefore courts and litigants are not permitted to make the inference—that a company's financial statements in year one were incorrect merely because the company later restated financial statements for year two or three or thereafter.  *See, e.g., Southland Sec. Corp.*, 365 F.3d at 383 ("fraud cannot be proved by hindsight"); *Arazie v. Mullane*, 2 F.3d 1456, 1468 (7th Cir. 1993).

In short, Roucher's *factual* allegations pertain to time periods that post-date the Preferred Offering and, therefore, shed no light on what, if anything, was misstated in the Offering

---

[14]   A true and correct copy of SEC Staff Accounting Bulletin No. 99 is attached to the Lunn Decl. as Exhibit I.

Documents.  That leaves only unsupported, conclusory allegations of falsity and those are insufficient to state a claim.  *Twombly*, 550 U.S. at 546-47.

## VI.
## CONCLUSION

Roucher's Amended Complaint against RBC is time-barred and, in addition, fails to state a claim against RBC for the reasons set forth above.  Therefore, RBC respectfully requests that the Court enter an order dismissing all claims against RBC Capital Markets Corporation and grant such other and further relief as the Court deems just and proper.

DATED:  March 5, 2010

Respectfully submitted,


   /s/ Jonathan C. Dickey

Jonathan C. Dickey, Lead Attorney
*admitted pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-2399
Facsimile: (212) 351-6399
Email: jdickey@gibsondunn.com

M. Byron Wilder
State Bar No. 00786500
Samantha A. Lunn
State Bar No. 24050595
Kelly A. Bohne
State Bar No. 24057358
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
Email: bwilder@gibsondunn.com
Email: slunn@gibsondunn.com
Email: kbohne@gibsondunn.com

**ATTORNEYS FOR DEFENDANT RBC
CAPITAL MARKETS CORP.**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument was served upon

the following via ECF filing notice in accordance with Rule 5 of the Federal Rules of Civil

Procedure on this 5th day of March, 2010:

J. Allen Carney
Darrin Williams
Randall K. Pulliam
CAULEY BOWMAN ET AL
11311 Arcade Dr., Suite 200
Little Rock, AR  72211
Tel.:  (501) 312-8500
Fax:  (501) 312-8505

William Fred Hagans
HAGANS BURDINE PC
3200 Travis, 4th Floor
Houston, TX  77006
Tel:  (713) 222-2700
Fax:  (713) 547-4950

***Attorneys for Franklin Investor Group***

Stephen Edward McConnico
Cynthia Saiter Connolly
SCOTT DOUGLAS ET AL
600 Congress Ave., Suite 1500
Austin, TX  78701
Tel.:  (512) 495-6300
Fax:  (512) 474-0731

***Attorneys for Defendants Lewis S. Ranieri,***
***Lawrence Chimerine, David M. Golush, James A.***
***Howard, Alan E. Master, Robert A. Perro,***
***William Rhodes, and John B. Selman***

James G. Munisteri
GARDERE WYNNE ET AL.
1000 Louisiana, Suite 3400
Houston, TX  77002
Tel.:  (713) 276-5752
Fax:  (713) 276-5555

***Attorney for Defendant Anthony J. Nocella***

Ralph M. Stone
SHALOV STONE ET AL
485 7th Avenue, Suite 1000
New York, NY  10018
Tel.:  (212) 239-4340
Fax:  (212) 239-4310

Roger B. Greenberg
SCHWARTZ JUNELL ET AL
909 Fannin, Suite 2700
Houston, TX  77010
Tel.:  (713) 752-0017
Fax:  (713) 752-0327

***Attorneys for The Harold Roucher Trust***

Andrew J. DeFilippis
Brian T. Frawley
William B. Monahan
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
(212) 558-4000

***Attorneys for Defendant Lewis S. Ranieri***

Barrett H. Reasoner
GIBBS BURN LLP
1100 Louisiana, Suite 5300
Houston, TX 77002
Tel.:  713-650-8805
Fax:  713-750-0903

***Attorney for Defendant Russell McCann***

Farbod Moridani
James J. Farrell
Peter Wald
Terri L. Lilley
Latham & Watkins LLP
355 South Grand Avenue
Los Angeles, CA 90071
Tel.:  (213) 485-1234
Fax:  (213) 891-8763

George W. Sheperd, III
Cruse Scott et al.
2777 Allen Parkway, 7th Floor
Houston, TX 77019
Tel.:  (713) 650-6600
Fax:  (713) 650-1720

***Attorneys for Defendant Deloitte & Touche LLP***

   /s/ Samantha A. Lunn   
Samantha A. Lunn

100729415_12.DOC