**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

CIVIL FILE NO.     4:08-CV-01810 (KPE)

CLASS ACTION

| | |
|---|---|
| | § |
| In re FRANKLIN BANK CORP., | § |
| SECURITIES LITIGATION | § |
| | § |
| | § |

**DEFENDANTS CHIMERINE, GOLUSH, HOWARD, MASTER, PERRO, RHODES, AND**
**SELMAN'S MOTION TO DISMISS AMENDED CONSOLIDATED PREFERRED STOCK**
**PURCHASER COMPLAINT AND BRIEF IN SUPPORT**

Steve McConnico
Cynthia Saiter Connolly
SCOTT, DOUGLASS & McCONNICO, L.L.P.
600 Congress Avenue, Suite 1500
Austin, Texas  78701-2589
(512) 495-6300
(512) 474-0731 Fax

*ATTORNEYS FOR DEFENDANTS LAWRENCE*
*CHIMERINE, DAVID M. GOLUSH, JAMES A.*
*HOWARD, ALAN E. MASTER, ROBERT A.*
*PERRO, WILLIAM RHODES, AND JOHN B.*
*SELMAN ("DIRECTORS")*

March 5, 2010

i

689173

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................... 1

NATURE AND STAGE OF PROCEEDINGS ................................................. 2

ISSUES PRESENTED ............................................................................. 3

SUMMARY OF ARGUMENT ................................................................... 3

ARGUMENT AND AUTHORITIES .......................................................... 4

I.      LEGAL STANDARD ................................................................. 4

II.     PREFERRED PLAINTIFFS' EXCHANGE ACT CLAIMS FAIL TO
        ALLEGE A MATERIALLY MISLEADING STATEMENT BY THE
        DIRECTORS ............................................................................. 6

        A.      "Group Pleading" Allegations Against The Directors Are
                Insufficient ................................................................... 6

        B.      The Trust Does Not Adequately Allege The Audit Committee
                Report Was Materially False or Misleading. ....................... 8

III.    SECTION 10(b) SCIENTER ALLEGATIONS FAIL ........................ 9

        A.      No Directors Had Any Motive to Commit the Alleged "Fraud." ..... 9

                1.      Chimerine, Golush, Howard, Master, Perro, and Rhodes
                        Acquired More Shares Throughout Class Period .......... 10

                2.      Selman's Sale of Franklin Shares Does Not Establish
                        Scienter. ........................................................... 11

        B.      No Strong Inference of Scienter Arises From the Audit Committee
                Report. ........................................................................ 13

        C.      Preferred Plaintiffs' Other Allegations Fail to Raise a Strong
                Inference of Any Director's Scienter. ............................... 13

                1.      The August 2008 Restatement Does not Establish Scienter. .......... 14

                2.      Craig Wolfe Letter Does Not Establish Scienter. ............. 15

3.      The FDIC Documents Relied on in the PSC Do Not Establish Scienter. .......................................................................................... 16

IV.     Preferred Plaintiffs' Own Pleading Rebuts Their Reliance Allegations. ............... 21

V.      Preferred Plaintiffs' Securities Act Claims Are Barred by the Statute of Limitations. ............................................................................................................ 23

        A.      Preferred Plaintiffs Fail to Plead Compliance with Section 13. .................. 24

        B.      Preferred Plaintiffs Were on Inquiry Notice More Than a Year Before their Section 11 Claims Were Filed. ............................................... 25

VI.     Preferred Plaintiffs' Section 11 Claim Fails as a Matter of Law. .......................... 28

        A.      Preferred Plaintiffs Fail to Adequately Plead the Section 11 Claim. .......... 28

                1.      The Statements in the Registration Statement Regarding Risk Were Neither False Nor Material. ..................................................... 30

VII.    Because There Is No Primary Violation, There is No Claim Under Section 15 of Section 20(a). ................................................................................................. 35

        CONCLUSION ..................................................................................................... 36

iii

689173

# TABLE OF AUTHORITIES

<u>Cases</u>

*ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336 (5th Cir. 2002) .............................. 6, 17

*Abrams v. Baker Hughes, Inc.*, 292 F.3d 424 (5th Cir. 2002) ........................................................ 14

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) .............................................................................. passim

*Bryant v. Uland*, 327 F.Supp. 439 (S.D.Tex 1971) .............................................................. 23, 25

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)........................................ 5

*Colonial Leasing Co. v. Logistics Control Group Int'l*, 762 F.2d 454 (5th Cir. 1985) ............... 19

*Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496 (5th Cir. 1990) ........................................................ 35

*Fener v. Belo Corp.*, 425 F.Supp.2d 788 (N.D.Tex 2006)............................................................... 8

*Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278 (5th Cir. 2006). ......................... passim

*Fine v. Am. Solar King*, 919 F.2d 290 (5th Cir. 1990).................................................................. 13

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200 (5th Cir. 2009). ........................................................................................................................................... 4

*Halperin v. eBanker USA.Com, Inc.*, 295 F.3d 352 (2nd Cir. 2002). ........................................ 32

*In re Alcatel Sec. Litig.*, 382 F.Supp.2d 513 (S.D.N.Y. 2005) ...................................................... 9

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F.Supp.2d. 800 (S.D.Tex. 2007) ................................................................................................................................... 5, 20

*In re JP Morgan Chase Sec. Litig.*, 363 F.Supp.2d 595 (S.D.N.Y. 2005).................................... 31

*Ind. U.S. Elec. Worker's Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527 (5th Cir. 2008)............................................................................................................... passim

*Jenson v. Snellings*, 841 F.2d 600 (5th Cir. 1988) ................................................................. 25, 26

*Kaltman v. Key Energy Servs.*, 447 F.Supp.2d 648 (W.D.Tex. 2006)........................................... 8

*Lone Star Ladies Inv. Club v Schlotzsky's, Inc.*, 238 F.3d 363 (5th Cir. 2001)............................ 29

*Lovelace v. Software Spectrum*, 78 F.3d 1015 (5th Cir. 1996);..................................................... 9

*Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) ........................................................................... 9

iv

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006) ............................ 6, 9

*Mortensen v. AmeriCredit Corp.*, 123 F.Supp.2d 1018 (N.D.Tex. 2000) .................................... 13

*Nathenson v. Zonagen Inc.*, 267 F.3d 400 (5th Cir. 2001) ...................................... passim

*Newby v. Lay*, 258 F.Supp. 576 (S.D.Tex. 2003) ....................................... 10, 12, 17, 35

*Newman v. Warnaco Group Inc.*, 335 F.3d 187 (2nd Cir. 2003)................................... 26

*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007) .......... 21, 23

*Reed v. Prudential Sec., Inc.*, 875 F.Supp. 1285 (S.D.Tex. 1995)................................................ 24

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) ........................................... 10

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) ....... 2, 7, 11, 35

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007) ................................... passim

*Topalian v Ehrman*, 954 F.2d 1125 (5th Cir. 1992) ............................................. 23, 25

*United States ex. rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 689 (W.D. Tex. 2007) ................................................................................................. 19

Statutes

15 U.S.C. § 77k(a) .................................................................................................. 32

15 U.S.C. § 78u-4(b)(1)-(2) ..................................................................................... 6, 7

Rules

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................... passim

Fed. R. Civ. P. Rule 9(b)...................................................................................... 1, 5, 6, 28

Regulations

12 C.F.R. 309.2(e)................................................................................................. 18, 33

Securities and Exchange Commission  Rule 10b-5 ..................................................... 1

Pursuant to Rules 9(b) and 12(b)(6), Fed. R. Civ. P., Defendants Lawrence Chimerine, David M. Golush, James A. Howard, Alan E. Master, Robert A. Perro, William Rhodes, and John B. Selman ("Directors") submit this motion to dismiss ("Motion") the Amended Consolidated Preferred Stock Purchaser Complaint filed in this action on December 22, 2009 ("PSC") by Plaintiffs Joseph Pribyl ("Pribyl") and The Harold Roucher Trust ("Trust") (collectively, "Preferred Plaintiffs") under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.[1]

## PRELIMINARY STATEMENT

Congress enacted the Private Securities Litigation Reform Act of 1995 ("PLSRA") to "prevent the abuse of federal securities laws by private plaintiffs." *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 406 (5th Cir. 2001).  To achieve that laudable goal, the PLSRA heightened the pleading requirements for securities fraud claims. *Id.* at 406-7.  Now, a plaintiff must do more than merely allege bad news about a company.  Rather, to avoid mandatory dismissal, a securities fraud plaintiff must (1) "state with particularity facts giving rise to a strong inference" that each defendant acted with scienter, and (2) "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* at 412.  This is a heavy burden Preferred Plaintiffs fail to meet.

Instead, Preferred Plaintiffs resort to the well-known phenomenon of papering over faulty claims with lengthy pleadings.  The PLSRA was designed to illicit clarity, not volume.  As the Fifth Circuit noted in respect to securities fraud complaints: "A complaint can be long-winded,

---

[1] All references to "Section 10(b)" herein encompass both Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

1

even prolix, without pleading with particularity.   Indeed, such a garrulous style is not an uncommon mask for an absence of detail."   *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).   Such is the case here.   Ignoring their burden under the PLSRA, Preferred Plaintiffs present this Court with a 78-page puzzle pleading that is as long on speculation as it is devoid of particularity.   Rather than allege specific misrepresentations by specific defendants with specific facts supporting a strong inference of scienter, Preferred Plaintiffs rely on impermissible group pleading and 20/20 hindsight to broadly surmise supposed "material misrepresentations" and "material omissions" in past statements made by unidentified "Defendants."   Under Fifth Circuit precedent, such pleadings fail as a matter of law.

