UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                 :
IN RE FRANKLIN BANK CORP.                                        :
SECURITIES LITIGATION                                            : Civil Action No. 08-1810 (KPE)
                                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### DEFENDANT LEWIS S. RANIERI'S REPLY MEMORANDUM
### IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINTS


OF COUNSEL:                              Steve McConnico
                                        Cynthia Saiter Connolly
Robert J. Giuffra, Jr.                  SCOTT, DOUGLASS & McCONNICO, LLP
Brian T. Frawley                        One American Center
William B. Monahan                      600 Congress Avenue, 15th Floor
Andrew J. DeFilippis                    Austin, Texas 78701-2589
SULLIVAN & CROMWELL LLP                 (512) 495-6300
125 Broad Street
New York, New York 10004                *Attorneys for Defendant*
(212) 558-4000                          *Lewis S. Ranieri*


June 4, 2010

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.   PLAINTIFFS' OPPOSITIONS CONFIRM THEIR FAILURE TO PLEAD A
     COGENT AND COMPELLING INFERENCE OF MR. RANIERI'S
     FRAUDULENT INTENT ........................................................................................... 3

     A.   As a Matter of Law, Mr. Ranieri Had No Motive to Defraud and Every
          Incentive to Protect His $20 Million Investment in Franklin ............................... 3

     B.   Unable to Plead a Motive by Mr. Ranieri to Engage in Fraud, Plaintiffs Do
          Not Allege the Particularized Facts Necessary to Meet the Fifth Circuit's
          "Tougher Standard" for Pleading His Alleged Fraudulent Intent ......................... 4

          1.   Mr. Ranieri's Position as an Outside Director Is
               Legally Insufficient to Plead His Fraudulent Intent ................................... 5

          2.   Franklin's Restatement Does Not Establish Mr.
               Ranieri's Scienter .................................................................................... 6

          3.   The "Confidential Witness" Allegations Are Legally
               Insufficient ............................................................................................... 8

          4.   The FDIC Examination Reports Strongly Undermine
               Any Inference that Mr. Ranieri Acted with Fraudulent
               Intent ....................................................................................................... 8

          5.   The "Whistleblower Letter" Says Nothing About Mr.
               Ranieri ..................................................................................................... 9

II.  PLAINTIFFS SIMPLY DO NOT PLEAD ANY MATERIALLY MISLEADING
     STATEMENT BY MR. RANIERI ............................................................................. 9

     A.   Mr. Ranieri Cannot Be Liable for the Alleged Misstatements of Others ............. 9

     B.   The Registration Statement Contained No Material Misstatement or
          Omission .......................................................................................................... 10

     C.   Mr. Ranieri's Statements About Franklin's Reserves Were Accurate ................ 12

     D.   Mr. Ranieri Made No Misstatement on the November 26, 2007
          Conference Call ............................................................................................... 14

## TABLE OF CONTENTS
### (continued)

*Page*

    E.    Plaintiffs Offer No Response to Their Failure to Plead that Any Statement by Mr. Ranieri Caused Their Losses .................................................................. 14

CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Alamosa Holdings, Inc. Secs. Litig.*,
382 F. Supp. 2d 832 (N.D. Tex. 2003) .......................................................... 6-7, 12

*Ashcroft* v. *Iqbal*,
129 S. Ct. 1937 (2009) ..................................................................... 10

*Barrie* v. *InterVoice-Brite, Inc.*,
2009 U.S. Dist. LEXIS 99253 (N.D. Tex. Oct. 26, 2009) .................................... 15

*Cent. Laborers' Pension Fund* v. *Integrated Elec. Servs.*,
497 F.3d 546 (5th Cir. 2007) ............................................................... 15

*City of Sterling Heights Police & Fire Ret. Sys.* v. *Abbey Nat'l*,
423 F. Supp. 2d 348 (S.D.N.Y. 2006) ..................................................... 11

*ECA & Local 134 IBEW Joint Pension Trust* v. *JP Morgan Chase*,
553 F.3d 187 (2d Cir. 2009) ............................................................... 11

*Fin. Acquisition Partners* v. *Blackwell*,
440 F.3d 278 (5th Cir. 2006) ............................................................... 15

*First Nationwide Bank* v. *Gelt Funding Corp.*,
820 F. Supp. 89 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994) ..................... 13

*Garber* v. *Legg Mason, Inc.*,
2009 U.S. App. LEXIS 21404 (2d Cir. Sept. 30, 2009) .................................. 11-12

*Goldstein* v. *MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ............................................................ 4, 7, 15

*Greenberg* v. *Crossroads Sys.*,
364 F.3d 657 (5th Cir. 2004) ............................................................... 14

*Ind. Elec. Workers' Pension Trust Fund* v. *Shaw Group*,
537 F.3d 527 (5th Cir. 2008) ............................................................. 1, 7, 8

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
2007 U.S. Dist. LEXIS 932 (E.D. Pa. Jan. 9, 2007) ........................................ 11

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004) ...................................................... 6

**TABLE OF AUTHORITIES**
**(continued)**

*Page(s)*

*In re Catalina Mktg. Corp. Secs. Litig.*,
   390 F. Supp. 2d 1110 (M.D. Fla. 2005) ................................................................ 7

*In re CIT Group, Inc. Sec. Litig.*,
   349 F. Supp. 2d 685 (S.D.N.Y. 2004) ................................................................ 13

*In re Dell Inc., Secs. Litig.*,
   591 F. Supp. 2d 877 (W.D. Tex. 2008) ................................................................ 8

*In re Dynegy, Inc. Sec. Litig.*,
   339 F. Supp. 2d 804 (S.D. Tex. 2004) ............................................................. 3, 6

*In re Integrated Elec. Servs.*,
   2006 U.S. Dist. LEXIS 1425 (S.D. Tex. Jan. 10, 2006),
   *aff'd*, 497 F.3d 546 (5th Cir. 2007) ................................................................ 8

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) ................................................................ 11

*In re Lattice Semiconductor Corp. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 262 (D. Or. Jan. 3, 2006) ................................................ 7

