UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CIVIL FILE NO.     4:08-CV-01810 (KPE)

CLASS ACTION

| | |
|---|---|
| In re FRANKLIN BANK CORP., SECURITIES LITIGATION | § § § § § |

**DEFENDANTS CHIMERINE, GOLUSH, HOWARD, MASTER, PERRO, RHODES, AND SELMAN'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Steve McConnico
Cynthia Saiter Connolly
SCOTT, DOUGLASS & McCONNICO, L.L.P.
600 Congress Avenue, Suite 1500
Austin, Texas  78701-2589
(512) 495-6300
(512) 474-0731 Fax

*ATTORNEYS FOR DEFENDANTS LAWRENCE CHIMERINE, DAVID M. GOLUSH, JAMES A. HOWARD, ALAN E. MASTER, ROBERT A. PERRO, WILLIAM RHODES, AND JOHN B. SELMAN ("DIRECTORS")*

June 4, 2010

712739

## TABLE OF CONTENTS

Preliminary Statement ........................................................................................................ 1

I.    Preferreds Fail to Plead Exchange Act Claims Against Any Director ........................ 1

    A.  "Misstatements Nos. 4-8" ................................................................................... 2

    B.  "Misstatement No. 9" ......................................................................................... 2

    C.  No Inference of Scienter for "Misstatements" Nos. 4-8 & 9 ................................ 3

II.    Preferred Fail to Plead Securities Act Claims Against the Directors ......................... 5

III.    Incorporation by Reference ....................................................................................... 9

CONCLUSION ................................................................................................................ 10

712739

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. Baker Hughes, Inc.*, 292 F.3d 424 (5th Cir. 2002) .............................................. 3

*Collmer v. U.S. Liquids*, 268 F.Supp.2d 718 (S.D.Tex. 2007) ............................................. 3

*Fin. Acquisition Partners v. Blackwell*, 430 F.3d 278 (5th Cir. 2006) ................................ 1

*In re Dynegy, Inc. Sec. Litig.*, 339 F.Supp.2d 804 (S.D.Tex. 2004) ............................... 7, 9

*In re Fleming Cos., Inc. Sec. & Deriv. Litig.*, 2004 WL 5278716 (E.D. Tex. 2004) ....... 4, 9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F.Supp.2d 429 (S.D.N.Y. 2003) ................................................................................................. 9, 10

*Ind. Elec. Workers' Pension Trust Fund v. Shaw Group*, 537 F.3d 527 (5th Cir.) ............................................................................................................................ 4

*J&R Marketing, SEP v. General Motors Corp.*, 549 F.3d 384 (6th Cir. 2008) ................... 8

*Jensen v. Snellings*, 841 F.2d 600 (5th Cir. 1988) ............................................................... 7

*Lovelace v. Software Spectrum*, 78 F.3d 1015 (5th Cir. 1996) ........................................... 5

*Merck & Co. v. Reynolds*, --- U.S. ----, 2010 WL 1655827 (April 27, 2010) ..................... 7

*Mortensen v. AmeriCredit Corp.*, 123 F.Supp.2d 1018 (N.D.Tex. 2000) ........................... 5

*Nathenson v. Zonagen*, 267 F.3d 400 (5th Cir. 2001) ..................................................... 4, 6

*Newby v. Lay*, 258 F.Supp.2d 576 (S.D.Tex. 2003) ........................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007) .................................. 5

**Statutes**

15 U.S.C. § 77m ............................................................................................................... 6, 7

28 U.S.C. § 1658(b) .............................................................................................................. 7

Preferred Plaintiffs fail to demonstrate the Trust or Pribyl have stated a claim, singularly or collectively, against Defendants Lawrence Chimerine, David M. Golush, James A. Howard, Alan E. Master, Robert A. Perro, William Rhodes, and John B. Selman (the "Directors"). Preferreds' 75-page Response (Dkt. 211) does not challenge—or even address—dismissal of claims based on the Audit Committee Report, the *only* document from the Class Period alleged in the live complaint ("PSC")[1] to be attributable to any specific Director. And in a desperate bid to save their Securities Act claims from limitations, Preferreds unequivocally admit the 81% decline from the IPO price of $25.00 to $4.735 prior to August 2008 was "***unrelated to the Offering***." Preferreds' wholesale abandonment of allegations and damages is not enough to save their faulty complaint, however, and their claims against the Directors must be dismissed.