## NATURE AND STAGE OF PROCEEDINGS

The Roucher Trust originally filed securities fraud claims under the Exchange Act against Franklin Bank Corp. ("Franklin"), its Chief Executive Officer ("Nocella"), and its Chief Financial Officer ("McCann") on June 6, 2008.[2]   On May 4, 2009, The Trust amended its complaint to assert, for the first time, allegations against the Directors, including time-barred claims under Section 11 and Section 15 of the Securities Act.   On August 11, 2009, the Trust filed yet another amended complaint, improperly disclosing selective mischaracterizations of sealed FDIC documents.   On December 22, 2009, the Trust took one last bite at the apple, amending its complaint to add, as a new plaintiff, Joseph Pribyl.   Preferred Plaintiffs have had over eighteen months and four chances to amend their pleadings to ensure compliance with the PLSRA and the Federal Rules of Civil Procedure.   They have failed.   As set forth below, Preferred Plaintiffs claims should be dismissed with prejudice.

---

[2] The Roucher Trust asserted only two claims in its June 6, 2008 pleading: (1) a claim against Franklin, Nocella, and McCann for alleged violations of Section 10(b) of the Exchange Act and (2) a claim against Nocella and McCann for alleged violations of Section 20(a) of the Exchange Act.   *See* Docket No. 1 at 23-25.

## ISSUES PRESENTED

1.  Do Preferred Plaintiffs fail to state Exchange Act claims against the Directors where the PSC does not (1) "state with particularity facts giving rise to a strong inference" that each Director acted with scienter, (2) "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent,"[3] or (3) adequately allege reliance and loss causation?

2.  Do Preferred Plaintiffs fail to state Securities Act claims against the Directors where the PSC shows that Preferred Plaintiffs' claims are barred by the statute limitations, or in the alternative, negative causation, as a matter of law?

3.  Do Preferred Plaintiffs fail to state Securities Act claims against the Directors for same the reasons set forth above, and, alternatively, where the alleged misstatements are neither false nor material?

4.  Do Preferred Plaintiffs fail to state Section 15 and Section 20 claims where the PSC fails to adequately allege a predicate violation by a controlled person or that any Director induced or participated in a predicate violation?

Determination of adequacy of the PSC as it relates to each of the issues set forth above is subject to *de novo* review. *Ind. U.S. Elec. Worker's Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 533 (5th Cir. 2008) ("We review the sufficiency of the complaint *de novo* on appeal.").

## SUMMARY OF ARGUMENT

Preferred Plaintiffs fail to state a claim against the Directors for the following reasons:

1.  Preferred Plaintiffs fail to plead with particularity any materially misleading statement made by any specific Director during the Class Period.  Instead, Preferred attempt to attribute otherwise unattributed statements to all of the Directors with precisely type of "group pleading" that has been squarely rejected by the 5th Circuit.

2.  Preferred Plaintiffs fail to allege facts supporting a strong inference of scienter in respect to any Director.  To the contrary, such an inference is negated by public documents showing that the Directors either maintained or increased their holdings of common and/or preferred stock during the Class Period.  Franklin's August 6, 2008 restatement is also insufficient to create an inference—settled Fifth Circuit precedent holds that such a restatement, without more, does not establish scienter.  No inference can arise from the Craig Wolfe letter, which does not allege any wrongdoing by any Director.  And the

---

[3] *Nathenson*, 267 F.3d at 412.

FDIC reports referenced in the PSC cannot raise an inference of scienter, since the PSC fails to allege that any Director received or reviewed the reports during the relevant time.[4]

3.  Preferred Plaintiffs' own pleading rebuts the fraud-on-the-market presumption.  Because there is no other allegation of reliance, Preferred Plaintiffs' Exchange Act claims must be dismissed.

4.  Preferred Plaintiffs' Section 11 and Section 15 claims are barred by the applicable one-year limitations period.  Not only do Preferred Plaintiffs fail to plead compliance with limitations period—a substantive element of their claims—the PSC conclusively shows they were on inquiry notice more than a year before their Securities Act claims were filed.

5.  Preferred Plaintiffs fail to adequately plead their Section 11 claim.  Each of the allegations relating to the Registration Statement are conclusory and not entitled to an assumption of veracity, and none of Preferred Plaintiffs' other averments show their claim for relief is plausible on its face.

6.  Preferred Plaintiffs' control person liability claims under Section 15 and 20(a) fail as a matter of settled law.  To survive a motion to dismiss, Section 15 and 20(a) allegations must do more than state a defendant's position and title; they must allege facts demonstrating the defendant induced or participated in the primary violator's actions.  Preferred Plaintiffs not only fail to adequately allege any predicate violation by a controlled person, they fail to show any inducement or participation in such violation by any Director.

## ARGUMENT AND AUTHORITIES

## I.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff "must plead 'enough facts to state a claim for relief that is plausible on its face.'"  *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206 (5th Cir. 2009).  Conclusory allegations and unwarranted deductions of fact are to be disregarded and only "well-pleaded, nonconclusory factual allegations" considered when determining whether the complaint "contain[s] sufficient

---

[4] In addition, as discussed in Section III(C)(3)(b), disclosure of the reports or the information they contain without FDIC approval is prohibited by 12 C.F.R. 309.6.  Not only do Preferred Plaintiffs fail to allege they have authority to disclose the reports, they acknowledge the information is "nonpublic" and "exempt" from disclosure.  Preferred Plaintiffs' knowing unlawful partial disclosure is prejudicial and improper.  It prevents the Directors from completing the record with the very information that would give rise to the plausible nonculpable inferences to which they are entitled and which the Supreme Court requires this Court to consider.  The FDIC reports should be considered in their entirety or not at all.

4

factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-51 (2009). Unless the well-pleaded facts "permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed. *Id.* at 1950-51 (well-pleaded facts must "nudge[] … claims across the line from conceivable to plausible" to avoid dismissal).

On a motion to dismiss in a securities action, the Court may consider matters of public record, documents filed with the SEC, and "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Fin. Acquisition Partners, LP v Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). In addition, "any documents attached by a defendant to its motion to dismiss that are referred to in the plaintiffs' complaint are considered part of the pleadings" for the purpose of a 12(b)(6) motion. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F.Supp.2d. 800, 809 (S.D.Tex. 2007); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).[5]

Further, the PSLRA and Rule 9(b) impose heightened pleading requirements on claims for securities fraud brought under Section 10(b). Under Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). In addition, the PSLRA "[i]nsists that securities fraud complaints 'specify' each misleading statement; that they set forth the facts 'on which [a] belief' that a statement is misleading was 'formed'; and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind'" for each act or omission

---

[5] For the convenience of the Court, the individual defendants have filed Individual Defendants' Joint Appendix ("App."), which includes each of the documents relied on in the individual defendants's various motions to dismiss. Directors incorporate by reference Individual Defendants' Joint Appendix and the documents contained therein. Similarly, pursuant to Rule 6.B of the Court's Individual Rules, the individual defendants are providing the Court with a Joint Compendium of unreported authorities cited within their motions.

alleged to have been misleading.  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006); *see* 15 U.S.C. § 78u-4(b)(1)-(2); *see also ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002) (under Rule 9(b) and the PSLRA, plaintiff must allege the "who, what, when, where, and how" of each misstatement or omission).[6]

To avoid dismissal, a "strong inference" of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2504-05 (2007).  When making that determination, the Court "must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff … but also competing inferences rationally drawn from the facts alleged."  *Id.* at 2504 & 2510 ("[t]he strength of an inference cannot be considered in a vacuum").  If the inference of scienter is plausible yet less compelling than nonculpable explanations for the defendant's conduct, dismissal is proper.  *Id.* at 2510.

## II. THE TRUST'S EXCHANGE ACT CLAIMS FAIL TO ALLEGE A MATERIALLY MISLEADING STATEMENT BY THE DIRECTORS

### A. "Group Pleading" Allegations Against The Directors Are Insufficient.

In respect to its Exchange Act claims, the Trust[7] alleges that a total of 15 SEC filings made by Franklin during the Class Period were materially misleading.[8]  However, with the

---

[6] The "required state of mind" is "an intent to deceive, manipulate or defraud, and includes severe recklessness." *Fin. Acquisition Partners, LP*, 440 F.3d at 287.  "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Nathenson*, 267 F.3d at 408.

[7] Pribyl does not assert claims under Section 10(b) or Section 20(a) of the Exchange Act.

[8] The Trust bases its 10(b) claims solely on statements made during the Class Period, which it defines as January 31, 2007 through August 6, 2008.  PSC at 2 & ¶ 74.  The 15 SEC filings on which the Trust bases its complaint are: (1) a press release filed January 31, 2007 (PSC, ¶ 41); (2) the March 14, 2007 Annual Report of Form 10-K (PSC, ¶ 44); (3) the March 29, 2007 Proxy Statement (PSC, ¶ 49); (4) a press release filed on April 19, 2007 (PSC, ¶ 52); (5) a press release filed on April 26, 2007 (PSC, ¶ 53); (6) the May 10, 2007 Quarterly Report on Form 10-Q (PSC, ¶ 54); (7) a press release filed on July 24, 2007 (PSC, ¶ 56); (8) the August 9, 2007 Quarterly Report on Form 10-Q (PSC, ¶ 59); (9) the August 20, 2007 attachment to Form 8-K (PSC, ¶ 60); (10) the September 10, 2007 attachment to

6

exception of the Audit Committee Report attached to the March 29, 2007 Proxy Statement,[9] the PSC is devoid of any nonconclusory allegation that any specific Director signed or otherwise was involved in the creation the challenged documents.  Instead, the Trust attempts to impose liability on *all* the Directors by broadly asserting that the alleged misrepresentations were made by "Franklin," the "Bank," or unspecified "Defendants." [10]

The Fifth Circuit has squarely rejected such "group pleading" in securities fraud cases. *Southland Sec. Corp.*, 365 F.3d at 363-65.  The basis for that rejection is straightforward: group pleading simply cannot "withstand the PSLRA's specific requirement that the untrue statements or omissions be set forth with particularity as to '*the* defendant' and that scienter be pleaded with regard to '*each* act or omission.'"  *Id.* at 364 (quoting 15 U.S.C. § 78u-4(b)) (emphasis added). Consequently, "an Individual Defendant is *not* liable for [a corporate] business filing unless he either signed it or was involved in its creation."  *Fin. Acquisition Partners*, 440 F.3d at 288 (emphasis in original).