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................ 6

*Krim* v. *BancTexas Group*,
   989 F.2d 1435 (5th Cir. 1993) ........................................................................ 12

*Lovelace* v. *Software Spectrum*,
   78 F.3d 1015 (5th Cir. 1996) .......................................................................... 7

*Melder* v. *Morris*,
   27 F.3d 1097 (5th Cir. 1994) .......................................................................... 5

*Mortensen* v. *AmeriCredit*,
   123 F. Supp. 2d 1018 (N.D. Tex. 2000),
   *aff'd*, 240 F.3d 1073 (5th Cir. 2000) ................................................................ 7

*Nathenson* v. *Zonagen Inc.*,
   267 F.3d 400 (5th Cir. 2001) ....................................................................... 4, 6

-iv-

**TABLE OF AUTHORITIES**
**(continued)**

*Page(s)*

*Newby* v. *Lay*,
258 F. Supp. 2d 576 (S.D. Tex. 2003) ............................................................ 4, 6, 7

*Phillips* v. *LCI Int'l, Inc.*,
190 F.3d 609 (4th Cir. 1999) ...................................................................... 4

*Plumbers & Steamfitters Local 773 Pension Fund* v. *Can. Imperial Bank*,
2010 U.S. Dist. LEXIS 25041 (S.D.N.Y. Mar. 17, 2010) ..................................... 7

*Rosenzweig* v. *Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) ...................................................................... 11

*R2 Invs.* v. *Phillips*,
401 F.3d 638 (5th Cir. 2005) ...................................................................... 3, 5, 9

*Shapiro* v. *UJB Fin. Corp.*,
964 F.2d 272 (3d Cir. 1992) ...................................................................... 13

*Southland Sec. Corp.* v. *INSpire Ins. Solutions Inc.*,
365 F.3d 353 (5th Cir. 2004) ...................................................................... 2, 10

*Stichting Pensioenfonds* v. *Qwest Commc'ns*,
2005 U.S. Dist. LEXIS 9026 (D. Colo. Mar. 30, 2005) ...................................... 6

*Taubenfeld* v. *Hotels.com*,
385 F. Supp. 2d 587 (N.D. Tex. 2004) ......................................................... 12

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ................................................................................ 2

*Tittle* v. *Enron Corp.*,
284 F. Supp. 2d 511 (S.D. Tex. 2003) ......................................................... 10

*Tuchman* v. *DSC Commc'ns*,
14 F.3d 1061 (5th Cir. 1994) ...................................................................... 4, 5

*Williams* v. *WMX Techs.*,
112 F.3d 175 (5th Cir. 1997) ...................................................................... 12

*Zagami* v. *Natural Health Trends Corp.*,
540 F. Supp. 2d 705 (N.D. Tex. 2008) ......................................................... 3

**TABLE OF AUTHORITIES**
**(continued)**

*Page(s)*

*Zishka* v. *Am. Pad & Paper Co.*,
   2000 U.S. Dist. LEXIS 13300 (N.D. Tex. Sept. 14, 2000) ...................................................... 7

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................................................. 10

Fed. R. Civ. P. 9(b) ............................................................................................................. 10

Fed. R. Civ. P. 15(a) ............................................................................................................. 15

**Other Authority**

Federal Deposit Insurance Corporation, *Failed Bank List*,
   *available at* http://www.fdic.gov/bank/individual/failed/banklist.html .................................. 1

## PRELIMINARY STATEMENT

In their opposition briefs, Plaintiffs confirm that they have brought impermissible "fraud by hindsight" claims, barred by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), against Lewis S. Ranieri, the non-executive Chairman of Franklin Bank Corp. ("Franklin").  Having failed to plead any facts that Mr. Ranieri knew of, or recklessly disregarded, information contrary to his few public statements about Franklin, Plaintiffs are left to claim that he "must have been aware" of such contrary facts.[1]  In this Circuit, such allegations are legally insufficient to state a securities fraud claim.  *See Ind. Elec. Workers' Pension Trust Fund* v. *Shaw Group*, 537 F.3d 527, 540 (5th Cir. 2008) ("'defendants must have known' allegation" is "too vague to support a strong inference of scienter").

Tellingly, in their 128 pages of opposition briefs, Plaintiffs studiously ignore or gloss over Mr. Ranieri's dispositive arguments supporting his motion to dismiss.  For example, Plaintiffs sidestep the worst banking crisis since the Great Depression, as if this crisis played no role in Franklin's bankruptcy, even though over 250 banks have failed since the January 31, 2007 start of the putative class periods.[2]  Even worse, Plaintiffs offer no legally cognizable motive—none—for Mr. Ranieri to have engaged in "fraud."  Indeed, it is undisputed that Mr. Ranieri (i) personally lost about $20 million in the value of his Franklin stock, (ii) never sold a

---

[1] *See, e.g.*, Preferred Stock Plaintiffs' Opposition Brief ("Preferred Opp."), at 32 ("The individual Defendants *must have been aware* of these glaring deficiencies in the Bank's policies and procedures . . . ." (emphasis added)); *id.* at 31 (the "Individual Defendants also *must have known*" that Franklin employed "procedures that were recklessly inadequate" (emphasis added)); Common Stock Plaintiff's Opposition Brief ("Common Opp."), at 37 ("[Defendants] knew, *or were certainly on notice*, of the Countrywide line of credit . . . ." (emphasis added)).

[2] Federal Deposit Insurance Corporation, *Failed Bank List*, *available at* http://www.fdic.gov/bank/individual/failed/banklist.html (last visited June 4, 2010).

single share during the putative class periods, and (iii) spent over $5 million of his own money *to buy more shares* during those periods.  (Joint App. Tabs 16 & 16(a); *see* pp. 3-4, *infra*.)