## I. Preferreds Fail to Plead Exchange Act Claims Against Any Director

Out of 15 SEC filings from the Class Period referenced in the PSC, the Trust alleged only one was signed by any specific Director: a March 26, 2007 Audit Committee Report.[2] The Response does not challenge dismissal of claims against the Directors based on this report, and instead attempts to chart a new course based on alleged "Misstatements Nos. 4-8" and "Misstatement No. 9" in the Bank's 2006 Form 10-K.[3] Not only are some of these statements not actionable as a matter of law, none are plead against individual Directors with the particularity required by the PSLRA. Nor has the Trust established, as it must, a "strong inference" that any Director acted with scienter in respect to the alleged acts or omissions. Accordingly, the Trust's Exchange Claims must be dismissed.[4]

---

[1] Pursuant to this Court's May 13, 2010 order, Preferreds recently filed a Redacted Amended Consolidated Preferred Stock Purchaser Complaint (Dkt. 217). Preferreds represent the redacted complaint is otherwise identical to the PSC. For ease of reference, PSC as used herein shall refer to Preferreds' redacted, live complaint.

[2] *See* PSC, ¶ 49. Because the PSLRA abolished group pleading, Directors cannot be liable for misstatements in documents they did not sign or create. *See Fin. Acquisition Partners v. Blackwell*, 430 F.3d 278, 288 (5th Cir. 2006).

[3] Response at 22 & 33.

[4] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2510 (2007).

A.     "Misstatements Nos. 4-8"

The Trust argues in its Response that the Directors made "Mistatements Nos. 4-8" by signing the 2006 Form 10-K.[5] This is the *only* Class Period document mentioned in the Response alleged to have been signed by the Directors. The Trust alleges that Misstatements Nos. 4-8 recite false financial results, but concedes the results were accompanied by an unqualified report from the Bank's auditor.[6] And while the Trust notes that any misstatement in the 2006 Form 10-K resulted in an increase to net income and earnings per share of 7.7% and $0.05 per share, it argues it has shown a strong inference of scienter on the part of the Directors because *later* SEC filings that the Directors did *not* sign or prepare allegedly inflated net income and earnings "by 120% and $0.36 per share."[7] As set forth below, these allegations are insufficient as a matter of law.

B.     "Misstatement No. 9"

The Trust further argues in its Response that by signing the 2006 Form 10-K, the Directors made "Misstatement No. 9":

> We maintain our allowance for credit losses at the amount estimated by management to be sufficient to absorb probably losses based on available information. Our estimates of credit losses meet the criteria for accrual of loss contingencies in accordance with SFAS No. 5, "Accounting for Contingencies," as amended by SFAS No. 114, "Accounting by Creditors for Impairment of a Loan."[8]

As an initial matter, the PSC does not allege that the Bank's ALLL was not maintained in an amount estimated by management to be sufficient, and thus fails to show the statement is misleading.[9] In an attempt to color the rest of the statement as false, the Trust misleadingly

---

[5] Response at 22.
[6] PSC, ¶ 44-47.
[7] Response at 24.
[8] Response at 22.
[9] Nor can the statement be material given the lengthy 2006 Form 10-K disclosures specifically addressing ALLL. *See* App., Tab 7 at 23 & 36 (warning that ALLL "involve[d] a significant amount of subjective and complex

states that "the FDIC found the Bank's ALLL methodology to be in contravention of: (1) FAS No. 114 …; (2) FAS No. 5 …; and (4) *Interagency Policy Statement on the Allowance for Loan and Lease Losses* …."[10] The PSC, however, is devoid of any non-conclusory allegations to support the Trust's position, and the OIG report relied on by the Trust not only does **not** mention SFAS No. 5 or SFAS. No. 114, it affirmatively shows that *as of the 2006 Form 10-K*, the FDIC had **never** found the Bank's ALLL to be either "substantially deficient" or "in contravention of [a] policy statement."[11] Nothing in the PSC or the documents properly before the Court suggests "Misstatement No. 9" is actionable in any way.[12]