With the sole exception of the March 29, 2009 Audit Committee Report discussed above, the PSC fails to allege that any specific Director signed or was involved in preparing any specific SEC filing during the Class Period.  As a matter of black letter Fifth Circuit law, the Directors cannot be liable for any allegedly misleading statements contained in those other filings, and the Trust's claims based on such filings should be dismissed.  *Id.*; *see also Kaltman v. Key Energy*

---

Form 8-K (*Id.*); (11) the October 30, 2007 attachment to Form 8-K (*Id.*); (12) a press release filed October 29, 2007 (PSC, ¶ 61); (13) the November 9, 2007 Quarterly Report on Form 10-Q (PSC, ¶ 63); (14) a November 26, 2007 press release (PSC, ¶ 64); and (15) a press release filed January 31, 2008 (PSC, ¶ 68).  The Trust also cites, but does not appear to challenge the veracity of, (1) a press release filed March 14, 2008 (PSC, ¶ 72); (2) a press release filed May 1, 2008 (PSC, ¶ 73); (3) a press release filed May 19, 2008 (PSC, ¶ 74); and (4) the August 6, 2008 Report on Form 8-K (PSC, ¶ 76).

[9] As discussed *infra* at Section II(B), the Trust fails to state a claim in respect to the Audit Committee Report.  In fact, the Audit Committee Report appears to have been included in the PSC solely because it was a document signed by a few of the Directors during the Class Period.

[10] *See, e.g.*, PSC, ¶ 132-33 (baldly stating, without any supporting facts, that "[e]ach of the Defendants participated in the drafting, reviewing and/or approving of the misleading statements").

*Servs.*, 447 F.Supp.2d 648, 657-58 (W.D.Tex. 2006) (directors who did not "sign[] any press releases or SEC forms which contained the alleged misstated earnings" did not make a "statement" under Section 10(b)); *Fener v. Belo Corp.*, 425 F.Supp.2d 788, 798 (N.D.Tex 2006) (dismissing claims against three directors because they did not sign the relevant SEC filings).

> ### B.     The Trust Does Not Adequately Allege The Audit Committee Report Was Materially False or Misleading.

The *only* document alleged by the Trust to have been signed by *any* of the Directors during the Class Period was the March 26, 2007 Audit Committee Report ("Report") that was attached to the March 29, 2007 Proxy Statement.[11]   Other than the fact the Report was signed by four Directors—Howard, Chimerine, Golush and Master—it is unclear why Preferred Plaintiffs referenced it in the PSC.  In fact, the Trust's *entire* allegation is a bald assertion that the Report was "materially false and misleading," followed by this block quote:

> As part of its oversight of the Company's financial statements, the Audit Committee reviewed and discussed with both management and the Company's independent auditors the audited financial statements prior to their issuance. These reviews included discussion with Deloitte & Touche LLP, the independent auditors, of matters required to be discussed pursuant to Statement on Auditing Standards No. 61 (Communication with Audit Committees).  The Audit Committee also discussed with Deloitte & Touche LLP matters relating to its independence, including a review of the written disclosures and letter from Deloitte & Touche LLP to the Audit Committee pursuant to Independence Standards Board Standard No. 1 (Independence Discussions with Audit Committees).
>
> Taking all of these reviews and discussions into account, the Audit Committee on March 8, 2007 recommended to the Board that the Board approve the inclusion of the Company's audited financial statements in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2006, for filing with the Commission.[12]

---

[11] PSC, ¶ 49; App., Tab 8 at 9.
[12] PSC, ¶ 49; App., Tab 8 at 9.

Nothing on the face of this statement is "materially false or misleading," and nowhere in the PSC is there any factual allegation that the reviews, discussions, or recommendations set forth in the Report did not occur.[13]   The Trust's pleading burden under the PSLRA is clear: it must "'specify' each misleading statement … [and] set forth the facts 'on which [a] belief' that a statement is misleading was 'formed.'"   *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 547 U.S. at 81-82.   The Trust not only fails to satisfy the second prong, it fails to address it at all.   The Trust's pleading in respect to the Report is precisely the sort of conclusory allegation Congress sought to prohibit when enacting the PSLRA, and its claims based on the Report should be dismissed.   *See In re Alcatel Securities Litigation*, 382 F.Supp.2d 513, 534 -535 (S.D.N.Y. 2005) (dismissing claims where 102-page complaint merely "set[] forth lengthy quotations" without explaining how specific statements within the quotes were false).

## III.     SECTION 10(b) SCIENTER ALLEGATIONS FAIL.

### A.     No Directors Had Any Motive to Commit the Alleged "Fraud."

Where a plaintiff does not sufficiently allege that a defendant had a motive to defraud, the plaintiff faces a "more stringent standard" of pleading scienter.   *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1019 n.3 (5th Cir. 1996); *R2 Invs. v. Phillips*, 401 F.3d 638, 644 (5th Cir. 2005) (where a "plaintiff has not alleged a clear motive for the alleged misstatements or omissions, the strength of its circumstantial evidence of scienter must be correspondingly greater"); *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994) (where "there is no allegation that any of the corporate defendants actually personally profited from the allegedly inflated stock values,"

---

[13] Nor is there any allegation that the Report fails to disclose Preferred Plaintiffs' laundry list of allegedly material information.  *See* PSC ¶¶ 32-33 & 49.  And even if the PSC contained such an allegation, it would be insufficient. In this Circuit, liability under Section 10(b) for nondisclosure arises only if the challenged disclosure "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists."  *Shaw Group*, 537 F.3d at 541.  Nothing in the Report affirmatively creates any impression in respect to any item in Preferred Plaintiffs' laundry list.  In fact, there is no mention of them at all.

plaintiffs "face a tougher standard for establishing fraudulent intent"); *see also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867 (5th Cir. 2003) (lack of allegation that defendants sold shares "call[ed] into question the alleged motive to artificially inflate the stock price").  As set forth below, the PSC offers no reason why the Directors—who sold ***no*** preferred shares during the Class Period—would engage conduct resulting in the Bank's and their own financial misfortune.

### 1. Chimerine, Golush, Howard, Master, Perro, and Rhodes Maintained or Acquired More Shares Throughout Class Period.

Preferred Plaintiffs do not allege that Directors Chimerine, Golush, Howard, Master, Perro, or Rhodes sold *any* shares during the class period—much less in suspicious quantities or at suspicious times—and Franklin's SEC filings confirm that these directors either maintained or *increased* their shares of Franklin's preferred and/or common stock throughout the Class Period.[14]  This fact alone precludes a strong inference of scienter.  *See Newby v. Lay*, 258 F.Supp. 576, 613, 635-36 (S.D.Tex. 2003) (no inference of scienter where the defendants increased their stock holdings during the Class Period).

The absence of *any* allegation of a motive to artificially inflate Franklin's stock, coupled with these Directors' acquisition of additional stock at the allegedly inflated price, renders any inference of scienter implausible and certainly less cogent than the reasonable, nonculpable inference that the Directors had an incentive to protect the long-term health of Franklin. *Nathenson*, 267 F.3d at 421 ("[T]he fact that the other defendants did not sell their shares during the relevant class period undermines plaintiffs' [scienter] claim.").  Accordingly, the Section 10(b) claims should be dismissed.

---

[14] *See* App., Tab 15 at (A) (Chimerine increased common stock), (B) (Golush increased common and preferred stock), (C) (Howard neither bought nor sold during Class Period), (D) (Master increased common and preferred stock), (E) (Perro increased common stock), (F) (Rhodes increased common stock).  For the Court's convenience, a summary of the Director's SEC Form 4 filings is included at App., Tab 15.

### 2.  Selman's Sale of Franklin Shares Does Not Establish Scienter.

The *only* Director alleged to have sold shares during the Class Period is Selman.  The Fifth Circuit, however, recognizes that corporate officers and directors "trade th[eir] securities in the normal course of events," and thus "will not infer fraudulent intent from the mere fact that some officers sold stock."  *Shaw Group*, 537 F.3d at 543.  Allegations that a corporate insider sold shares is probative of scienter "'only' when 'in suspicious amounts or at suspicious times.'"  *Southland Sec. Corp.*, 365 F.3d at 368.  And "[p]ursuant to *Tellabs* ... both culpable and nonculpable explanations for stock sales, as revealed in the pleadings and associated documents, must be considered."  *Shaw Group*, 537 F.3d at 543.

Here, two paragraphs in the PSC refer to stock sales by Director Selman:

"On July 31, 2007 and August 1, 2007, defendant Selman sold 20,000 shares of common stock at prices ranging from $10.07 to $11.37 per share." ("Summer Sales")[15]

"On November 28, 2007, defendant Selman sold 10,000 shares of Franklin stock at $4.29 to $4.30 per share.  On December 7, 2007, defendant Selman sold 5,300 shares at $5.14 to $5.29 per share." ("Winter Sales")[16]

This is the *entirety* of the allegations relating to Selman's stock sales.  The PSC neither alleges, nor provides facts to suggest, such sales were "out of line with prior trading practices or [made] at times calculated to maximize personal profit."  *Shaw Group*, 537 F.3d at 543.  For that reason alone, Selman's stock sales cannot support an inference of scienter.  *Southland Sec. Corp.*, 365 F.3d at 367-68; *see also In re Dynegy, Inc. Sec. Litig.*, 339 F.Supp.2d 804 (S.D.Tex. 2004) (failure to plead facts showing sales were suspicious in light of trading history "negates any inference of scienter").

---

[15] PSC, ¶ 58.
[16] PSC, ¶ 67.

11

Moreover, the PSC itself undermines any insinuation that Selman's stock sales were suspicious. In fact, the paragraph immediately following the PSC's reference to Selman's Summer Sales alleges that Franklin filed a materially misleading Form 10-Q on August 8, 2007––a week *after* those sales.[17]  Notably absent, however, is any allegation of a misleading, price-inflating statement immediately *before* the sales.  Nor is there any allegation that Selman profited from the transaction.  Consequently, Selman's sales cannot give rise to inference of scienter. *Nathenson*, 267 F.3d 420-21 (allegation "that one outside director sold a fraction of his holdings at times that were unrelated to any Company announcements and at prices that were far below that which he could have obtained by selling a few weeks earlier or later" not sufficient to raise inference of scienter); *see also Newby v. Lay*, 258 F.Supp.2d 576, 594 (S.D.Tex. 2003) ("sales do not support the 'strong inference' … where the rest of the equally knowledgeable insiders act in a way inconsistent with the inference that the favorable characterizations of the company's affairs were known to be false when made").