Plaintiffs have not pled with particularity any facts to support a "cogent and compelling" inference, as required by *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007), that Mr. Ranieri acted with fraudulent intent (or scienter).  Lacking any facts demonstrating that Mr. Ranieri acted with scienter, Plaintiffs contend that the magnitude of Franklin's restatement, by itself, is sufficient to plead his scienter.  (Common Opp. at 39-41; Preferred Opp. at 23-27.)  In doing so, Plaintiffs ignore that any inference of scienter premised on the nature or size of a restatement may be made, if at all, *only* against a corporation's management, not an outside director such as Mr. Ranieri.  Further, in claiming that certain FDIC examination reports somehow establish Mr. Ranieri's scienter, Plaintiffs ignore that in *every* FDIC report issued prior to Mr. Ranieri's alleged misstatements, FDIC examiners concluded that Franklin's Board was "satisfactory/effective."  (*See* pp. 4-9, *infra*.)

Beyond not pleading that Mr. Ranieri acted with scienter, Plaintiffs have failed to sufficiently allege a material misstatement or omission by him.  Instead, Plaintiffs continue to claim that "Defendants"—without identifying which Defendant—made misstatements about Franklin's alleged exposure to "subprime" or "nontraditional" mortgages, Franklin's loan to Countrywide Financial ("Countrywide") and the quality of Franklin's loans.  (*E.g.*, Preferred Opp. at 1, 30-32; Common Opp. at 1-2, 4, 11-12, 25-30, 36-39.)  Plaintiffs do not cite a single instance where *Mr. Ranieri* said *anything* to Franklin shareholders about those subjects.  The Fifth Circuit has flatly rejected this sort of "group pleading."  *Southland Sec. Corp.* v. *INSpire Ins. Solutions Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).  And, Plaintiffs have not pled the statutorily-required element of loss causation—*i.e.*, that *Mr. Ranieri's statements* and not the alleged misstatements of others impacted the price of Franklin's stock.  (*See* pp. 9-15, *infra*.)

Finally, the complaints fail to allege control person claims against Mr. Ranieri,[3]

and the Preferred Stock Plaintiffs' Securities Act claims—filed more than one year after Franklin

issued at least two separate "storm warnings"—are time-barred.[4]

## ARGUMENT

## I.    PLAINTIFFS' OPPOSITIONS CONFIRM THEIR FAILURE TO PLEAD A COGENT AND COMPELLING INFERENCE OF MR. RANIERI'S FRAUDULENT INTENT.

In this Circuit, Plaintiffs cannot escape their failure to plead fraudulent intent

separately "with respect to *each* individual defendant." *R2 Invs.* v. *Phillips*, 401 F.3d 638, 643

(5th Cir. 2005) (emphasis added). Thus, Plaintiffs must specifically demonstrate Mr. Ranieri's

"intent to deceive, manipulate, or defraud or . . . severe recklessness" when he made *each*

allegedly actionable misstatement. *Id.* at 645.

### A.    As a Matter of Law, Mr. Ranieri Had No Motive to Defraud and Every Incentive to Protect His $20 Million Investment in Franklin.

In claiming that Mr. Ranieri's alleged "fraud" was done "deliberate[ly]" and

"knowingly" (Preferred Opp. at 26, 29; Common Opp. at 41), Plaintiffs ignore that he personally

lost about $20 million when Franklin went bankrupt, including $5 million of Franklin stock he

bought *during the putative class periods* (when he supposedly knew the stock was worthless).

---

[3] The only argument made by Plaintiffs concerning their control person claims is that they must plead only that Mr. Ranieri had "the power to control" Franklin, not that he "actually exercised that power." (Common Opp. at 49-50; Preferred Opp. at 75.) But, fatally, neither complaint even alleges facts showing that Mr. Ranieri had power to control Franklin. *See In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 876-77, 912-13 (S.D. Tex. 2004) (allegations that company's former Chairman and others, "because of their status as high-ranking officers/directors," had the "power to directly or indirectly influence [the company's] corporate policy and actions" are insufficient as a matter of law); *Zagami* v. *Natural Health Trends Corp.*, 540 F. Supp. 2d 705, 716 (N.D. Tex. 2008) (plaintiff must allege facts showing that defendant had the "ability to control the specific transaction or activity upon which the primary violation is based"); *see also* Mr. Ranieri's Opening Brief ("Ranieri Br."), at 36-38.

[4] Mr. Ranieri incorporates by reference herein the arguments made by Messrs. Chimerine, Golush, Howard, Master, Perro, Rhodes and Selman in their reply brief as to the untimeliness of the Preferred Stock Plaintiffs' Securities Act claims. (*See also* Ranieri Br. at 33-36.)

(*See* Joint App. Tabs 16 & 16(a).)   As a matter of law, these facts alone negate his alleged scienter.  *See Nathenson* v. *Zonagen Inc.*, 267 F.3d 400, 421 (5th Cir. 2001) (fact that defendant "did not sell [his] shares during the relevant class period undermines plaintiffs' [scienter] claim"); *Newby* v. *Lay*, 258 F. Supp. 2d 576, 614, 635-36 (S.D. Tex. 2003) (inference of scienter is "negat[ed]" when defendant "actually increased [his] stock holdings" during the class period).

While the Preferred Stock Plaintiffs no longer claim that Mr. Ranieri had motive to commit fraud, the Common Stock Plaintiff makes the unsupported assertion that, "[g]enerally speaking, Defendants were motivated to conceal from the public the true condition of Franklin so that they could accomplish a sale of the bank on favorable terms."  (Common Opp. at 34.)  As a matter of law, the fact that an outside director wants to make a company more attractive for sale is an interest shared by all directors and, thus, not a legally cognizable motive for fraud. *Nathenson*, 267 F.3d at 420; *Phillips* v. *LCI Int'l, Inc.*, 190 F.3d 609, 623 (4th Cir. 1999).  In any event, Plaintiff does not point to a single instance where Mr. Ranieri, or anyone else, discussed selling Franklin.  *See Tuchman* v. *DSC Commc'ns*, 14 F.3d 1061, 1068 (5th Cir. 1994) (plaintiffs do not have "license to base claims of fraud on speculation and conclusory allegations").[5]

**B.      Unable to Plead a Motive by Mr. Ranieri to Engage in Fraud, Plaintiffs Do Not Allege the Particularized Facts Necessary to Meet the Fifth Circuit's "Tougher Standard" for Pleading His Alleged Fraudulent Intent.**