### C. No Inference of Scienter for "Misstatements" Nos. 4-8 & 9

Simply signing or filing a 10-K that contains inaccurate accounting figures or fails to follow GAAP does not establish scienter—the party must know it is publishing false information or must be severely reckless in doing so. *See Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 433 (5th Cir. 2002). The PSC is devoid of any non-conclusory allegation any Director knew that the 2006 Form 10-K contained false information.[13] Instead, the Trust attempts to establish a strong

---

judgment by [the Bank's] management," and that "[o]ur allowance for credit losses may be insufficient to cover actual losses."); *see also Collmer v. U.S. Liquids*, 268 F.Supp.2d 718, 744 (S.D.Tex 2007) (a reasonable fact finder "could not conclude that the alleged misrepresentation 'would influence a reasonable investor's investment decision'" where specific risk disclosures addressed the substance of the challenged statement.)

[10] Response at 35.

[11] FDIC OIG Report at 23, attached as Tab 1 to the Individual Defendants' Supplemental Joint Appendix ("Supp.App"), which is incorporated herein by reference.

[12] Moreover, it is undisputed that the Bank maintained a composite rating of at least "2" at all times prior to the 2006 Form 10-K. Response at 43 n.21. Consequently, at the time the 2006 Form 10-K was filed, the FDIC considered the Bank to be in a generally strong compliance position, subject to minor deficiencies "involv[ing] technical aspects of the law." Response, Greenberg Affidavit at Ex. G. To earn a composite rating of 2, there must be "no material supervisory concerns." Supp.App., Tab 2 at 2. Moreover the OIG Report shows that for each examination prior to the 2006 Form 10-K or the 2006 Registration Statement, the Bank received the highest possible "1" rating for Asset Quality (the category encompassing ALLL) and "2" ratings for all other categories, meaning the FDIC considered any alleged deficiency "not material" or "minor." *Id.* at 4-8 & Supp.App., Tab 1 at 3 & n.b.

[13] Aware of this deficiency, the Response alleges that FDIC examinations were provided contemporaneously to the Directors by (1) citing an affidavit from the Trust's own class counsel that attaches a facially inactive Overview of Compliance Examination and (2) referring to paragraphs redacted from the PSC. *See* Response at 30 & 31 (citing PSC, ¶¶ 39, 82 & 84). Of course, class counsel's affidavit provides no indication that the examination overview was followed in this case, and neither the PSC nor the Response contain any non-conclusory allegations that specific reports were provided to specific Directors at specific times prior to 2006 Form 10-K. *See Newby v. Lay*, 258

3

inference of scienter by alleging "severe recklessness."[14]  "Severe recklessness" is limited to "highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure for the standards of ordinary care, and that a present danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."  *Nathenson v. Zonagen*, 267 F.3d 400, 408 (5th Cir. 2001).  Whether a party acts with severe recklessness should be evaluated in light of the number, size, timing, nature, frequency, and context of acts or omissions.  *In re Fleming Cos., Inc. Sec. & Deriv. Litig.*, 2004 WL 5278716 at * 11 (E.D.Tex. 2004).

Here, the Response alleges that the Directors signed *one* document that contained "Misstatements" Nos. 4, 8 & 9.  This document was filed at the very beginning of the Class Period, and the Trust's own allegations show it resulted in a minor increase to net income and earnings per share.  Moreover, the PSC admits that the accounting practices at issue were audited contemporaneously by Deloitte, who found that the financial statements "present fairly, in all material respects," the financial position of Franklin.[15]  *See Mortensen v. AmeriCredit Corp.*, 123 F.Supp.2d 1018, 1026-27 (N.D.Tex. 2000) (no strong inference of scienter where company's independent auditor neither "objected to or even questioned" the accounting practices at issue).

The Trust alleges no subsequent misstatements regarding ALLL estimates, accounting figures, or failures to follow GAAP attributable to any specific Director.  To the contrary, the PSC shows (1) that once the Directors became aware of circumstances justifying an ALLL increase, such a revision was made,[16] and (2) that once the Directors were informed of the

---

F.Supp.2d 576, 633 (S.D.Tex. 2003)(plaintiffs "cannot logically argue" that a director knowingly "failed to disclose information that [plaintiffs] ha[ve] not shown that the Outside Director had"); *see also Ind. Elec. Workers' Pension Trust Fund v. Shaw Group*, 537 F.3d 527, 535 (5th Cir.) ("scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions with the Company").