Nor do Selman's Winter Sales of *common stock* give rise to an inference of scienter.  Not only is there no allegation that Selman profited from the sales, documents filed with the SEC show that Selman immediately used *all* the proceeds to *purchase* Franklin *preferred stock*.[18]   In other words, the purpose of the Winter Sales was to purchase the very security forming the basis of Preferred Plaintiffs' claims—midway through the Class Period and at a point where the preferred stock share price was down 40% from its IPO price.[19]  Under Fifth Circuit precedent, Selman's stock sales cannot establish an inference of scienter.  *See Shaw Group*, 537 F.3d at 543; *see also Nathenson*, 267 F.3d 420-21; *see also Newby*, 258 F.Supp.2d at 594.

---

[17] PSC, ¶ 59.
[18] App, Tab. 15 & (H).
[19] *See id.*

12

**B.      No Strong Inference of Scienter Arises From the Audit Committee Report.**

Because of the Fifth Circuit's rejection of group pleading, "it is only necessary … to address the allegations claimed to adequately show [scienter] on the part of the [named officers]" when determining the adequacy of scienter allegations. *Group*, 537 F.3d at 533-34 (brackets in original).

Here, the *only* document alleged by the Trust to have been signed by *any* of the Directors during the Class Period was the Audit Committee Report signed by Howard, Chimerine, Golush and Master. Just as the PSC lacks any specific factual allegation that any statement contained in the Report was false or misleading, it also fails to allege facts, let alone particularized facts, showing that Howard, Chimerine, Golush, or Master knew of or were severely reckless in respect to any inaccuracies in the Report at the time it was filed. *Fine v. Am. Solar King*, 919 F.2d 290, 297 (5th Cir. 1990) (to establish scienter, a party "must know that it is publishing materially false information, or the party must be severely reckless in publishing such information"). Because the PSC fails to plead specific facts demonstrating scienter by Howard, Chimerine, Golush, or Master as to the Report, all claims based on the Report must be dismissed. *See Fin. Acquisition Partners*, 440 F.3d at 287 (failure to adequately plead scienter requires dismissal).[20]

**C.      Preferred Plaintiffs' Other Allegations Fail to Raise a Strong Inference of Any Director's Scienter.**

Evidently aware it has failed to plead specific facts giving rise to a strong inference of scienter in respect to each challenged statement by each particular defendant, the Trust offers a

---

[20] Any inference of scienter is further undermined by the fact that Franklin's accounting practices were audited contemporaneously by Deloitte, which found that Franklin's financial statements "present fairly, in all material respects," the financial position of Franklin. PSC, ¶ 49. *See Mortensen v. AmeriCredit Corp.*, 123 F.Supp.2d 1018, 1025-27 (N.D.Tex. 2000) (no strong inference of scienter where company's independent auditor neither "objected to or even questioned" the accounting practices at issue).

sweeping allegation that *all* defendants, because of their position within the Bank, had scienter in respect to broad categories of unidentified statements.[21]   Such group pleading of scienter has been squarely rejected by the Fifth Circuit.  *Shaw Group*, 537 F.3d at 533; *see also Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 432 (5th Cir. 2002) ("[P]leading[s] of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their position with the company").  In addition to that independent ground for dismissal, the "misstatements" relied on the PSC are insufficient to raise an inference of scienter as a matter of law.

### 1.   The August 6, 2008 8-K Does Not Establish Scienter.

While the PSC cites the corrected accounting figures stated in Franklin's August 6, 2008 8-K as evidence of the Directors' knowledge or reckless disregard of Franklin's alleged accounting and internal control problems, it is well-settled that allegations of "[t]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter."  *Shaw Group*, 537 F.3d at 534; *see also Abrams v. Baker Hughes, Inc.*, 292 F.3d at 433 (accounting problems leading to restatement could "easily arise from negligence, oversight, or simple mismanagement, none of which rise to the standard necessary to support a securities fraud action").  Notably, the August 6, 2008 8-K does not cite, correct, or otherwise refer to the March 26, 2007 Audit Committee Report—or any specific statement alleged to have been made by any specific Director.[22]   It cannot support an inference of scienter for any Director.

---

[21] *See* PSC, ¶¶82-88.
[22] App., Tab 11.

14

2.      **Craig Wolfe Letter Does Not Establish Scienter.**

The PSC attaches and quotes extensively from a February 19, 2008 letter from purported

"whistleblower" Craig Wolfe to Debbie Hale, Senior Vice President of Internal Audit at Franklin

("Wolfe Letter").[23]

The Wolfe Letter cannot create an inference of scienter for the March 26, 2007 Audit

Committee Report because it was written almost eleven months after the Report was filed with

the SEC and on its face concerns alleged accounting irregularities occurring after the Report.[24]

The Audit Committee could not have acted with knowledge or severe recklessness regarding

allegations that had not yet been made in respect to events that had not yet occurred.  Nor does

the six-page, single-spaced description of alleged wrongdoing at Franklin contain a single

allegation of wrongdoing by any Director.  To the contrary, Wolfe alleged that "management"

was aware of Franklin's financial condition, and threatened to bring his concerns about the

accounting and auditing issues to the Audit Committee and to the Board.[25]

Other documents relied on by the PSC bolster Wolfe's assumption that neither the Audit

Committee nor the other Directors were aware of the alleged accounting and auditing issues

before the Wolfe Letter.  In fact, the PSC quotes Franklin's March 14, 2008 press release, which

stated:

> In February 2008, Franklin's Board of Directors learned of possible accounting,
> disclosure and other issues related to single-family residential mortgages and
> residential real estate owned that could affect Franklin's 2007 financial
> statements.   Upon learning of these matters, Franklin's Audit Committee

---

[23] PSC, ¶¶ 82-83 & Ex. 2.  The Directors were not copied on the Wolfe Letter.  *See id.*
[24] The sole *possible* exception, a repurchase demand issued by Countrywide in "March 2007" in respect to a $250,000 second mortgage, is irrelevant, as there is no allegation in the PSC relating to the repurchase demand. PSC, Ex. 2 at 3.
[25] PSC, Ex. 2 at 6.

commenced an independent internal investigation into these issues with the assistance of independent legal and accounting advisors.[26]

In short, any inference of scienter arising from the Wolfe Letter and the Audit Committee's subsequent reaction is certainly less cogent than the other nonculpable explanation—that the Directors were unaware of any alleged accounting and auditing issues until they were informed of the Wolfe Letter. *See Tellabs, Inc.,* 127 S.Ct. at 2504-05 (for a court to find a strong inference of scienter, "it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent"). The Wolfe Letter does not establish scienter for any Director.

### 3. The FDIC Documents Relied on in the PSC Do Not Establish Scienter.

Preferred Plaintiffs quote extensively from nondisclosable FDIC reports throughout the PSC. The improper disclosure of Preferred Plaintiff's cherry-picked data paints, at best, an incomplete picture. However, whether considered as a whole or solely on the basis of Preferred Plaintiffs' improper pleadings, the FDIC documents fail to raise a strong inference of scienter on the part of the Directors.

### a. Even Improperly Partially Disclosed, the FDIC Reports Do Not Establish Scienter.

Of the various documents and reports cited in the PSC to attempt to establish the Directors' knowledge of alleged deficiencies, only the FDIC examination reports for 2003, 2004, 2005 and 2006 were issued before the Audit Committee filed the March 26, 2007 Audit Committee Report. Preferred Plaintiffs allege that weaknesses in Franklin's internal controls and financial reporting were disclosed in "four FDIC examinations, in September 2003, September 2004, November 2005, and October 2006 … which were contemporaneously furnished to

---

[26] PSC, ¶ 72.

16

Franklin and its management."[27]   Perhaps realizing no Director was a member of Franklin's management, Preferred Plaintiffs go on to baldly assert that the "findings in the nonpublic examination reports … were available to all defendants."[28]

These allegations are plainly insufficient to establish scienter on the part of any of the Directors at the time the Audit Committee issued its Report.  The Trust does not allege—as it must—when each Director received each report and whether that Director reviewed them.  *See, e.g., ABC Arbitrage*, 291 F.3d at 356 (plaintiff must "specify[] who prepared internal company reports, how frequently the reports were prepared, and who reviewed them").  The mere fact that a particular report was allegedly "available" to a wide range of potential recipients does not prove that any particular Director actually knew about them, much less received and reviewed them.  *See Newby*, 258 F.Supp.2d at 633 (plaintiffs "cannot logically argue" that a director knowingly "failed to disclose information that [plaintiffs] have not shown that the Outside Director had").[29]  Because the Trust fails to allege facts sufficient to show *any* Director had any knowledge of the FDIC reports before that Director made a challenged statement attributable to him, the FDIC reports cannot support an inference of scienter.  *See id.*

### b.   The FDIC Reports and Information Contained Therein Should Be Considered in Their Entirety or Not at All.

The Supreme Court instructs that when considering a motion to dismiss in securities fraud cases

> courts ***must*** consider the complaint in its entirety, as well as … ***documents incorporated into the complaint by reference,*** and matters of which a court may take judicial notice.  The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, ***taken collectively,*** give rise to a strong inference

---

[27] PSC, ¶ 38.
[28] PSC, ¶ 40.
[29] For the same reason, Preferred Plaintiffs' allegations are insufficient to demonstrate scienter on the part of the Directors at the time the Registration Statement was issued.

of scienter, *not whether any individual allegation, scrutinized in isolation, meets that standard*.

*Tellabs, Inc.*, 127 S.Ct. at 2509 (emphasis added, internal citation omitted).  The Supreme Court

further instructed

> *[t]he strength of an inference cannot be decided in a vacuum.* The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts? To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court *must* consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.