Because Plaintiffs have not alleged any factual basis for a motive by Mr. Ranieri to commit fraud, they must meet the Fifth Circuit's "tougher standard for establishing [his]

---

[5] *Goldstein* v. *MCI WorldCom*, on which the Common Stock Plaintiff relies (*see* Common Opp. at 34-35), actually undermines any notion that Plaintiff has pled legally sufficient motive allegations here. To begin with, in *Goldstein*, the Fifth Circuit *affirmed the dismissal* of plaintiff's fraud claims for failure to plead scienter.  340 F.3d 238, 254, 259 (5th Cir. 2003).  Moreover, the complaint in *Goldstein* did not, as here, speculate that the company was considering a merger or acquisition.  Instead, the *Goldstein* plaintiff alleged that the company had, in fact, entered into a definitive merger agreement pending shareholder and regulatory approvals at the time of defendants' alleged misstatements.  *Id*. at 249-50.

fraudulent intent." *Melder* v. *Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994); *see R2 Invs.*, 401 F.3d at 644-45 ("Where, as here, the plaintiff has not alleged a clear motive for the alleged misstatements or omissions, the strength of its circumstantial evidence of scienter must be correspondingly greater." (citing *Tuchman*, 14 F.3d at 1068)).

### 1.     Mr. Ranieri's Position as an Outside Director Is Legally Insufficient to Plead His Fraudulent Intent.

In claiming that Mr. Ranieri must have been aware of the various accounting errors at Franklin because, as Franklin's non-executive Chairman, he must have been involved in Franklin's everyday affairs (*e.g.*, Preferred Opp. at 40; Common Opp. at 32-33), Plaintiffs cannot escape that Mr. Ranieri (i) did not have a management or executive role at Franklin or its subsidiary, Franklin Bank, S.S.B. (the "Bank"), when he made his alleged misstatements,[6] (ii) lived in New York, not Texas where Franklin was headquartered, and (iii) was active at more than 16 other organizations during the class periods.[7]

Plaintiffs plead no facts showing that Mr. Ranieri managed Franklin's or the Bank's day-to-day affairs.  At best, the Common Stock Plaintiff cites a statement by Mr. Ranieri during the November 26, 2007 conference call that "I think you know our backgrounds and we believe that we can shepherd this institution through this cycle as we have done others . . . .

---

[6] In May 2008, six months *after* his last alleged misstatement (in November 2007), Mr. Ranieri was appointed interim CEO of Franklin (but not the Bank).  (Redacted Amended Consolidated Preferred Stock Purchaser Complaint (the "Preferred Stock Complaint") ¶ 74.)

[7] During the putative class periods, Mr. Ranieri was (1) President, CEO and Chairman of Ranieri & Co.; (2) Chairman of the Advisory Board of Superderivatives; (3) a director of the Metropolitan Opera Association; (4) Chairman of the American Financial Realty Trust; (5) Chairman of Caplease; (6) a director of Computer Associates International, Inc.; (7) Chairman of Root Markets; (8) a director of Tomorrow's Hope Foundation; (9) a Trustee of the National Housing Endowment; (10) a director of the American Asthma Foundation; (11) Chairman Emeritus of the American Ballet Theater; (12) a member of the National Association of Home Builders; (13) Chairman of Ranieri Partners LLC; (14) Chairman of Ranieri Partners Management; (15) General Partner of Hyperion Brookfield Asset Management; and (16) Principal of Helios.  (BoardEx Report for Mr. Ranieri, dated June 1, 2010, Supp. Joint App. Tab 3.)

[M]y job is to guard the place."  (Common Opp. at 5, 17, 26, 33.)  But this statement simply describes Mr. Ranieri's role, as an outside director, to monitor management's performance in navigating Franklin through the financial crisis.

> ### 2. Franklin's Restatement Does Not Establish Mr. Ranieri's Scienter.

Plaintiffs claim that the "magnitude and duration" of the alleged GAAP violations at Franklin evidence Mr. Ranieri's scienter.  (Common Opp. at 39-41; Preferred Opp. at 23-27.)  Yet, any inference of scienter based on the magnitude or nature of a restatement may be made, if at all, *only* against a corporation's *executives*.  *Newby*, 258 F. Supp. 2d at 625 n.55.  For outside directors, such as Mr. Ranieri, courts require "a Lead Plaintiff to establish scienter by *more than the fact that a significant restatement has been made*."  *Id*. (emphasis added); *see also Stichting Pensioenfonds* v. *Qwest Commc'ns*, 2005 U.S. Dist. LEXIS 9026, at *37-*38 (D. Colo. Mar. 30, 2005) (outside directors' "limited involvement, and reliance on insiders' disclosure of material information, must be considered" in determining scienter); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 497 (S.D.N.Y. 2004) (allegation that non-executive Chairman "of a company that was forced to restate its earnings significantly" does "not create the requisite strong inference" of scienter against that outside director); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 433-34 (S.D.N.Y. 2001) (the "magnitude of the [alleged] fraud itself . . . is insufficient to establish a strong inference of fraud" against outside directors).  Indeed, courts in this Circuit have routinely rejected scienter allegations, at the pleading stage, seeking to hold *outside directors* liable for *management's* alleged fraud.  *E.g.*, *Nathenson*, 267 F.3d at 425; *Dynegy*, 339 F. Supp. 2d at 895-909; *Alamosa Holdings, Inc. Secs.*

*Litig.*, 382 F. Supp. 2d 832, 858-61 (N.D. Tex. 2003); *Newby*, 258 F. Supp. 2d at 624-38; *Zishka* v. *Am. Pad & Paper Co.*, 2000 U.S. Dist. LEXIS 13300, at *9-*10 (N.D. Tex. Sept. 14, 2000).[8]