[14] Response at 6.
[15] PSC, ¶ 49.
[16] PSC, ¶ 64-65.

4

712739

alleged accounting errors, a publicly-disclosed investigation was promptly undertaken.[17] In addition, Preferreds not only fail to allege the Directors had any motive to defraud, it is ***undisputed*** that every Director either maintained or ***increased*** their shares of Franklin's preferred and/or common stock ***after*** the 2006 Form 10-K and throughout the Class Period.[18]

To avoid dismissal, the Trust must plead a "strong inference" of scienter that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2504-05 (2007). Where a plaintiff does not sufficiently allege that a defendant had a motive to defraud, the plaintiff faces a "more stringent standard" of pleading scienter, *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1019 n.3 (5th Cir. 1996), particularly where the defendants increased their holdings after the alleged misstatement. *See, e.g., Nathenson*, 267 F.3d at 421 ("[T]he fact that the other defendants did not sell their shares during the relevant class period undermines plaintiffs' [scienter] claim."); *Newby*, 258 F.Supp.2d at 638 (purchase of additional shares inconsistent with scienter). Because no inference raised by the PSC is as cogent or compelling as the inference that the Directors acted without any fraudulent intent, Preferreds' Exchange Claims against the Directors must be dismissed.

## II. Preferred Fail to Plead Securities Act Claims Against the Directors

Preferreds not only fail to plead compliance with the statute of limitations governing their Securities Act claims,[19] Preferreds' own allegations show that they either knew or should have

---

[17] PSC, ¶ 72.

[18] *See* App., Tab 15 at (A) (Chimerine increased common stock), (B) (Golush increased common and preferred stock), (C) (Howard neither bought nor sold during Class Period), (D) (Master increased common and preferred stock), (E) (Perro increased common stock), (F) (Rhodes increased common stock), and (G) (Selman decreased common but increased preferred stock).

[19] Section 13, which governs Preferreds' Section 11 and Section 15 claims, requires such claims be brought "within one year after the discovery of the untrue statement or omission, or after such discovery should have been made in the exercise of reasonable diligence." *See* 15 U.S.C. § 77m. Preferreds allege only that their action "was brought within one year after the discovery of the untrue statements or omissions and within three years after the stock was

5

712739

known facts underlying their claims more than a year before they were filed or that their claims are barred by negative causation. For each of these reasons, their claims must be dismissed.

The PSC affirmatively shows that Preferreds had actual and/or constructive knowledge of the alleged untruths or omissions underlying their Securities Act claims over a year before they were filed. It is well-settled that notice of the entire alleged wrong is not required before the one-year limitations period begins to run; if there are circumstances or "storm warnings" that would trigger an investigation by a reasonable investor, the plaintiff is charged with knowledge of all facts that a reasonable investigation would have disclosed.[20] *In re Dynegy*, 339 F.Supp.2d at 845 (citing *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988)). And as Preferreds recognize, a specific storm warning of *one* omission is sufficient to bar Securities Act claims based on *multiple* omissions. Response at 64; *see also In re Dynegy*, at 829-32, 862-63 (granting 12(b)(6) dismissal on limitations for Securities Act claims alleging misstatements regarding taxes, debt, earnings, and GAAP compliance as a result of omissions about "the Black Thunder *and* Project Alpha transactions[] *and* Dynergy's energy trading business" when a storm warning relating *solely* to Project Alpha pre-dated filing by more than a year) (emphasis added).

---

sold to the public." Response at 4 (citing PSC at ¶ 125). When Preferreds *actually* discovered alleged misstatements is not sufficient to show when such discovery *should have been made* in the exercise of reasonable diligence. Because Preferreds fail to plead compliance with Section 13, dismissal is proper. *See In re Dynegy, Inc. Sec. Litig.*, 339 F.Supp.2d 804, 835-37 (S.D.Tex. 2004) (analyzing Section 13 allegations on 12(b)(6) motion).