*Id.* at 2510 (emphasis added).  Recognizing this mandate, the Fifth Circuit discounts allegations

based on confidential sources, reasoning such sources "afford no basis for drawing the plausible

competing inferences required by *Tellabs*."  *Shaw Group*, 537 F.3d at 535.

Here, Preferred Plaintiffs have not based their FDIC-related allegations merely on a

confidential source, they have based their allegations on FDIC reports that are prohibited from

disclosure as a matter of law.  With limited exceptions not applicable—or even alleged—here, 12

C.F.R. § 309.6(a) states

> *no person shall disclose or permit the disclosure of any exempt records, or information contained therein, to any persons* other than those officers, directors, employees, or agents of the Corporation who have a need for such records in the performance of their official duties.  *In any instance in which any person has possession, custody, or control of FDIC exempt records or information contained therein, all copies of such records shall remain the property of the Corporation and under no circumstances shall any person, entity or agency disclose or make public in any manner the exempt records* or information without written authorization from the Director of the Corporation's Division having primary authority over the records or information as provided in this section.

12 C.F.R. §309.6(a); *see also* 12 C.F.R. 309.2(e) ("record" includes "records, files, documents,

reports, correspondence, books, and accounts, or any portion thereof").  The Fifth Circuit and

other courts have held that these regulations prevent disclosure of information contained in FDIC

examination reports absent written authorization from the agency. *See Bank of Heflin v. Miles*, 621 F.2d 108, 113 (5th Cir. 1980) (affirming permanent injunction prohibiting bank from disclosing FDIC reports and related portion of board minutes to shareholders); *see also Waterhouse v. Maggart and Welch, P.C.*, 871 F.2d 1089 (in Exchange Act case, noting "anyone who has custody of exempt records of the F.D.I.C. is *prohibited* from disclosing such records, even in response to legal process" without authorization from the FDIC) (emphasis in original).

Preferred Plaintiffs acknowledge that the FDIC examination reports they rely on are "nonpublic" and "exempt" from disclosure under FDIC regulations.[30]   In an artful attempt to justify their plainly prohibited disclosure, they allege that "[i]n 2009, the FDIC made available an Examination Report concerning Franklin Bank…"[31]   Preferred Plaintiffs fail to inform the Court, however, that while the FDIC mistakenly included a copy of the Examination Report in other litigation arising from the Bank's failure, the agency took prompt action to have the Examination Report withdrawn and the record sealed.[32]   The FDIC's inadvertent disclosure, however, does not change the application of the regulation, which clearly states that exempt materials remain the property of the FDIC even when they are in the "possession, custody or control" of others.   12 C.F.R. § 309.6(a).   The regulation is unequivocal:   "[U]nder no circumstances shall any person, entity or agency disclose or make public in any manner the

---

[30] PSC, ¶¶ 32(e) & 40
[31] PSC, ¶ 84.
[32] The FDIC's motion to seal and redact the improperly disclosed Examination Report and the order promptly granting the motion are attached. *See* App., Tab 17 (motion) & Tab 18 (order). This Court may take judicial notice of the FDIC's motion "for the purpose of establishing the fact of litigation and related filings." *United States ex. rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 689, 696 (W.D. Tex. 2007). Further, the Court may take judicial notice of Judge Hittner's Order granting the FDIC's motion "for the limited purpose of taking as true the action of the [] court." *Colonial Leasing Co. v. Logistics Control Group Int'l*, 762 F.2d 454, 459 (5th Cir. 1985).

exempt records or information." *Id.*  Yet that is precisely what Preferred Plaintiffs do here.  *See* PSC at ¶¶ 31(e)-(f), 38, 39, 64, 75, 84, 85, 86, 87, 93 & 102.[33]

Preferred Plaintiffs' choice to unlawfully disclose selected portions of exempt FDIC information forces this Court into a position in which it cannot—as required by *Tellabs*— consider the documents referred to in the PSC in their entirety, but will instead be required to determine scienter "in a vacuum."  *See Tellabs, Inc.*, 127 S.Ct. at 2509-10; *see also In re Enron Corp.*, 540 F.Supp.2d at 809 (documents referenced in a complaint and attached to a motion to dismiss are considered part of the pleadings). This unduly prejudices the Directors, because Preferred Plaintiffs' selective allegations are as artfully chosen as their statement about the Examination Report "being made public," yet the Directors are prohibited from disclosing the very information that would give rise to the plausible nonculpable inferences to which they are entitled and which *Tellabs* requires this Court to consider.

To be clear:  the Directors are not seeking to avoid *lawful full disclosure* of the information contained in the FDIC reports.  In the event the FDIC allows the Directors or Preferred Plaintiffs to fully disclose—thereby allowing this Court to consider—the remainder of those reports, the Directors are confident dismissal will still be proper.  What is problematic is the *unlawful partial disclosure* currently in the PSC.  Preferred Plaintiffs are attempting to avoid dismissal of untenable claims through a knowing disregard of federal regulations, while simultaneously forcing this Court into the unenviable position of (1) ignoring the mandates of

---

[33] While the FDIC OIG report (*see, e.g.,* PSC, ¶¶86-87) was publicly disclosed, Preferred Plaintiffs' claims rely on information from the *nondisclosed* FDIC examination reports that are briefly referenced in the OIG report. *Compare* 12 C.F.R. § 309.6 (prohibiting FDIC exempt records or *information contained therein*).  Even those brief references show that, at the relevant times, Franklin and its Board received the examiners' highest possible ratings on the very issues now forming the basis of Preferred Plaintiffs' claims, highlighting the need for this Court to consider the examination reports in their entirety.

*Tellabs*, and (2) drafting an opinion that does not disclose the nondisclosable information on which Preferred Plaintiffs rely.

It is Preferred Plaintiffs' obligation to plead and prove their claims, yet they have failed to show they are entitled to disclose the information in the PSC at ¶¶ 31(e)-(f), 38, 39, 64, 75, 84, 85, 86, 87, 93 & 102, whether at the pleading stage or to the jury.  Unless Preferred Plaintiffs cure their wrongful disclosure and pleading deficiencies by securing permission from the FDIC for the full disclosure of the exempt information in this case by all parties and the Court, their allegations at ¶¶ 31(e)-(f), 38, 39, 64, 75, 84, 85, 86, 87, 93 & 102 should be disregarded, and all claims based on such allegations should be dismissed.

## IV.    Preferred Plaintiffs' Own Pleading Rebuts Their Reliance Allegations.

To state a claim for securities fraud under the Exchange Act, a plaintiff must show they relied on the misstatement or omission at issue.  *See, e.g., Nathenson,* 267 F.3d at 413.  The Trust's reliance allegations are based *exclusively* on the fraud-on-the-market presumption.[34] However, the Fifth Circuit restricts applicability of the fraud-on-the-market presumption to only those cases in which the plaintiff affirmatively shows the material misstatement "*actually moved the market.*"  *Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261, 264 (5th Cir. 2007) (emphasis in original) ("[w]e require plaintiffs to establish loss causation in order to trigger the fraud-on-the-market presumption.")   Recognizing that market price may be affected by a number of factors, only some of which may be culpable, the Fifth Circuit has held that "*any* showing that severs the link" between an alleged misrepresentation and the plaintiff's loss "rebuts on arrival the plaintiff's fraud-on-the-market theory."  *Oscar Private Equity*, 487 F.3d at 265 (emphasis in original).

---

[34] *See* PSC, ¶ 107-110 & 135.

21

In *Nathenson*, the Fifth Circuit upheld the district court's 12(b)(6) dismissal, agreeing that the plaintiff was not entitled to a fraud-on-the-market presumption where the complaint failed to demonstrate that the allegedly price-inflating misstatements "had a favorable effect on [the company's] share prices," but rather reflected that the company's share price "did not rise, but instead fell steadily" during the four month period the challenged statements were released. *Nathenson*, 267 F.3d at 417.

Here, the Trust fails to trigger the fraud-on-the-market presumption by failing to plead that any specific alleged misrepresentation attributable to a Director impacted the price of Franklin's preferred stock, whether at the time of it was made or after a corrective disclosure. And even if such a presumption did arise, it is conclusively "rebut[ted] on arrival" by the Trust's own pleadings. According to the PSC, Pribyl bought his preferred stock in May 2006 for $25.00 per share,[35] and the Trust bought its preferred stock on January 28-29, 2008 at prices ranging from $15.34 to $13.85 per share.[36] The Trust does not allege that any corrective disclosures were made between the time Pribyl and the Trust bought their shares, and fails to account for the 44.6% *decrease* in price between the time the two Preferred Plaintiffs made their purchases—a time which, according to the Trust—alleged misstatements artificially *inflated* the price of Franklin's stock. Nor does the PSC account for the further 26.7% *decrease* in price between the Trust's final purchase and the $10.95 price per share immediately *before* the first corrective disclosures alleged in the PSC were released on March 14, 2008. In other words, *before* Franklin issued *any* of the corrective disclosures identified in the PSC, the preferred shares had declined 56.2% from their $25.00 IPO price.[37]

---

[35] PSC, Ex.1 at 2.
[36] PSC, Ex. 1 at 1.
[37] *Compare* PSC, ¶¶ 72-73, 76-77, & 109-110 *with* PSC, Ex. 1.

22

Fifth Circuit precedent is clear: "*any* showing that severs the link" between an alleged misrepresentation and the plaintiff's loss "rebuts on arrival the plaintiff's fraud-on-the-market theory." *Oscar Private Equity*, 487 F.3d at 265 (emphasis in original).  Just as in *Nathenson*, the Trust's own pleading rebuts the fraud-on-the-market presumption, and, because there are no other allegations of reliance, the Trust's Exchange Act claims must be dismissed.[38]  *Nathenson*, 267 F.3d at 418.