Plaintiffs' effort to characterize the relevant GAAP principles as "simple," "basic" and "unequivocal" (Common Opp. at 41; Preferred Opp. at 27) does not save their scienter theory.  It is undisputed that Mr. Ranieri (i) is not a CPA, (ii) did not serve on Franklin's or the Bank's Audit Committees, and (iii) did not devise or implement Franklin's or the Bank's accounting methodologies, which were approved by Deloitte & Touche LLP.  *See Mortensen* v. *AmeriCredit*, 123 F. Supp. 2d 1018, 1025-27 (N.D. Tex. 2000) (no strong inference of scienter against outside directors where independent auditor neither "objected to or even questioned" the accounting practices), *aff'd*, 240 F.3d 1073 (5th Cir. 2000).  The fact of a subsequent restatement "cannot substitute for factual assertions connecting [Mr. Ranieri] to specific contracts or accounting or management practices that led to" the restatement.  *Shaw Group*, 537 F.3d at 540.[9]

---

[8] The three cases cited by the Preferred Stock Plaintiffs (*see* Preferred Opp. at 24-26) further undermine their claim that Franklin's restatement establishes Mr. Ranieri's scienter.  In *In re Catalina Mktg. Corp. Secs. Litig.*, the defendants were company officers, *not outside directors*, and plaintiffs there did "not rely solely on the GAAP violations and resulting restatement," but also on defendants' failure to disclose that the company had lost its largest contract and defendants' "fudg[ing] of the numbers to meet quarterly estimates."  390 F. Supp. 2d 1110, 1115 (M.D. Fla. 2005).  Similarly, in *In re Lattice Semiconductor Corp. Sec. Litig.*, defendants were company executives, *not outside directors*, and plaintiffs' allegations went far beyond mere GAAP violations to allegations that defendants had personally entered incorrect accounting journal entries to create the appearance that the company had met revenue targets.  2006 U.S. Dist. LEXIS 262, at *24-*26 (D. Or. Jan. 3, 2006).  Finally, in *Goldstein*, the Fifth Circuit *affirmed the dismissal* of plaintiff's securities fraud claims against the outside directors, holding that plaintiff's allegation that they "must have known about the accounts receivable problem simply because a large write-off was made" did "not suffice under the PSLRA."  340 F.3d at 251.

[9] In any event, even if Plaintiffs did allege facts connecting Mr. Ranieri to the alleged accounting errors, which they did not, "[v]aluations of assets . . . , as well as the application of sophisticated accounting standards like 'fair value,' leave broad scope for judgment and informed estimation; this is another way of saying that determinations on such matters can differ reasonably and sizably."  *Shaw Group*, 537 F.3d at 536 (citing cases); *see also Lovelace* v. *Software Spectrum*, 78 F.3d 1015, 1021 (5th Cir. 1996) (GAAP "is a term of art encompassing a wide range of acceptable procedures"); *Plumbers & Steamfitters Local 773 Pension Fund* v. *Can. Imperial Bank*, 2010 U.S. Dist. LEXIS 25041, at *37 (S.D.N.Y. Mar. 17, 2010) ("Given the flexibility in interpreting GAAP and financial reporting requirements, deference is afforded executives absent evidence of corresponding fraudulent intent.").

### 3.      The "Confidential Witness" Allegations Are Legally Insufficient.

The Common Stock Plaintiff points to a confidential witness's assertion that Mr. Ranieri told "Company executives" to "get the internal controls in line."  (Common Opp. at 36-37, 43 n.14.)  The fact that Mr. Ranieri allegedly told unspecified people at an unspecified time to improve Franklin's controls hardly supports an inference of scienter.  If anything, this allegation confirms that he did *not* intentionally ignore any control issues.  *See In re Integrated Elec. Servs.*, 2006 U.S. Dist. LEXIS 1425, at *11 (S.D. Tex. Jan. 10, 2006) (statement that is "susceptible to many interpretations, including innocent ones," cannot contribute to an inference of scienter), *aff'd*, 497 F.3d 546 (5th Cir. 2007); *see also* Ranieri Br. at 16-18.[10]

### 4.      The FDIC Examination Reports Strongly Undermine Any Inference that Mr. Ranieri Acted with Fraudulent Intent.

Plaintiffs claim that FDIC examination reports issued from 2003 to 2008 were "red flags" about weaknesses in Franklin's internal controls.  (Common Opp. at 10-16; Preferred Opp. at 30-32, 35-36.)  In fact, those reports strongly *undermine* Mr. Ranieri's scienter, because in *every* report that was issued prior to Mr. Ranieri's alleged misstatements, FDIC examiners concluded that (i) the performance of Franklin's Board was "satisfactory/effective"; (ii) the Bank's internal controls were "appropriate"; (iii) Franklin's "asset quality" was "strong"; (iv) its "loan underwriting" was "conservative"; and (v) Franklin's "liquidity and funds management" was "satisfactory/sufficient."  (Report of the FDIC's Office of Inspector General ("OIG"), dated July 2, 2009, Supp. Joint App. Tab 1, at 22-24.)  Moreover, the OIG reached the "overall"

---

[10] Moreover, Plaintiff fails even to establish that the supposed confidential witness is reliable and, even if he is to be believed, when this statement occurred and in what context.  *See Shaw Group*, 537 F.3d at 535 (courts "must discount allegations from confidential sources"); *In re Dell Inc., Secs. Litig.*, 591 F. Supp. 2d 877, 895 (W.D. Tex. 2008) ("The fact that these accusations came from confidential sources detracts from their weight in the scienter analysis.").

conclusion that the Bank "failed due to *bank management's* high-risk strategy" and not by anything Mr. Ranieri said or did.  (*Id.* at 3 (emphasis added); *see* Ranieri Br. at 20-23.)

### 5. The "Whistleblower Letter" Says Nothing About Mr. Ranieri.

The so-called "whistleblower letter" (*see* Common Opp. at 6-7, 38-39) is entirely irrelevant because it was written on February 19, 2008, *i.e.*, almost three months *after* Mr. Ranieri made his last allegedly misleading statement (on November 26, 2007).  In any event, this letter does not mention Mr. Ranieri at all.  The Common Stock Plaintiff says that "the actual date of the letter is completely beside the point."  (Common Opp. at 6 n.2.)  In fact, the date of the letter confirms that Mr. Ranieri's lack of clairvoyance about facts yet to be disclosed to him cannot establish his scienter.  (*See also* Ranieri Br. at 15-16.)