[20] The Supreme Court's recent decision in *Merck & Co. v. Reynolds* does not save Preferred's stale claims. At issue in *Merck* was the construction of the statute governing limitations for "claim[s] of fraud" relating to securities. *See Merck & Co. v. Reynolds*, --- U.S. ----, 2010 WL 1655827 at 4 (April 27, 2010) (citing 28 U.S.C. § 1658(b)). Section 1658(b) requires claims for securities fraud to be brought within "2 years after the discovery of facts constituting the violation." *Id.* at *4-5. Based on the language of the statute and the heightened pleading required by the PLSRA, the Court held that limitations for Section 1658(b) did not begin to run until the plaintiff knew or reasonably should have discovered the facts, including scienter, underlying the claim. *Id.* at *12. Here, Preferreds disclaim fraud in respect to their Securities Act claims, and thus neither Section 1658(b) nor *Merck* apply. In fact, *Merck* expressly recognized that the language governing limitations for Securities Act claims is materially different. *Id.* at *11 (Section 1658(b) "does *not* make the linguistic distinction" between actual and constructive discovery found in 15 U.S.C. § 77m). Under 15 U.S.C. § 77m, limitations begin to run upon actual *or* constructive discovery of the "untruth or omission" underlying the claim, and 5th Circuit cases interpreting this provision remain good law.

Here, Preferreds claim the Registration Statement was misleading because it did not disclose alleged (i) deficient accounting practices and internal controls; (ii) inadequate accounting for and/or reserving for loan losses; (iii) deficient delinquent loan acounting, REO accounting, loan modification accounting, investment securities accounting, and BOLI accounting; (iv) concerns in "nonpublic FDIC reports" regarding the Bank's ALLL methodology and the failure to implement FDIC examiner recommendations regarding liquidity policies;[21] (v) direct or indirect engagement in risky, poorly documented, and/or exotic low quality and subprime lending; and (vi) as a result of the foregoing, material overstatement of the Bank's results of operations and reported earnings.[22] The PSC then alleges certain statements within the Registration Statement were misleadings because they "omitted the material facts" above.[23]

Assuming, solely for the sake of argument, that such "omissions" were material or misleading, the PSC shows that Preferreds had knowledge of them by no later than May 1, 2008—more than a year before they filed their Securities Act claims. The PSC admits that on November 26, 2007, the Bank publicly announced a significant increase in ALLL—including doubling commercial loan reserves and tripling builder finance reserves.[24] In the same press release, the Bank disclosed that $13.5 million in loans to one borrower had to be recatergorized as troubled debt restructuring.[25] According to the PSC, on March 14, 2008, the Bank publicly disclosed that it had commenced an investigation with "independent legal and accounting advisors" into "possible accounting, disclosure and other issues related to single-family

---

[21] Not only could the "nonpublic FDIC reports" not be disclosed without the FDIC's permission, the OIG Report shows that at all times prior to the Registration Statement, the Bank received "1" and "2" component ratings for the applicable categories, meaning the FDIC considered the ALLL and liquidity issues "non-material" and "minor." *See* n.12, *supra*; *see also* Supp.App., Tab 1 at 3 & 23-24. Consequently, the alleged omissions in respect to these issues are not actionable. *See J&R Marketing, SEP v. General Motors Corp.*, 549 F.3d 384, 390 (6th Cir. 2008) (omission actionable only if disclosure is required by statute or to make another statement not materially misleading).
[22] *See* PSC, ¶ 32(a)-(h).
[23] PSC, ¶ 33(a)-(g).
[24] PSC, ¶ 64.
[25] *Id.*

7

residential mortgages and residential real estate owned," and that it was "unable to estimate the potential accounting effects that might result from the investigation."[26] And the PSC admits that on May 1, 2008, the Bank expanded the scope of the periods impacted by the investigation and disclosed that the accounting for deliquent single family loans serviced by third parties, REO, and a loan modification program to mitigate foreclosure losses would be revised.[27] These disclosures were followed by steep drops in stock price.[28] In short, the PSC shows that by as early as November 26, 2007 and March 14, 2008, and by no later than May 1, 2008, sufficient storm warnings existed to incite Preferreds to open the Registration Statement and discover the alleged ALLL and accounting "omissions" on which their Securities Act claims are based. Even cases cited by Preferreds have held these types of disclosures establish inquiry notice as a matter of law.[29]