## V.    Preferred Plaintiffs' Securities Act Claims Are Barred by the Statute of Limitations.

The statute of limitations for Section 11 claims is provided by Section 13 of the Securities Act.[39]   15 U.S.C. § 77m.   Section 13 states that no Section 11 claim may be maintained "unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence."   *Id.*   The controlling date for the purpose of limitations is "when a purchaser of securities knew—or in the exercise of reasonable diligence, should have known—of the alleged wrongdoing."   *Topalian v. Ehrman*, 954 F.2d 1125, 1133 (5th Cir. 1992) .   Compliance with Section 13 is an essential, substantive component of a Section 11 claim that must be affirmative plead.   *See In re Dynegy, Inc. Sec. Litig.*, 339 F.Supp.2d 804, 835-37 (Section 11 plaintiffs must plead compliance with Section 13); *Bryant v. Uland*, 327 F.Supp. 439, 446 (S.D.Tex 1971) (Securities Act plaintiff "must plead and prove facts" showing compliance with Section 13). Consequently, dismissal of Section 11 claims under Rule 12(b)(6) based on limitations is proper

---

[38] Similarly, for each of the reasons set forth in Section III of Defendant Lewis S. Ranieri's Memorandum In Support of His Motion to Dismiss the Complaints, which Directors adopt and incorporate herein by reference, the Trust fails to adequately plead loss causation, and as such, dismissal of its Exchange Act claims is proper. *Cf. In re Dynegy*, 339 F. Supp. 2d at 837–38, 838 n.40 (addressing arguments asserted by various defendants, including defendants who "expressly adopt[ed] and incorporat[ed] by reference" argument asserted by separate defendants).

[39] Section 15 claims are subject to the same limitations period as Section 11 claims. *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349 n.1 (2nd Cir. 1993).  Consequently, Preferred Plaintiffs Section 15 claims are barred by limitations for the reasons set forth above.

23

if (1) Preferred Plaintiffs failed to adequately plead compliance with the statute, or (2) the facts alleged in the PSC clearly establish the claim is barred. *See In re Dynegy,* 339 F.Supp.2d at 827 & 835-37. Either ground is sufficient, and both apply here.

### A.   Preferred Plaintiffs Fail to Plead Compliance with Section 13.

To plead compliance with Section 13, the plaintiff must allege nonconclusory facts showing the claim was brought "within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence." *See* 15 U.S.C. § 77m. For example, in *In re Dynegy*, the Court found the plaintiffs pled compliance with Section 13 where they alleged they "could not have learned of their potential claims sooner," and further alleged that they had executed a tolling agreement with the defendants preventing limitations from running on their claims. *In re Dynegy*, 339 F.Supp.2d at 835-36.

The PSC contains no similar allegations. Instead, Preferred Plaintiffs baldly assert that "[t]his action was brought within one year after the discovery of the untrue statements and omissions and within three years after the preferred stock was sold to the public."[40] Utterly missing from the PSC is *any allegation* as to when that discovery *should have been made* in the exercise of reasonable diligence.[41]

To the contrary, Preferred Plaintiffs' allegations undermine, rather than support, their conclusory statement that they had complied with the Section 13 limitations period.[42] Because

---

[40] PSC, ¶ 125.

[41] The PSC does allege that Preferred Plaintiffs did not know of the untrue statements when they *purchased* their stock. PSC, ¶ 123. However, all the purchases occurred well outside the limitations period, and the allegations provide no basis from which to infer when Preferred Plaintiffs were on inquiry notice of their claims.

[42] For example, significant drops in price are sufficient to put investors on inquiry notice. *Reed v. Prudential Securities, Inc.*, 875 F.Supp. 1285, 1289 (S.D.Tex. 1995); *In re Dynegy*, 339 F.Supp.2d at 846. Preferred Plaintiffs affirmatively allege that (1) "the market for Franklin preferred stock promptly digested current information … and reflected such information in the Bank's stock price" and (2) immediately following the March 14, 2008 press

24

Preferred Plaintiffs fail to allege they were not on inquiry notice prior to May 4, 2008--or plead **any** nonconclusory facts to "nudge[]" compliance with Section 13 "across the line from conceivable to plausible"—their Section 11 must be dismissed.  *See Iqbal*, 129 S.Ct. at 1951-52 *see also In re Dynegy*, 339 F.Supp.2d at 835-37 (Section 11 claimant must plead compliance with Section 13 to avoid dismissal); *see also Bryant*, 327 F.Supp. at 446 (same)*.

### B.    Preferred Plaintiffs Were on Inquiry Notice More Than a Year Before their Section 11 Claims Were Filed.

The PSC alleges that the Securities Act claims were first filed on May 4, 2009.[43]  As set forth below, the facts alleged in the PSC show such claims are barred as a matter of law.

No Section 11 claim may be maintained "unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence."   15 U.S.C. § 77m.   For limitations purposes, the controlling date is "when a purchaser of securities knew—or in the exercise of reasonable diligence, should have known—of the alleged wrongdoing."  *Topalian v Ehrman*, 954 F.2d at 1133.  In the Fifth Circuit, "[i]nvestors are not free to ignore 'storm warnings' which would alert a reasonable investor to the possibility of  fraudulent statements or omissions in his securities transactions."  *Jenson v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988).   Once storm warnings occur, limitations begin to run.  *Id.* at 606-7.

Courts have held that "a sudden drop in stock price, … or a warning of risks in a prospectus," in addition to a company's press releases and other public disclosures, can

---

release in which Franklin announced the Audit Committee independent investigation and the possible "accounting, disclosure, and other issues" that could effect Franklin's 2007 financial statements, Franklin's preferred shares dropped to $7.50—a one-day decline of 30% (and a respective 70% and approximately 50% decline from the price at which Pribyl and the Trust purchased their shares).  Preferred Plaintiffs provide no explanation as to how this price decrease did not place them on inquiry notice.

[43] PSC, ¶ 125.  While this is filing date for the Trust's Securities Act claims, Pribyl was not added as a party until the PSC was filed on December 22, 2010, and thus his claims are plainly time-barred.

constitute a storm warning.  *In re Dynegy*, 339 F.Supp.2d at 846.  A storm warning need not provide "notice of the entire [wrong] being perpetrated" to place an investor on inquiry notice. *Id.*  Here, the PSC shows that Franklin's storm warnings put Preferred Plaintiffs on inquiry notice of their Securities Act claims more than a year before they were filed.

On March 17, 2008—almost 14 months before the Trust first asserted any Securities Act claims—Franklin filed a press release with the SEC which disclosed:

- that "Franklin's Board of Directors learned of possible ***accounting, disclosure and other issues related to single-family residential mortgages and residential real estate owned that could effect Franklin's 2007 financial statements***";

- that Franklin's Audit Committee had "commenced an independent internal investigation" and was "***unable to estimate the potential accounting effects that might result***"; and

- that, as a result, Franklin would "delay filing its Annual Report on Form 10-K for the year ended December 31, 2007."[44]

These public disclosures constitute storm warnings that "relate[] directly to the misstatements or omissions" alleged in the PSC.  *In re Dynegy,* 339 F.Supp.2d at 846 quoting *Newman v. Warnaco Group Inc.*, 335 F.3d 187, 193 (2nd Cir. 2003)); *compare* PSC ¶ 31(d) (alleging Registration Statement "did not accurately and fully advise investors that … the Bank's accounting practices and internal controls were materially deficient" and that "the Bank's delinquent loan accounting, real estate owned ('REO') accounting, loan modification accounting, and bank-owned life insurance accounting were all deficient and/or impaired").  These disclosures were also tied to warnings in Franklin's Registration Statement.  *See* App., Tab 6 at 12-13, 15 (warning "we cannot assure you that we have detected or will detect all misrepresentations in our loan origination operations," that "[s]ignificant increases to the

---

[44] App., Tab 9.

allowance for credit losses may be necessary if … the performance of our loan portfolio deteriorates," and that "if we had to foreclose on assets, additional adjustments may be necessary…").  Moreover, Preferred Plaintiffs themselves allege that these disclosures resulted in a sudden 30% drop in stock price.[45]  Franklin's March 17, 2008 disclosures, the warnings in the Registration Statement, and the sudden drop in stock price all constitute storm warnings sufficient to trigger Preferred Plaintiffs' duty to inquire into their Securities Act claims.

In addition, Franklin issued a May 1, 2008 press release disclosing additional details about Franklin's accounting issues.[46]  In that SEC filing, Franklin disclosed:

- "[T]he Bank determined that the ***accounting for certain delinquent single-family loans being serviced by third parties, other real estate owned, and the Bank's newly created single family loan modification programs to mitigate foreclosure losses … should be revised.***"

- "[I]nformation we obtained subsequent to each quarter end (e.g., ***losses realized on foreclosures or declines in value of collateral***) provided additional data for management to use in its evaluation of estimates and of values associated with liabilities and assets ***which must be recorded in the quarter during which the liabilities and assets were originally valued as if the knowledge of the new values existed at that time***, rather than in the quarter that the new valuation data was obtained.  ***This has affected our financial results***. …"

- "***Franklin continues to evaluate the impact of subsequent information*** obtained while the December 2007 books and records remain open."[47]

As with the March 17, 2008 press release, these storm warnings "relate[] directly to the misstatements or omissions" alleged in the PSC and were tied to warnings in Franklin's Registration Statement.  *In re Dynegy,* 339 F.Supp.2d at 846; *compare* PSC ¶ 31(d) *with* App, Tab 6 at 12-13, 15.  Moreover, the May 1, 2008 storm warning advised Preferred Plaintiffs that new valuation data obtained by the Bank had impacted and could further impact financial results

---

[45] PSC, ¶ 72 & 109.
[46] App., Tab 10.
[47] *Id*. (emphasis added).

from previous quarters.[48]  If Preferred Plaintiffs were not already on inquiry notice, there can be

no doubt these disclosures, coupled the prior disclosures and warnings in the Registration

Statement, triggered Preferred Plaintiffs' duty to inquire into their Securities Act claims.  In fact,

the Trust admitted in its original complaint that ***"[t]he truth was fully revealed after the close of***

***business on May 1, 2008."***[49]  Both Franklin's SEC filings and the Trust's own admission shows

Preferred Plaintiffs' Securities Act claims are time-barred, and they should be dismissed.[50]  *See In*

*re Dynegy,* 339 F.Supp.2d at 827.