## II. PLAINTIFFS SIMPLY DO NOT PLEAD ANY MATERIALLY MISLEADING STATEMENT BY MR. RANIERI.

### A. Mr. Ranieri Cannot Be Liable for the Alleged Misstatements of Others.

The Common Stock Plaintiff contends that Mr. Ranieri had an affirmative duty to volunteer public corrections of statements made on the January 31, July 25 and October 30, 2007 conference calls *by other Defendants*.  (Common Opp. at 24-26 & n.7.)  As the transcripts indisputably make clear, Mr. Ranieri did not participate in *any* of those analyst calls.  (Common Stock Plaintiff's Appendix Exs. 12-14.)  Moreover, Plaintiff cites no support for the notion that an outside director owes a duty to correct statements of management of which the director was not aware and which were made on calls in which the director did not even participate.[11]

While claiming not to have engaged in legally impermissible "group pleading" (Common Opp. at 24-26), the Common Stock Plaintiff has done just that.  For example, Plaintiff

---

[11] In any event, Mr. Ranieri's supposed failure to volunteer a correction is unsupported by any theory of fraudulent intent.  *See R2 Invs.*, 401 F.3d at 645 ("Knowledge of an omission does not itself necessarily raise a strong inference of scienter.").

claims that "Defendants" caused Franklin, like most banks, to make a number of ill-advised loans, including $150 million of supposedly "subprime" loans to Countrywide that Franklin allegedly took possession of in "approximately" September or October 2007.  (*See id*. at 4, 8, 37, 42; Franklin Investor Group's Second Consolidated Amended Complaint (the "Common Stock Complaint") ¶¶ 2, 10.)  But Plaintiff fatally pleads no statement *by Mr. Ranieri* about these loans, much less his pre-statement knowledge of facts materially at odds with any such "statement." Indeed, neither complaint alleges one instance where Mr. Ranieri said *anything* about Countrywide or "subprime" loans.  *See Southland*, 365 F.3d at 363 (plaintiffs must allege "facts demonstrating an individual defendant's participation in the particular communication containing the misstatement or omission"); *see also* Ranieri Br. at 18-19.[12]

### B.     The Registration Statement Contained No Material Misstatement or Omission.

Neither of the alleged misstatements in Franklin's May 5, 2006 Registration Statement—*i.e.*, statements about Franklin's risks and ability to control them, and financial statements for the first quarter of its fiscal year 2006—was false and misleading when made.[13]

---

[12] The Common Stock Plaintiff claims that Mr. Ranieri "acknowledged" in his motion to dismiss "his awareness of the Countrywide line of credit." (Common Opp. at 8 n.4.)  Plaintiff is wrong (*see* Ranieri Br. at 18-19), and, in any event, Plaintiff's argument misses the point.  Even assuming *arguendo* that Mr. Ranieri was aware of the existence of a line of credit to Countrywide, that does not mean that he was aware of any *default* on that loan.  Indeed, there are no allegations in either complaint that Mr. Ranieri received any information indicating that Countrywide had defaulted on a loan made by Franklin.

[13] The Preferred Stock Plaintiffs' Section 11 claim "sounds in fraud," and, therefore, Plaintiffs must plead the alleged fraud with particularity under Rule 9(b).  (*See* Ranieri Br. at 10-11.)  Plaintiffs cannot shield their Section 11 claim from Rule 9(b) merely by dividing their complaint into separate "sections."  (*See* Preferred Opp. at 4, 66-67.)  *See Tittle* v. *Enron Corp.*, 284 F. Supp. 2d 511, 642-43 (S.D. Tex. 2003) ("[I]f it looks like a securities fraud claim, sounds like a securities fraud claim and acts like a securities fraud claim, it is a securities fraud claim, no matter how you dress it up.").  In any event, the Section 11 claim does not comply even with Rule 8(a).  To survive a motion to dismiss under Rule 8(a), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009).  For the reasons stated *infra*, the Preferred Stock Complaint does not contain such "factual matter."

*First*, the Preferred Stock Complaint alleges that Franklin (i) characterized its "lending practices as conservative"; (ii) stated that "[w]e have established certain lending practices to reduce our risks"; and (iii) stated that Franklin's mortgage portfolio "provides high quality liquid assets." (Preferred Opp. at 55-56, 67.) As a matter of law, these alleged statements[14] were immaterial, nonspecific and inactionable "puffery." *See ECA & Local 134 IBEW Joint Pension Trust* v. *JP Morgan Chase*, 553 F.3d 187, 205-06 (2d Cir. 2009) (statement that bank's "risk management processes are highly disciplined and designed to preserve the integrity of the risk management process"); *Rosenzweig* v. *Azurix Corp.*, 332 F.3d 854, 869-70 (5th Cir. 2003) (statement that "our fundamentals are strong"); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 932, at \*28 (E.D. Pa. Jan. 9, 2007) (statement that company had "quality performance loans"); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 632-33 (S.D.N.Y. 2005) (statement that company had "sound risk-management procedures").

*Second*, based entirely on Franklin's August 2008 restatement, the Preferred Stock Plaintiffs claim that there must have been a material error in the first quarter 2006 financial statements included in the Registration Statement. (Preferred Opp. at 68-69.) But Franklin *never* restated its first quarter 2006 financial statements. Simply because Franklin restated its audited 2006 fiscal *year* financial statements does not plead with particularity that the unaudited financial statements for the first *quarter* of that year contained any inaccuracies, much less material ones. *See Garber* v. *Legg Mason, Inc.*, 2009 U.S. App. LEXIS 21404, at \*9-\*10 (2d

---

[14] Contrary to Plaintiffs' claim, nowhere in the Registration Statement did Franklin use the word "conservative" to describe its lending practices. The absence of this description distinguishes this case from *City of Sterling Heights Police & Fire Ret. Sys.* v. *Abbey Nat'l*, cited by the Preferred Stock Plaintiffs, in which defendants stated that the company had "very conservative" loan provisions. 423 F. Supp. 2d 348, 359-60 (S.D.N.Y. 2006). Moreover, the defendants there made a long series of other misstatements, none of which Mr. Ranieri is alleged to have made here. *See id.* (statements that "the business is trading in line with market expectations," "the pivot has passed with respect to U.S. corporate defaults," "there are no serious problems and no black holes, and if there were we would have to say so").