Desperate to salvage their claims from limitations, Preferreds unequivocally state that "the stock price declines pre-dating August 2008 were *unrelated to the Offering.*" In other words, Preferreds are willing to admit there is no negative causation for *any* of the decline from $25 to $4.735—over 81% of Preferreds alleged Securities Act damages—in order to eliminate that steep stock price decline as one of the storm warnings imparting a duty of inquiry.[30] Even if the PSC contained a similar disclaimer—and it does not[31]—dismissal is required. Preferreds claim they could not have known about their Securities Act claim until the Bank's August 6,

---

[26] PSC, ¶ 72.
[27] PSC, ¶ 73 & ¶ 35.
[28] PSC, ¶¶ 109-110.
[29] *See In re Dynegy,* at 829, 862-63; *see also In re Fleming Cos. Inc. Sec. & Deriv. Litig.*, 2004 WL 5278716 at *44 & 47 (inquiry notice established as a matter of law for Securities Act claims based on (i) financials incorporated into the registration statement, (ii) misleading statements relating to current and historical operating conditions, and (iii) failure to comply with GAAS, where the petition showed defendant issued a press release relating to declining prices, analysts downgraded defendant's investment rating and questioned reported per-share earnings, and the press reported defendant's practice of taking unauthorized deductions from vendor invoices).
[30] *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F.Supp.2d 429, 437 (S.D.N.Y. 2003) (dismissal for negative causation proper when security lost 74% of its value prior to alleged corrective disclosure).
[31] To the contrary, the PSC unequivocally states that "the market for Franklin's preferred stock promptly digested current information … and reflected such information in the Bank's stock price." PSC, ¶ 108.

2008 press release.[32] While that press release (1) specifically states that the Bank reviewed financial information for 2004, 2005, 2006 and the first three quarters of 2007, and (2) states that the first three quarters of 2007 and year-end 2006 financial statements and report should not be relied on, it does ***not*** state that the 2006 Registration Statement or any of the financial statements contained within it are inaccurate.[33] If the August 6, 2008 press release is sufficient to place Preferreds on inquiry notice, as Preferred concede, then the dramatic increase in ALLL, steep price declines, and disclosures of accounting issues prior to May 1, 2008 must also be sufficient to impose inquiry notice. If, however, the August 6, 2008 press release is insufficient to establish inquiry notice, the subsequent decline in Franklin's preferred stock price to a penny per share cannot be attributed to the Registration Statement.[34] Preferreds' Securities Act claims are either barred by limitations or by negative causation. Either way, Preferreds' claims must be dismissed.

### III. Incorporation by Reference

In further support of their Motion, Directors adopt and incorporate by reference the arguments and authorities set forth in in the reply of Ranieri as to fraud by hindsight, position pleading (including but not limited to the arguments set forth in Section I(B)(1), (2) & (4) of Ranieri's reply), materiality, and control person liability; in the reply of Nocella as to lack of severe recklessness in respect to the alleged accounting issues and FDIC concerns, materiality, loss causation, and negative causation; and in the reply of McCann as to lack of severe recklessness in respect to the alleged accounting issues and FDIC concerns.

---

[32] Response at 62-63.
[33] *See* PSC at ¶ 77 (citing Aug. 6, 2008 Form 8-K (attached to App., Tab 11).
[34] Neither the PSC nor the Response contains any allegation of a corrective disclosure relating to the Registration Statement after the August 6, 2008 press release until the July 2009 OIG Report. The PSC admits that after November 2008, the Bank's stock traded "at a penny per share." PSC, ¶ 110. Thus, to the extent Preferreds' claims are not barred by limitations, negative causation requires dismissal of all claims seeking recovery for a decline in stock price from a starting point of greater than a penny per share. *In re Merrill*, 289 F.Supp.2d at 437.

## CONCLUSION

As set forth above and in Director's Motion, Preferreds' live complaint fails to state any claim against any Director, and should be dismissed, with prejudice, in its entirety.