**VI.   Preferred Plaintiffs' Section 11 Claim Fails as a Matter of Law.**

    **A.   Preferred Plaintiffs Fail to Adequately Plead the Section 11 Claim.**

Preferred Plaintiffs allege that their Section 11 and Section 15 claims "do[] not sound in

fraud."[51]  As set forth more specifically in Defendant Lewis Ranieri's Memorandum in Support

of His Motion to Dismiss the Complaints, to the extent those claims do sound in fraud, Preferred

Plaintiffs fail to plead with particularity, as required by Rule 9(b), the circumstances constituting

any such fraud by a Director, and such claims should be dismissed.[52]  But even assuming for the

sake of argument the PSC's fraud disclaimer is effective, Preferred Plaintiffs still fail to

adequately plead Securities Act claims.

To state a claim under Section 11, Preferred Plaintiffs must show that the Registration

Statement contained "(1) an omission or misstatement, (2) of a material fact required to be stated

or necessary to make other statements made not misleading."  *In re Dynegy*, 339 F.Supp.2d at

---

[48] *Id.*

[49] Docket No. 1, ¶ 51.

[50] Moreover, as set forth in Section II(C)-(D) of Defendant Anthony Nocella's Motion to Dismiss, which Directors adopt and incorporate by reference, Preferred Plaintiffs were either on inquiry notice more than a year before their Securities Act claims were filed, or their claims are barred by negative causation.  Either way, dismissal is proper.

[51] PSC, ¶¶ 112-13 & 127-28.

[52] Directors adopt and incorporate by reference the arguments contained in Defendant Lewis Ranieri's Memorandum in Support of His Motion to Dismiss the Complaints in respect to Preferred Plaintiffs' Section 11 claims sounding in fraud.

826.  A "material fact" is one "which a reasonable investor would consider significant in the decision whether to invest, such that it alters the 'total mix' of information available about the proposed investment."  *Id.*

When a plaintiff effectively disclaims fraud allegations in respect to Securities Act claims, a court is to "disregard all averments of fraud" and "then ask whether a claim has been stated."  *Lone Star Ladies Investment Club v Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).  Taking what remains after the fraud allegations have been disregarded, the Court must then "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 129 S.Ct. at 1950.  Only after disregarding allegations not entitled to an assumption of veracity that may a court look to the "well-pleaded, nonconclusory factual allegations" to determine whether the complaint "contain[s] sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face."  *Id.* at 1949-50.  Unless the well-pleaded facts "permit the court to infer more than the mere possibility of misconduct," the plaintiff has failed to state a claim.  *Id.*, 129 S.Ct. at 1950.  Applying these standards, Preferred Plaintiffs' Securities Act claims fail.

The alleged misstatements or omissions relating to Franklin's Registration Statement and Prospectus are set forth in Paragraphs 32-33 of the PSC.  The allegations in Paragraph 32(a)-(d) & (g)-(h) are plainly conclusory and thus not entitled to an assumption of veracity.[53]  Paragraph 32(e) & (f) allege that the Bank failed to disclose information relating to FDIC examination reports—however, because there is no allegation that Franklin (1) had permission from the FDIC to disclose the nonpublic information or (2) made public statements that contradicted the

---

[53] For example, Paragraph 32(a) alleges, without any supporting facts, the "[t]he Bank's accounting practices and internal controls were materially deficient."  PSC, ¶ 32(a).  Similarly, Paragraph 32(b) baldly states "[t]he Bank did not adequately reserve for loan losses."  *Id.*, at ¶ 32(b).

nonpublic information, such an omission cannot give rise to liability as a matter of law.  *See Shaw Group, Inc.*, 537 F.3d at 541 (no duty to disclose all nonpublic material information in defendants' possession unless public statements "affirmatively create[]" misleading impression); 12 C.F.R. 309.6(a) (prohibiting disclosure of FDIC reports without agency authorization).

The allegations in Paragraph 33 fare no better.  Preferred Plaintiffs simply allege that certain statements were false and misleading because they omitted the conclusory "material facts" set forth in Paragraph 32.  Stacking Paragraph 33's conclusory statements on Paragraph 32's conclusory statements does not make Preferred Plaintiffs' pleading less conclusory, it makes it more so.  To satisfy their pleading requirement, the PSC must contain well-pleaded facts to support the allegations in Paragraph 32 and 33.  As set forth below, it does not.

### 1. The Statements in the Registration Statement Regarding Risk Were Neither False Nor Material.

Preferred Plaintiffs allege the Registration Statement misrepresented certain risks and Franklin's ability to control those risks: specifically, that Franklin (1) "repeatedly characterized" its "lending practices as conservative, repeatedly asserting that the Bank 'established' and 'utilized' lending practices to reduce risks"; (2) stated "[w]e have established certain lending practices to reduce our risks"; and (3) stated that "[o]ur single family mortgage portfolio provides high quality liquid assets for us."[54]  These allegations are insufficient for four reasons:

First, with regard to the Trust's allegation that Franklin "repeatedly characterized" its lending practices as "conservative," this represents Preferred Plaintiffs' choice of words, not Franklin's.  Nowhere does the Registration Statement use the word "conservative" to describe Franklin's lending practices.  Rather, it describes particular lending practices used by Franklin to

---

[54] PSC, ¶¶ 31(a)-(c) & (e)-(g); 35 (a)-(c).

reduce risk—and the PSC does not allege **any** facts demonstrating that these specific practices were not employed by Franklin at the time the Registration Statement became effective.[55]

Second, the allegedly misleading statements cited in the PSC fail to satisfy Section 11's materiality requirement,[56] and the Registration Statement's extensive and detailed warnings of at least 30 risk factors disclosed many of the **exact risks** now forming the basis of Preferred Plaintiffs' nondisclosure claims:

- "Our allowance for credit losses may be insufficient to cover actual losses, which could materially affect our financial performance." App., Tab 6 at 15; *compare* PSC ¶32(b)-(c) (alleging failure to disclose that "[t]he Bank did not adequately reserve for loan losses").

- "The majority of our single family loan portfolio consists of newly originated loans which may cause our loan portfolio to experience increased losses as the loans season;" "We tend to close a higher percentage of loans with committed interest rates lower than the current market and lower percentages of loans that have a committed interest rate greater than the current market." App., Tab 6 at 12; *compare* PSC ¶ 32(g) (alleging failure to disclose that Franklin "directly and indirectly engaged in risky, poorly documented, and/or exotic low quality and subprime lending").

- "We are subject to losses resulting from fraudulent and negligent acts on the part of loan applicants, mortgage brokers, or other third parties .... Our mortgage banker finance product poses a particular risk of loss due to fraudulently or improperly documented collateral .... [W]e cannot assure you that we have detected or will detect all misrepresentations in our loan origination operations." App., Tab 6 at 12-13; *compare* PSC ¶32(a) (alleging failure to disclose Franklin's "internal controls were materially deficient").

---

[55] In fact, the Registration Statement expressly warns investors that certain lending practices were a source of heightened risk. *See* App., Tab 6 at 26 ("Commercial lending involving large builders and developers] generally entails a higher degree of risk, including the risk of a general downturn in the local economy. ... These loans are subject to the risk that the collateral may be fraudulently or improperly documented [and] mortgage banking companies are more thinly capitalized than other commercial borrowers."). Moreover, Franklin had no obligation to characterize its own investments and internal controls in a wholly negative light. *See Rosenzweig*, 332 F.3d at 870 (company was under "no duty to cast its business in a perjorative, rather than a positive, light").

[56] The statement in the Registration Statement that "[o]ur single family mortgage portfolio provides a high quality asset for us" is devoid of any specific content on which an investor might reasonably have relied. *See Rosenzweig*, 332 F.3d at 869 (statement that "our fundamentals are strong" was "obvious immaterial puffery [because] [a]nalysts and arbitragers rely on facts in determining the value of a security, not mere expressions of optimism from a company spokesman"); *In re JP Morgan Chase Sec. Litig.*, 363 F.Supp.2d 595, 632-33 (S.D.N.Y. 2005) (statement that company had "sound risk-management procedures" constituted inactionable puffery).

- "Our small business, commercial real estate and consumer loan portfolios have significant geographic concentration and an economic slowdown or depressed real estate market in our primary markets could be detrimental to our financial condition;" "[Our] single family loan purchases were primarily through correspondent relationships with Countrywide Home Loans Inc., which accounted for approximately 67% of total purchases;" and "We may experience a significant increase in losses on our single family mortgage loans as these loans age, … [and] [t]his may have a material adverse impact on our financial condition, results of operation, and cash flows." App., Tab 6 at 11-12; *compare* PSC ¶ 33(b)-(c) (alleging failure to disclose risk of builder lines and commercial real estate loans and misstating that "[o]ur single family mortgage portfolio provides high quality liquid assets for us").

- "We may experience a significant increase in losses on our single family mortgage loans as these loans age, … [and] [t]his may have a material adverse impact on our financial condition, results of operation, and cash flows;" "Our existing and future indebtedness may restrict payments of dividends on the preferred shares." App., Tab 6 at 12 & 17 *compare* PSC ¶ 32(h) (alleging failure to disclose Franklin's "ability to pay its regular dividend was severely impaired").

In short, these disclosures "not only besp[oke] caution, they shouted it from the rooftops." *Halperin v. eBanker USA.Com, Inc.*, 295 F.3d 352, 360 (2nd Cir. 2002). Consequently, the Registration Statement is not materially misleading as a matter of law.