Cir. Sept. 30, 2009) (dismissing Section 11 claim, because plaintiff failed to allege the magnitude of the alleged financial misstatement); *Williams* v. *WMX Techs.*, 112 F.3d 175, 179 (5th Cir. 1997) (plaintiff must allege the particulars of each alleged misstatement, specifying not only its content but also "which portion" of the statement was false "and why"); *Alamosa*, 382 F. Supp. 2d at 848 n.6 (plaintiffs "cannot simply allege the projection to have been false or misleading without alleging supporting particulars and why the statement was false or misleading").

Moreover, even assuming there was some error in Franklin's first quarter 2006 financial statements, that error was immaterial as a matter of law.  For the *entire* 2006 fiscal year, Franklin's restatement reduced (i) total interest income by $1.325 million out of $291.059 million, *or 0.46%*; (ii) net interest income by $1.361 million out of $92.718 million, *or 1.47%*; and (iii) net interest income after provision for credit losses by $1.586 million out of $88.914 million, *or 1.78%*.  (Defendants' Joint Appendix Ex. 11.)  *See Krim* v. *BancTexas Group*, 989 F.2d 1435, 1445-48 (5th Cir. 1993) (understatement of loans by about 7% immaterial as a matter of law); *Taubenfeld* v. *Hotels.com*, 385 F. Supp. 2d 587, 594 (N.D. Tex. 2004) (understatement of quarterly revenue by about 1.5% and of reserves by about .5% immaterial as a matter of law).

### C.  Mr. Ranieri's Statements About Franklin's Reserves Were Accurate.

Plaintiffs contend that Mr. Ranieri made material misstatements when he stated (i) in the March 14, 2007 Form 10-K, that "we maintain our allowance for credit losses at the amount *estimated by management* to be sufficient to absorb *probable* losses *based on available information*"; and (ii) in the November 26, 2007 conference call, that "*we believe* we are adequately reserved, we have looked at this very hard."  (Preferred Opp. at 33-38; Common Opp. at 27 (emphasis added).)

Plaintiffs fail entirely to establish that these statements were inaccurate, much less that Mr. Ranieri knew that they were inaccurate.  They cite no facts indicating that Franklin's

-12-

reserves were not recorded in the March 2007 Form 10-K in an amount then deemed sufficient by management.  *See First Nationwide Bank* v. *Gelt Funding Corp.*, 820 F. Supp. 89, 95 (S.D.N.Y. 1993) ("[T]he taking of loan loss reserves is based on managerial guesswork about the future."), *aff'd*, 27 F.3d 763 (2d Cir. 1994); *In re CIT Group, Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 687, 689 (S.D.N.Y. 2004) (statement that reserves "are adequate" is "not actionable under the securities laws if [it] simply represented a failure on the part of defendants to correctly gauge the adequacy of the loan loss reserves").[15]  Nor do Plaintiffs cite any facts showing that Mr. Ranieri did not believe in November 2007 that Franklin was adequately reserved.  Indeed, Plaintiffs acknowledge that it was "months *after* . . . the November 26, 2007 conference call [that] the FDIC concluded that the Bank's allowance for credit losses was 'substantially underfunded.'"  (Preferred Opp. at 39 (emphasis added).)[16]

The Preferred Stock Plaintiffs' protestations about the second part of Mr. Ranieri's statement on the November 26 conference call—*i.e.*, that "we have looked at this very hard"—do not save their legally flawed allegations.  Mr. Ranieri did not assert or suggest that any formal review of Franklin's loan portfolio *by its Chief Credit Officer* (*see* Preferred Opp. at 34, 41-44) had occurred.  Indeed, the Preferred Stock Complaint cites no fact showing that Franklin did not do *exactly* what Mr. Ranieri said it did:  "look[] at [reserves] very hard."

---

[15] Mr. Ranieri also incorporates by reference herein the arguments made by Mr. Nocella in his reply briefs concerning the insufficiency of Plaintiffs' allegations regarding Franklin's reserves.

[16] *Shapiro* v. *UJB Fin. Corp.*, a Third Circuit case relied on by Plaintiffs (*see* Preferred Opp. at 37), also supports dismissal of the claims against Mr. Ranieri.  In *Shapiro*, the representations were not, as here, "estimates by management" or statements of "belief," but rather objective statements that the company's reserves were "very strong," "solid" and "adequate."  964 F.2d 272, 276 n.6 (3d Cir. 1992) (representation that the company has "a low level of non-performing loans, a very strong allowance for loan losses and solid loan loss reserve").  In any event, the Third Circuit concluded that the complaint did *not* state a securities fraud claim because, as here, plaintiff had not alleged any facts showing that defendants knew that reserves were not "very strong" and the like.  *Id.* at 284-85.

    **D.**    **Mr. Ranieri Made No Misstatement on the November 26, 2007 Conference Call.**

The Preferred Stock Plaintiffs grasp at straws in asserting that Mr. Ranieri stated on the November 26 call that "the Bank had not had any discussions with regulators." (Preferred Opp. at 34, 43.)  Mr. Ranieri made no such statement.

> Q.  Has there been any conversation that you have had regarding this change in your provisioning with the regulators and any additional need to raise capital?
>
> A.  No, I—the first part, this is Lewis.  As you know *we can't comment on conversations with the regulators.  But neither are we stupid*, and I would leave it at that.  And we remain well capitalized by all standards.