Respectfully submitted,

**SCOTT DOUGLASS & McCONNICO, LLP**

  /s/ Stephen E. McConnico
Stephen E. McConnico
State Bar No. 13450300
Cynthia Saiter Connolly
State Bar No. 00797367
600 Congress Ave., Suite 1500
Austin, TX 78701
Phone: (512) 495-6300
Fax: (512) 474-0731

*Attorney for Defendants Lawrence Chimerine, David M. Golush, James A. Howard, Alan E. Master, Robert A. Perro, William Rhodes and John B. Selman*

**CERTIFICATE OF SERVICE**

  This is to certify that a true and correct copy of the foregoing instrument was served upon the following via ECF filing notice in accordance with Rule 5 of the Federal Rules of Civil Procedure on this 4th day of June 2010:

Andrea D. Levin (Kim)
Diamond McCarthy et al
909 Fannin  Ste. 1500
Houston, Texas   77010
akim@diamondmccarthy.com

Barrett H. Reasoner
Sam W. Cruse III
Gibbs Bruns LLP
1100 Louisiana  Ste. 5300
Houston, Texas   77002
breasoner@gibbsbruns.com
scruse@gibbsbruns.com

J. Allen Carney
Darrin Williams
Randall K. Pulliam
Cauley Bowman et al.
11311 Areade Drive, Ste. 200
Little Rock, Arkansas   72211
acarney@cauleybowman.com
dwilliams@cauleybowman.com
rpulliam@cauleybowman.com

William Fred Hagans
Hagans Burdine PC
3200 Travis, 4th Floor
Houston, Texas   77006
fhagans@hagans-law.com

Farbod-Moridani
James J. Farrell
Terri L. Lilley
Latham & Watkins LLP
355 South Grand Ave.
Los Angeles, California 90071
farbod.moridani@lw.com
james.farrell@lw.com
Terri.lilley@lw.com

George W. "Billy" Shepherd, III
Cruse Scott, et al.
2777 Allen Parkway, 7th Floor
Houston, Texas  77019
bshepherd@crusescott.com

James A. Harrod
Wolf Popper LLP
845 Third Avenue
New York, NY   10022
jharrod@wolfpopper.com

Thomas C. Fitzhugh, IV
Ware Jackson et al
2929 Allen Pkwy, 42nd Floor
Houston, Texas   77019
champefitzhugh@warejackson.com

Jonathan C. Dickey
Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, NY   10166
JDickey@gibsondunn.com

M. Byron Wilder
Samantha A. Lunn
Gibson Dunn Crutcher LLP
2100 McKinney Ave.  Ste. 1100
Dallas, Texas   75201-6911
bwilder@gibsondunn.com
slunn@gibsondunn.com

Peter Wald
Latham & Watkins
505 Montgomery St, Ste. 1900
San Francisco, California  94111-2566
Peter.wald@lw.com

Ralph M. Stone
Shalov Stone et al
485 7th Avenue, Suite 1000
New York, NY   10018
rstone@lawssb.com

712739

2

| | |
|---|---|
| Roger B. Greenberg<br>Schwartz Junell et al<br>909 Fannin Ste. 2700<br>Houston, Texas  77010<br>rgreenberg@schwartz-junell.com | David Avi Rosenfeld<br>Mario Alba, Jr.<br>Robbins Geller  Rudman & Dowd LLP<br>58 S Service Road, Ste. 200<br>Melville, NY  11747<br>malba@rrgdlaw.com<br>drosenfeld@rgrdlaw.com |
| Ronen Sarraf<br>Sarraf Gentile LLP<br>116 John St.<br>New York, NY   10038<br>ronen@sarrafgentile.com | David C. Walton<br>Robbins Geller  Rudman & Dowd LLP<br>655 W. Broadway Ste. 1900<br>San Diego, California  92101<br>davew@rgrdlaw.com |
| William B. Monahan<br>Robert Giuffra<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY   10004<br>monahanw@sullcrom.com<br>giuffrar@sullcrom.com | James G. Munisteri<br>Orin H. Lewis<br>Gardere Wynne et al<br>1000 Louisiana  Ste. 3400<br>Houston, Texas   77002-5007<br>jmunisteri@gardere.com<br>olewis@gareere.com |
| Andrew J. De Filippis<br>Brian T. Frawley<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY  10004<br>defilipopisa@sullcrom.com<br>frawleyb@sullcrom.com | |

         /s/ Stephen E. McConnico
         Stephen E. McConnico

712739