Lastly, the PSC fails to present sufficient "well-pleaded, nonconclusory factual allegations" to entitle the allegations in Paragraph 32 and 33 to an assumption of veracity. *See Iqbal*, 129 S.Ct. at 1949-50. To prevail on a Securities Act claim, the plaintiff must show the registration statement contained material misstatements or omissions when it became effective. 15 U.S.C. § 77k(a). The *only* allegations offered by Preferred Plaintiffs to support their assertion that the Registration Statement contained omissions or misstatements as of May 5, 2006 are (1) Franklin's August 6, 2008 8-K, and (2) Preferred Plaintiffs' prohibited disclosure of FDIC

32

reports dated September 2003, September 2004, November 2005.  *See* PSC ¶¶ 31(e)-(f), 33(d)-(g), 35, 36, 38, 76, 77, 85, 87, 93 & 102.[57]

First, the August 6, 2008 8-K states that Franklin's financial statements for the year ended Dec. 31, 2006 should no longer be relied on.  However, those adjustments only pertained to Franklin's financial statements as of the end of that year, and the August 6, 2008 8-K makes no suggestion that these issues existed or were material before the fourth quarter of 2006.[58] Indeed, while the August 6, 2008 8-K verified that Franklin had "undertaken a review  of its financial information for the first two quarters of 2007 and for the years 2006, 2005, and 2004," it also shows that Franklin made ***no*** adjustments specific to 2004, 2005, the first through third quarters of 2006, or the Registration Statement itself.  If anything, the August 6, 2008 8-K supports the inference that the accounting issues alleged either did not exist or were not material to any financial statements prior to the fourth quarter of 2006, and thus adds no plausibility to Preferred Plaintiffs' Securities Act claims.  *Iqbal,* 129 S.Ct. at 1951 (well-pleaded facts must "nudge[] … claims across the line from conceivable to plausible").  Consequently, Preferred Plaintiffs may not rely on it to avoid dismissal.  *See id.*, at 1950.  (unless the well-pleaded facts "permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed.)

Second, Preferred Plaintiffs have not alleged they are authorized to disclose—selectively or otherwise—either the FDIC reports or the information they contain.  The law is clear: Preferred Plaintiffs are prohibited from doing so.  *See* 12 C.F.R. §309.6(a) & 12 C.F.R. 309.2(e); *see Bank of Heflin v. Miles*, 621 F.2d at 113 (affirming permanent injunction prohibiting bank

---

[57] FDIC reports for later periods are also improperly disclosed throughout the PSC.  *See, e.g.,* PSC ¶¶ 38, 39, 64, 75, 84, 85, 86 & 87.
[58] App., Tab 11.  Notably, the Registration Statement only included financial statements from *first* quarter of 2006. App., Tab 6 at 10; *compare* PSC, ¶ 33(d).

33

689173

from disclosing FDIC reports and related portion of board minutes to shareholders); *see also Waterhouse v. Maggart and Welch, P.C.*, 871 F.2d at 1089 (in Exchange Act case, noting "anyone who has custody of exempt records of the F.D.I.C. is *prohibited* from disclosing such records, even in response to legal process, without the authorization of the Federal Counsel of the F.D.I.C.") (emphasis in original).

Preferred Plaintiffs' unlawful partial disclosure is problematic here because on a motion to dismiss in a securities action, the Court is to consider documents referred to in the complaint as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Fin. Acquisition Partners, LP*, 440 F.3d at 286.  By their unlawful partial disclosure, Preferred Plaintiffs have unduly prejudiced the Directors by preventing the disclosure of the complete record—a record that Directors are confident would require dismissal. Preferred Plaintiffs should not be allowed to avoid dismissal of untenable claims through a knowing disregard of federal regulations, while they simultaneously force this Court to rule on an incomplete record and draft an opinion that does not disclose the nondisclosable information on which Preferred Plaintiffs rely.

There is a fair and simple solution.  Preferred Plaintiffs can provide the Court with proof that the appropriate authority at the FDIC has authorized disclosure—by all of the parties and the Court, solely for the purposes of this case—of all of the information contained in all the FDIC reports referenced in the PSC.  Until they do so, however, the allegations contained in the PSC disclosing such information should be disregarded,[59] and because those are the *sole* allegations that attempt to provide support for the conclusory assertions in PSC ¶¶ 32-22, the Securities Act claims should be dismissed.  *See Iqbal*, 129 S.Ct. at 1949 (to avoid dismissal, complaint

---

[59] *See* PSC ¶¶ 31(e)-(f), 38, 39, 64, 75, 84, 85, 86, 87, 93, & 102.

"contain[s] sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face").

## VII.   Because There Is No Primary Violation, There is No Claim Under Section 15 of Section 20(a).

Preferred Plaintiffs broadly allege that each of the Directors is liable as a "controlling person" of Franklin under Section 15 of the Securities Act and Section 20(a) of the Exchange Act.[60]   To state a Section 20(a) claim, a plaintiff must allege (1) a "predicate" violation of the Exchange Act by a controlled person, (2) that the controlling person "had actual power or influence over the controlled person," and (3) that the controlling person "induced or participated in the alleged violation."   *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990); *see Southland*, 365 F.3d at 383 ("Control person liability is secondary only and cannot exist in the absence of a primary violation.")   To state a Section 15 violation, a plaintiff must allege the same with regard to a predicate Securities Act violation.   *Newby*, 258 F.Supp.2d at 598.

For the same reasons the Preferred Plaintiffs fail to state Section 10(b) and Section 11 claims against the Directors, they also fail to adequately allege any Director induced or participated in a violation of the securities laws by any other defendant.   For each of the reasons set forth in Section V of Defendant Lewis S. Ranieri's Memorandum In Support of His Motion to Dismiss the Complaints, which Directors adopt and incorporate herein by reference, including but not limited to Preferred Plaintiffs' failure to allege either a predicate violation or the inducing or participation in such violation by any Director, the Section 15 and 20(a) claims against them should be dismissed.

---

[60] PSC, ¶¶127-130 & 136-138.

## CONCLUSION

For the foregoing reasons, the Directors respectfully request that the claims asserted against them in the PSC be dismissed, with prejudice, in their entirety.

Respectfully submitted,

**SCOTT DOUGLASS & McCONNICO, LLP**

   /s/ Stephen E. McConnico
Stephen E. McConnico
State Bar No. 13450300
Cynthia Saiter Connolly
State Bar No. 00797367
600 Congress Ave., Suite 1500
Austin, TX 78701
Phone: (512) 495-6300
Fax: (512) 474-0731

***Attorney for Defendants Lawrence Chimerine,
David M. Golush, James A. Howard, Alan E.
Master, Robert A. Perro, William Rhodes and
John B. Selman***

## CERTIFICATE OF CONFERENCE

I certify that we have conferred in good faith with Ralph M. Stone of Shalov Stone Bonner & Rocco LLP, lead counsel for the putative preferred stock class, concerning the matters presented in the Directors' motion to dismiss. We were unable to reach an agreement resolving these matters.

   /s/ Stephen E. McConnico
Stephen E. McConnico

36

689173

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2010 I electronically filed a true and correct copy of the above and foregoing Motion with the Clerk of the Court using the CM/ECF system, which sends notification of such filing to the following:

Andrea D. Levin (Kim)
Diamond McCarthy et al
909 Fannin  Ste. 1500
Houston, Texas   77010
akim@diamondmccarthy.com

Barrett H. Reasoner
Gibbs Bruns LLP
1100 Louisiana  Ste. 5300
Houston, Texas   77002
breasoner@gibbs-bruns.com

J. Allen Carney
Darrin Williams
Randall K. Pulliam
Cauley Bowman et al.
11311 Areade Drive, Ste. 200
Little Rock, Arkansas   72211
acarney@cauleybowman.com
dwilliams@cauleybowman.com
rpulliam@cauleybowman.com

William Fred Hagans
Hagans Burdine PC
3200 Travis, 4th Floor
Houston, Texas   77006
fhagans@hagans-law.com

Farbod-Moridani
James J. Farrell
Terri L. Lilley
Latham & Watkins LLP
355 South Grand Ave.
Los Angeles, California 90071
farbod.moridani@lw.com
james.farrell@lw.com
Terri.lilley@lw.com

George W. "Billy" Shepherd, III
Cruse Scott, et al.
2777 Allen Parkway, 7th Floor
Houston, Texas   77019
bshepherd@crusescott.com

Gregory S. Meece
Thompson Knight, LLP
333 Clay St., Suite 3300
Houston, TX 77002
gregory.meece@tklaw.com

James A. Harrod
Wolf Popper LLP
845 Third Avenue
New York, NY   10022
jharrod@wolfpopper.com

Thomas C. Fitzhugh, IV
Ware Jackson et al
2929 Allen Pkwy, 42nd Floor
Houston, Texas   77019
champefitzhugh@warejackson.com

Jonathan C. Dickey
Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, NY   10166
JDickey@gibsondunn.com

M. Byron Wilder
Samantha A. Lunn
Gibson Dunn Crutcher LLP
2100 McKinney Ave.  Ste. 1100
Dallas, Texas  75201-6911
bwilder@gibsondunn.com
slunn@gibsondunn.com

Peter Wald
Latham & Watkins
505 Montgomery St, Ste. 1900
San Francisco, California  94111-2566
Peter.wald@lw.com

37

689173

Ralph M. Stone
Shalov Stone et al
485 7th Avenue, Suite 1000
New York, NY  10018
rstone@lawssb.com

Roger B. Greenberg
Schwartz Junell et al
909 Fannin Ste. 2700
Houston, Texas  77010
rgreenberg@schwartz-junell.com

Ronen Sarraf
Sarraf Gentile LLP
116 John St.
New York, NY  10038
ronen@sarrafgentile.com

William B. Monahan
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004
monahanw@sullcrom.com


      Notice has been mailed by U. S. Mail to the following:

Andrew J. De Fillippis
Brian T. Frawley
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004

David Avi Rosenfeld
Mario Alba, Jr.
Coughlin Stocia Geller Rudman & Rubbins LLP
58 S Service Road, Ste. 200
Melville, NY  11747

David C. Walton
Coughlin Stola Geller Rudman & Robbins LLP
655 W. Broadway Ste. 1900
San Diego, California  92101

James G. Munisteri
Gardere Wynne et al
1000 Louisiana  Ste. 3400
Houston, Texas   77002-5007


                                            /s/ Stephen E. McConnico
                                   Stephen E. McConnico

689173