(Preferred Stock Complaint ¶ 66 (emphasis added).)  Plaintiffs focus entirely on Mr. Ranieri's initial "no" response while omitting his clarifying statements.  Contrary to Plaintiffs' insinuation, Mr. Ranieri's statement as a whole suggests that Franklin had been in discussions with its regulators.  In any event, Plaintiffs offer no argument as to how this supposed "misstatement" was material or how it could have possibly caused Plaintiffs' alleged losses.

Similarly, the Common Stock Plaintiff's snippet of two words Mr. Ranieri used during the call, "well collateralized" (*see* Common Opp. at 5, 26, 42), ignores the context of that statement.  Mr. Ranieri stated that two builders had filed for bankruptcy, and that "we remain well collateralized *in those two positions*."  (Common Stock Complaint ¶ 69 (emphasis added).) Clearly, Mr. Ranieri did not make a statement applicable to all of Franklin's loan positions.

    **E.**    **Plaintiffs Offer No Response to Their Failure to Plead that Any Statement by Mr. Ranieri Caused Their Losses.**

Finally, Plaintiffs continue to offer no theory whatsoever as to a loss caused by any statement by Mr. Ranieri.  Nor could they.  None of the alleged "corrective" disclosures plausibly relate to *Mr. Ranieri's* alleged misstatements.  *See, e.g., Greenberg* v. *Crossroads Sys.*, 364 F.3d 657, 665 (5th Cir. 2004) (plaintiffs may not "simply offer[] evidence of any decrease in

-14-

price following the release of negative information," but must establish a "causal connection between the allegedly false statement and its effect" on the stock price); *Barrie* v. *InterVoice-Brite, Inc.*, 2009 U.S. Dist. LEXIS 99253, at *40 (N.D. Tex. Oct. 26, 2009) (plaintiffs must show "that the initial false statement causing the stock price to increase and the later corrective disclosure causing the decrease were factually related"); *see also* Ranieri Br. at 30-33.[17]

## CONCLUSION

The claims asserted against Mr. Ranieri should be dismissed with prejudice.[18]

Dated:   Austin, Texas
            June 4, 2010

                                                            Respectfully submitted,

                                                            ___/s/ Stephen E. McConnico_____
                                                            Steve McConnico
                                                            Cynthia Saiter Connolly
OF COUNSEL:                                                 SCOTT, DOUGLASS & McCONNICO, LLP
                                                            One American Center
Robert J. Giuffra, Jr.                                      600 Congress Avenue, 15th Floor
Brian T. Frawley                                            Austin, Texas 78701-2589
William B. Monahan                                          (512) 495-6300
Andrew J. DeFilippis
SULLIVAN & CROMWELL LLP                                     *Attorneys for Defendant*
125 Broad Street                                            *Lewis S. Ranieri*
New York, New York 10004
(212) 558-4000

---

[17] Mr. Ranieri also incorporates by reference herein the causation arguments made by Mr. Nocella and by Messrs. Chimerine, Golush, Howard, Master, Perro, Rhodes and Selman in their reply briefs.

[18] This Court should reject the Common Stock Plaintiff's "request" for leave to replead (Common Opp. at 51 n.14). Plaintiff has had almost two years to assert a cognizable claim against Mr. Ranieri. Even after filing *three* complaints—the most recent of which "throws the kitchen sink" against Defendants in its 220 paragraphs and 102 pages of pleading—Plaintiff still fails to allege a claim against him. Permitting a fourth try would be futile and prejudicial to Mr. Ranieri, particularly given that further briefing will diminish Franklin's directors and officers liability insurance policy. *See Cent. Laborers' Pension Fund* v. *Integrated Elec. Servs.*, 497 F.3d 546, 556 (5th Cir. 2007) ("A bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."); *Goldstein*, 340 F.3d at 254-55 (no leave to amend where plaintiffs failed to show how they would correct deficiencies in a future filing); *Fin. Acquisition Partners* v. *Blackwell*, 440 F.3d 278, 291-92 (5th Cir. 2006) (affirming denial of leave to file a third amended complaint).

## CERTIFICATE OF SERVICE

I certify that on June 4, 2010, copies of Defendant Lewis S. Ranieri's Reply Memorandum in Support of His Motion to Dismiss the Complaints were served by ECF and Federal Express, Next Day Delivery, on:

| | |
|---|---|
| Ralph M. Stone<br>SHALOV STONE BONNER & ROCCO LLP<br>485 Seventh Avenue, Suite 1000<br>New York, New York 10018<br>*Lead Counsel for the Putative*<br>*Preferred Stock Class* | James G. Munisteri<br>GARDERE WYNNE SEWELL & RIGGS<br>1000 Louisiana, Suite 3400<br>Houston, Texas 77002<br>*Attorneys for Defendant*<br>*Anthony J. Nocella* |
| Roger S. Greenberg<br>SCHWARTZ JUNELL GREENBERG<br>& OATHOUT, LLP<br>909 Fannin Street, Suite 2700<br>Houston, Texas 77010<br>*Liaison Counsel for the Putative*<br>*Preferred Stock Class* | Barrett H. Reasoner<br>GIBBS & BRUNS, LLP<br>1100 Louisiana, Suite 5300<br>Houston, Texas 77002<br>*Attorneys for Defendant*<br>*Russell McCann* |
| Randall K. Pulliam<br>CAULEY WILLIAMS BATES BOZEMAN<br>& PULLIAM, PLLC<br>11311 Arcade Drive, Suite 200<br>Little Rock, Arkansas 72212<br>*Lead Counsel for the Putative*<br>*Common Stock Class* | Jonathan C. Dickey<br>GIBSON DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166<br>*Attorneys for Defendant*<br>*RBC Capital Markets Corp.* |
| William Fred Hagans<br>HAGANS BURDINE MONTGOMERY<br>& RUSTAY, PC<br>3200 Travis, Fourth Floor<br>Houston, Texas 77006<br>*Liaison Counsel for the Putative*<br>*Common Stock Class* | Terri L. Lilley<br>LATHAM & WATKINS LLP<br>355 South Grand Avenue<br>Los Angeles, California 90071<br>*Attorneys for Defendant*<br>*Deloitte & Touche LLP* |

/s/ Stephen E. McConnico
Stephen E. McConnico