UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re FRANKLIN BANK CORP. SECURITIES LITIGATION § § § The HAROLD ROUCHER TRUST U/A § DTD 09/21/72, Individually and On Behalf of § All Others Similarly Situated, § § Plaintiff § § VS. § § RBC CAPITAL MARKETS CORP., et al., § § Defendants § | C.A. NO.: 4:08-cv-01810 CLASS ACTION |

**DEFENDANT DELOITTE & TOUCHE LLP'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S AMENDED CONSOLIDATED <u>PREFERRED STOCK PURCHASER COMPLAINT</u>**

**SHEPHERD, SCOTT, CLAWATER & HOUSTON, LLP**
George W. "Billy" Shepherd
Texas Bar No. 18219700
S.D. Tex. I.D. No. 10666
2777 Allen Parkway, 7th Floor
Houston, Texas 77019
Telephone: (713) 650-6600
Facsimile: (713) 650-1720
Email: bshepherd@sschlaw.com

**LATHAM & WATKINS LLP**
Peter A. Wald (*pro hac vice*)
James J. Farrell (*pro hac vice*)
Terri L. Lilley (*pro hac vice*)
Farbod Moridani (pro hac vice)
355 South Grand Ave.
Los Angeles, CA 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

**ATTORNEYS FOR DEFENDANT
DELOITTE & TOUCHE LLP**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT.......................................................................................................................2

    A. The Scienter Pleading Requirement As to Independent Auditors Is Stringent..................................................................................................................2

    B. The Complaint's Allegations Do Not Meet the PSLRA Standard .........................2

    C. Unfounded Arguments in Plaintiff's Opposition Do Not Establish Scienter ..........3

        1. Plaintiff's "Red Flags" Cannot Establish Scienter.......................................4

        2. The "Totality of the Circumstances" Does Not Establish Scienter .............6

III. CONCLUSION..................................................................................................................10

# **INDEX OF AUTHORITIES**

**Page(s)**

**CASES**

*Abrams v. Baker Hughes, Inc.*,
   292 F.3d 424 (5th Cir. 2002) .................................................................................................. 8

*City of Dallas v. Hall*,
   No. 3:07-CV-0060-P, 2007 WL 3125311 (N.D. Tex. Oct. 24, 2007) ....................................... 3

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir. 1990) .................................................................................................. 2

*DSAM Global Value Fund v. Altrist Software*,
   288 F.3d 385 (9th Cir. 2002) ......................................................................................... 3, 4, 5, 9

*Edward J. Goodman Life Income v. Jabil Cir.*,
   594 F.3d 783 (11th Cir. 2010) ................................................................................................. 7

*Fait v. Regions Fin. Corp.*,
   No. 09 Civ. 3161, 2010 1883487 (S.D.N.Y. May 20, 2010) ................................................. 4, 9

*Fener v. Belo Corp.*,
   425 F. Supp. 2d 788 (N.D. Tex. 2006) .................................................................................... 5

*Fin. Acquisition Partners, L.P. v. Blackwell*,
   No. 3:02-CV-1586-K, 2004 WL 2203253 (N.D. Tex. Sept. 29, 2004), *aff'd*, 440 F.3d
   278 (5th Cir. 2006) .................................................................................................................. 4

*Graham v. Barriger*,
   No. 08 Civ. 9357 (PKC), 2009 WL 3852461 (S.D.N.Y. Nov. 17, 2009) ................................. 5

*In re aaiPharma, Inc. Sec. Litig.*,
   521 F. Supp. 2d 507 (E.D.N.C. 2007) ..................................................................................... 9

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004) .................................................................................. 2, 4

*In re Australia & New Zealand Banking Group Ltd. Sec. Litig.*,
   No. 08 Civ. 11278(DLC), 2010 WL 1875728 (S.D.N.Y. May 11, 2010) ............................... 10

*In re Dell Inc., Sec. Litig.*,
   591 F. Supp. 2d 877 (W.D. Tex. 2008) ......................................................................... 3, 4, 5, 6

*In re Dothill Sys. Corp. Sec. Litig.*,
   No. 06-CV-228, 2009 WL 734296 (S.D. Cal. Mar. 18, 2009) ................................................. 5

*In re Downey Sec. Litig.*,
  No. CV 08-3261-JFW, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ........................................ 4

*In re Fleming Cos. Inc. Securities and Derivative Litigation*,
  No. CIVA503MD1530, 2004 WL 5278716 (E.D. Tex. June 16, 2004) ...................................... 7

*In re Impac Mortgage Holdings, Inc.*,
  554 F. Supp. 2d 1083 (C.D. Cal. 2008) .................................................................................... 4

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) ..................................................................................................... 2

*Ind. Elec. Workers' Pension Trust v. Shaw Group*,
  537 F.3d 527 (5th Cir. 2008) .....................................................................................................

*Kunzweiler v. Zero.net, Inc.*,
  No. 3:00-CV-2553-P, 2002 WL 1461732 (N.D. Tex. July 3, 2002) .......................................... 3

*Lain v. Evans*,
  123 F. Supp. 2d 344 (N.D. Tex. 2000) ..................................................................................... 6

*Ley v. Visteon*,
  543 F.3d 801 (6th Cir. 2008) (same) .................................................................................... 3, 8

*Melder v. Morris*,
  27 F.3d 1097 (5th Cir. 1994) ............................................................................................ 2, 3, 6

*Nappier v. PricewaterhouseCoopers, LLP*,
  227 F. Supp. 2d 263 (D.N.J. 2002) ........................................................................................... 4

*Reiger v. PricewaterhouseCoopers LLP*,
  117 F. Supp. 2d 1003 (S.D. Cal. 2000), *aff'd sub nom DSAM Global Value Fund v.
  Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002) ............................................................... 4, 5

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) .................................................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .................................................................................................................. 6

*Umsted v. Andersen LLP*,
  No. Civ. A. 3:02CV496M, 2003 WL 222621 (N.D. Tex. Jan. 28, 2003) ............................... 5, 6

*W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
  344 Fed. Appx. 717 (2d Cir. 2009) ....................................................................................... 3, 9

**STATUTES**

15 U.S.C. § 78u-4 .................................................................................................................. 3

**OTHER AUTHORITIES**

AU § 316.09 ........................................................................................................................... 9

**I.      INTRODUCTION**

Plaintiff has repeatedly admitted its motivation for belatedly naming Deloitte & Touche LLP ("D&T") as a defendant here:  It fears that Franklin Bank's insurance policy will be inadequate,[1] and it seeks deeper pockets.  Unsurprisingly then, the allegations against D&T in the Amended Consolidated Preferred Stock Purchaser Complaint ("Complaint") are hopelessly flawed.[2]  As detailed in D&T's Motion to Dismiss, the Complaint does not say a *single word* about D&T in its scienter allegations.  The Complaint alleges nothing to establish that D&T knew of fraud at Franklin Bank in 2006, long before later events led to Franklin Bank's failure.

In its Opposition, Plaintiff argues that the Court should infer D&T's scienter from: (1) purported "red flags," (2) a projected restatement, (3) simple accounting errors, (4) D&T's familiarity with the Bank's books and records, and (5) the bank regulators' assessment of the Bank.  No such inference is proper for multiple reasons.  First, the focus of the Court's inquiry here must be on the Complaint, not Plaintiff's Opposition, and there is not a single assertion anywhere in the Complaint that D&T acted with scienter.  Second, such arguments are rejected routinely as insufficient bases for alleging scienter.  Third, Plaintiff's scienter arguments are inaccurate and disproven by the facts alleged and documents cited in Plaintiff's own Complaint.

Thus, the unsupported arguments in Plaintiff's Opposition cannot raise a strong inference of scienter as to D&T.  For example, the so-called "red flags" are simply business risks that were fully disclosed in the Bank's SEC filings and could not have put D&T on notice of the existence of any alleged fraud.  The Bank's proposed restatement of its 2006 financial statements did not arise until August 2008, almost 17 months after D&T issued its audit opinion, and cannot

---

[1]      Pl. Opp. to Jt. Mot. to Strike (Docket No. 193) at 2 (March 4, 2010) (FDIC competing for "the same limited fund" from which Plaintiff may recover) ("Motion to Strike"); *see also* D&T Mot. to Dismiss at 11-13 (procedural history leading to D&T's becoming a defendant).

[2]      Unless otherwise stated, "¶ __" or "¶¶ __" refers to paragraphs of the Complaint; within quotations, all internal citations and quotation marks are omitted and all elisions, emphases, or modifications are added.  Further, all references to "RJN" denote D&T's Request for Judicial Notice in Support of its Motion to Dismiss with Prejudice Plaintiffs' Amended Consolidated Preferred Stock Purchaser Complaint (Docket No. 182, filed Mar. 5, 2010).

support an inference that D&T's 2006 opinion was knowingly false or grossly reckless. Similarly, the 2008 OIG Report does not find fault with D&T's 2006 audit opinion. To the contrary, the OIG Report criticized the Bank for failing to issue audited financial statements for *2007*, a finding Plaintiff distorts into an unfounded attack on D&T's *2006* audit. Thus, the unsupported arguments in the Opposition do not raise a strong inference of scienter as to D&T.

## II.     ARGUMENT

### A.     The Scienter Pleading Requirement As to Independent Auditors Is Stringent

In the scant three pages of the Opposition addressing whether scienter was pled adequately as to D&T, Plaintiff expends most of its effort attempting to discount the controlling legal standard. That effort, however, is contradicted by Plaintiff's own cases, which state: "For recklessness on the part of a non-fiduciary accountant to satisfy securities fraud scienter, such recklessness must be conduct that is highly unreasonable, representing an extreme departure from ordinary care [and] *requires a showing that the auditor's practices amounted to a pretend[ed] audit*." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 239 (S.D.N.Y. 2004) (second alteration in original).[3] Put simply, it takes very damning facts to raise a *strong inference* that an independent auditing firm would risk its "valuable reputation for honesty and careful work" for no other reason than to inflate its client's stock price.[4]

### B.     The Complaint's Allegations Do Not Meet the PSLRA Standard

The PSLRA requires that Plaintiff's "*complaint* shall, with respect to each act or omission alleged . . . state with particularity facts giving rise to a strong inference that the

---

[3]    *See* Opp. at 52 (citing *In re AOL Time Warner* for the opposite proposition).

[4]    *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427 n.7 (9th Cir. 1994); *see also Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994) ("it seems extremely unlikely that [the auditor] was willing to put its professional reputation on the line by conducting fraudulent auditing work for [the company. W]e will not indulge irrational inferences of the firm's fraudulent intent based on these generic allegations.") *citing with approval DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) ("An accountant's greatest asset is its reputation for honesty, followed closely by its reputation for careful work. Fees for two years' audits could not approach the losses [the auditor] would suffer from a perception that it would muffle a client's fraud.").

-2-

defendant acted with [scienter]." 15 U.S.C. § 78u-4(b)(2). As to D&T, the Complaint alleges only that D&T was the Bank's outside auditor and that it issued an Audit and Attestation Report for the 2006 fiscal year (the "2006 Reports") (¶¶ 22, 45, 47), which Plaintiff contends must have violated GAAS because D&T failed to detect Franklin Bank's accounting errors (¶¶ 48, 99-105). None of these allegations speaks to whether D&T acted with scienter. In fact, the Fifth Circuit rejected similar, albeit more detailed, pleadings as insufficient even before the stricter PSLRA standard was adopted. *Melder*, 27 F.3d 1097 at 1103-04 (rejecting allegations that "the accountants violated particular accounting standards," and "either obtained knowledge of, or recklessly disregarded," the facts revealing a purported securities fraud).

Plaintiff's claim ultimately relies entirely on the fact that more than a year after Deloitte's 2006 Reports were issued, Franklin Bank announced its intention to restate its audited financial statements. That restatement was never completed. The fact that Franklin Bank anticipated a restatement cannot satisfy the stringent standard Plaintiff must meet to plead scienter as to D&T. The case law in this Circuit, and throughout the country, unambiguously holds that a restatement of audited financial statements simply is not enough to state a claim of fraud against the auditor.[5]

### C. Unfounded Arguments in Plaintiff's Opposition Do Not Establish Scienter

Plaintiff's arguments in its Opposition regarding D&T's scienter are not alleged in its Complaint, and Plaintiff may not correct its defective pleadings with arguments in a brief. *City of Dallas v. Hall*, No. 3:07-CV-0060-P, 2007 WL 3125311, at *11 (N.D. Tex. Oct. 24, 2007). Thus, Plaintiff's Complaint is insufficient on its face and must be dismissed. Yet even if they had been alleged in the Complaint, these scienter arguments do not support a claim against D&T.

---

[5] *See, e.g.*, *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 904 (W.D. Tex. 2008) ("*In re Dell*") ("existence of a restatement does not by itself satisfy the scienter requirement"); *see also W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. Appx. 717, 720-21 (2d Cir. 2009) (unpublished) (affirming dismissal of fraud claim against auditor for failure to plead scienter where audited financial statements had been restated); *Ley v. Visteon Corp.*, 543 F.3d 801, 818 (6th Cir. 2008) (same); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390-91 (9th Cir. 2002) (same).

### 1. Plaintiff's "Red Flags" Cannot Establish Scienter

Plaintiff's Opposition asserts that several "red flags" should have made D&T more "skeptical" in its audit work. A mere assertion that D&T should have been more skeptical falls far short of a cogent and compelling inference that its audit amounted to a "pretend audit" or that D&T was severely reckless. (*See supra* Part II.A.) Moreover, the factors Plaintiff identifies are not red flags. A fact is not a "red flag" that may contribute to an inference of scienter unless it would conspicuously put the auditor on the trail of the purported fraud.[6]

The "red flags" cited by Plaintiff are nothing more than indicators of business risk. When similar factors are alleged, courts routinely reject them as insufficient to establish scienter.[7] More importantly, these business decisions and risk factors identified by Plaintiff were publicly disclosed by Franklin Bank[8] and therefore cannot form the basis for a *fraud* claim.[9]

---

[6] *See In re Dell*, 591 F. Supp. 2d at 904 (defining red flags as "facts which come to the attention of the auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors."); *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1008-09 (S.D. Cal. 2000), *aff'd sub nom DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002) (red flags must be "suspicious and conspicuous"); *Nappier v. PricewaterhouseCoopers, LLP*, 227 F. Supp. 2d 263, 278 (D.N.J. 2002) (red flags "must be closer to smoking guns than mere warnings signs"). Even Plaintiff's own authority recognizes that red flags must be "sufficiently attention-grabbing to have alerted a reasonable auditor to the audited company's shenanigans." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d at 240.

[7] *See Fin. Acquisition Partners, L.P. v. Blackwell*, No. 3:02-CV-1586-K, 2004 WL 2203253, at *21 (N.D. Tex. Sept. 29, 2004), *aff'd*, 440 F.3d 278 (5th Cir. 2006) (rejecting red flag allegations such as: (1) 8.98% past due rate on loans in the issuer's conventional lending portfolio; and (2) issuer's disclosure that its current warehouse lender would be terminating its financing for purchases of loan portfolios); *In re Impac Mortgage Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1100 (C.D. Cal. 2008) ("The fact that [the company] was operating in a fast-paced business environment in which it took on riskier clients does not raise an inference" of scienter); *Fait v. Regions Fin. Corp.*, No. 09 Civ. 3161 LAK, 2010 WL 1883487, at *5 (S.D.N.Y. May 20, 2010) (rejecting allegation regarding "high risk of loss inherent in [company's subprime] mortgage loan portfolio"); *In re Downey Sec. Litig.*, No. CV 08-3261-JFW, 2009 WL 2767670, at *4 (C.D. Cal. Aug. 21, 2009) (rejecting allegations regarding inherent risk in subprime mortgage company's loan portfolio).

[8] *See, e.g.*, RJN, Ex. E at 20 ("Our small business, commercial real estate and consumer loan portfolios have significant geographic concentration in Texas"); *id.* ("Our loan portfolio may be significantly affected by the economy of California."); *id.* at 36 ("[F]or single family mortgages we review our portfolio to determine those loans that have multiple risk factors based on Interagency guidance on non-traditional mortgages and apply an additional credit allowance

Furthermore, even an actual red flag does not indicate scienter unless coupled with particularized allegations that the auditor knew of the alleged red flags and deliberately ignored them. *See In re Dell*, 591 F. Supp. 2d at 901, 904 (plaintiff must allege that auditor "deliberately ignor[ed]" red flags); *Reiger*, 117 F. Supp. 2d at 1012 (rejecting "red flag" allegations where plaintiff did not allege what the auditor learned "from a client or third party informing the accountant of the client's fraud, or from contemporaneous statements made by the accountant").

The Complaint here alleges no particularized facts showing that D&T knew of, but deliberately ignored, any "red flag." It does not "identify any letters, notes, memos, telephone calls, or conversations that expressly or even impliedly suggest [the auditor] was on notice" of purported risk factors, let alone fraud. *Id.* Nor does Plaintiff allege how D&T's response to any of the risks it identifies was improper. Plaintiff merely asserts that "D&T was aware of the . . . risk factors" and, thus, should have been "more skeptical." (Opp. at 54). That conclusory argument[10] would not suffice even if it were alleged in the Complaint.[11] Plaintiff's purported "red flags" do not support an inference of scienter against D&T.

Plaintiff's "red flags" indicate only that Franklin Bank's business strategy was risky, which at most suggests corporate mismanagement, not fraud.[12] A strong inference of scienter

---

factor based on the additional risks.").

[9]     *See, e.g.*, *Graham v. Barriger*, No. 08 Civ. 9357 (PKC), 2009 WL 3852461, at *13 (S.D.N.Y. Nov. 17, 2009) ("risk disclosure that cautioned investors of a later-realized loss does not support a claim of [10(b) claim]."); *In re Dothill Sys. Corp. Sec. Litig.*, No. 06-CV-228 JLS, 2009 WL 734296, at *9 (S.D. Cal. Mar. 18, 2009) (granting motion to dismiss in part because "detailed risk disclosure . . . negates an inference of scienter. Here, [the company] disclosed the precise risk of which Plaintiffs complain.").

[10]     Indeed, courts reject even more specific assertions of this type where the complaint does not allege facts to support the plaintiff's conclusion. *DSAM Global Value Fund*, 288 F.3d at 390 (dismissing complaint in which plaintiff had asserted that the auditor "had in its hands the very documentation that clearly showed [the issuer's specific GAAP] violation . . . , yet did not see the obvious.").

[11]     *Umsted v. Andersen LLP*, No. Civ. A. 3:02CV496M, 2003 WL 222621, at * (N.D. Tex. Jan. 28, 2003) ("The red flags [intended] as a basis for finding 'severe recklessness' are not pleaded with particularity, nor is the basis for the conclusion of what [auditor] 'knew' set out in the Complaint. Such deficiencies are fatal under the PSLRA.").

[12]     *Fener v. Belo Corp.*, 425 F. Supp. 2d 788, 816 (N.D. Tex. 2006) ("Mismanagement alone

may not be based on such hindsight allegations as a matter of law.[13]  Moreover, Plaintiff's argument that Franklin Bank was an exceptionally risky institution in 2006 is belied by the OIG report cited in the Complaint, which establishes that in December 2006, the FDIC concluded that Franklin Bank was a "safe and sound" institution.[14]  Thus, Plaintiff's purported "red flags" were not the sort of facts that would put a reasonable auditor on notice "that the audited company was engaged in wrongdoing."  *In re Dell*, 591 F. Supp. 2d at 904.

### 2.   The "Totality of the Circumstances" Does Not Establish Scienter

Conceding that no specific allegation pled in the Complaint suffices to establish D&T's scienter, Plaintiff argues that the totality of *certain* circumstances "contributes" to an inference that D&T was severely reckless.  (Opp. at 54.)  Plaintiff is incorrect.  First, plaintiffs cannot limit the relevant totality of the circumstances for purposes of establishing scienter to a few hand-picked events, while ignoring all other events that undermine an inference of scienter.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007).  Second, the "circumstances" enumerated in Plaintiff's Opposition do not support a strong inference of scienter for the reasons set forth below.  Third, the allegations pled in the Complaint and the documents incorporated by reference affirmatively undercut any possibility that D&T had a mental state that "approximated actual intent to aid" in any fraud by Franklin Bank.  *Dell*, 591 F. Supp. 2d at 899-900.

*Magnitude of the anticipated restatement.*  Plaintiff's argument that Franklin's anticipated restatement shows D&T's scienter is legally and factually flawed.  (Opp. at 54.)  It is

---

is not enough to constitute securities fraud."); *Lain v. Evans*, 123 F. Supp. 2d 344, 350 (N.D. Tex. 2000) ("Corporate mismanagement does not, standing alone, give rise to a 10b-5 claim.").

[13]  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867-68 (5th Cir. 2003) (rejecting scienter allegations based on hindsight); *Melder*, 27 F.3d at 1101 n.8 ("These allegations boil down to plaintiffs' attempt to chastise as fraud business practices that, in hindsight, might have been more cautious.  Misjudgments are not, however, fraud."); *Umsted*, 2003 WL 222621, at *4 (granting motion to dismiss where the plaintiff "merely argue[d] from hindsight that [the auditor] should have put the facts together to find fraud on the part of the Company").

[14]  RJN, Ex. B at 3, 11 (Dec. 2006 CAMELS ratings of 2).  A rating of 2 indicates a "fundamentally sound" financial institution, as to which the regulator has "no material supervisory concerns"  (*See* Opp., Greenberg Decl., Ex. G at 6 (Doc. 212-7).)

well established that a restatement alone does not establish scienter. *See supra* at 3 & n.5; *see also Edward J. Goodman Life Income v. Jabil Cir.*, 594 F.3d 783, 792 (11th Cir. 2010) ("This pleading strategy—picking the metric that will yield the highest percentage values—adds nothing to the inference of scienter that the shareholders attempt to create."). Plaintiff's reliance on *In re Fleming Cos. Inc. Securities and Derivative Litigation*, No. CIVA503MD1530, 2004 WL 5278716 (E.D. Tex. June 16, 2004) ("*Fleming*") is misplaced because that case, which is not controlling here, does not hold that a large restatement alone can establish scienter. In *Fleming*, the court noted that a massive restatement—adjusting 79% of the company's reported income— was one factor among many others to consider when evaluating scienter allegations. *Id.* at *41. But there, unlike here, the restatement of the majority of the company's income supported the other facts suggesting that those defendants had actual, contemporaneous knowledge that the financial statements were false when issued. *Id.*

Here, Franklin's anticipated restatement is very different. First, five out of the six items proposed to be restated had no impact on the 2006 audited financial statements,[15] so they are completely irrelevant to D&T's scienter. Second, the one item in the proposed restatement that was expected to impact 2006 does not show that the defendants here had actual contemporaneous knowledge that the 2006 financial statements were misstated. To the contrary, the actual terms of the Form 8-K announcing restatement made clear that the Bank had no knowledge that a portion of its loans were delinquent because the servicer[16] continued to make payments to the

---

[15] RJN, Ex. C at 4 ("impact of REO Accounting is expected to be limited to the financial statements for the [first three quarters of 2007]."); *id.* ("impact of Loan Modification Accounting is expected to be limited to the financial statements for the [second and third quarters of 2007]."); *id.* at 5 ("impact of Investment Securities Accounting is expected to be limited to the financial statements for the [third quarter of 2007]."); *id.* ("impact of the BOLI Accounting is expected to be limited to the financial statements for the [first three quarters of 2007].").

[16] A loan servicer is responsible for collecting the scheduled loan payments from the borrowers, transferring the principal and interest payments to the investors, and has lead responsibility for finding a solution when a borrower is in arrears. *See* Philadelphia Federal Reserve Board definition at http://www.philadelphiafed.org/community-development/publications/cascade/66/09_glossary-of-terms.cfm.

Bank on loans where the borrowers had stopped paying. (RJN, Ex. C at 3.) In the remarkable case where the servicer pays even where the borrowers have stopped, it is equally (if not more) plausible to infer that defendants, including the auditors, had no knowledge that those loans were delinquent.

In any event, the Fifth Circuit has never concluded that the magnitude of a restatement may contribute to a finding of scienter, though it has noted that a restatement of modest proportions undermines any inference of scienter. *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 438-39 (5th Cir. 2002) (Parker, J., concurring). Franklin Bank's proposed restatement for 2006 was not as large as Plaintiff suggests. In effort to focus on dramatic numbers, Plaintiff seizes upon certain effects the Bank expected the restatement would have on various *unaudited* measures of asset quality. (Opp. at 47; RJN, Ex. C at 9.) The anticipated effect of the restatement on Franklin Bank's 2006 consolidated balance sheet was small, decreasing the Bank's more than $5.5 ***billion*** in total assets as of December 31, 2006 by only $678,000, or approximately 0.012%. (RJN, Ex. C, at 7.) The total anticipated adjustments to Franklin Bank's 2006 income statement were projected to decrease net income by 5.8%. (*See id.* at 8.) That modest proposed adjustment does not imply that D&T must have known of but disregarded accounting errors.[17]

***Simplicity and obviousness of GAAP errors.*** Plaintiff argues that the Bank's GAAP violations purportedly were so simple and obvious that they prove D&T acted with scienter. (Opp. at 54.) No facts are alleged to explain Plaintiff's unsupported conclusion that the GAAP errors in Franklin Bank's 2006 financial statements were "simple" or "obvious." Identifying them was not simple; it took Franklin Bank's audit committee, a "Special Accounting Master," and "other special accounting advisors" about six months to determine that the Bank's financial statements might contain accounting errors. (RJN, Ex. C at 2.). Nor was the only accounting issue relevant to the 2006 financial statements (Delinquent Loan Accounting) "obvious."

---

[17] *See, e.g.*, *Ley*, 543 F.3d at 812 (noting that a restatement of a similar magnitude was "such a low percentage" that it did not "cry out scienter").

Franklin Bank's continued receipt of principal and interest payments from its loan servicing companies—the entities in direct contact with the borrowers—regardless of whether borrowers on the underlying loans made payments or not, masked the very existence of the delinquencies. (*Id.* at 3.) Finally, contrary to Plaintiff's conclusory assertion, the Fifth Circuit has recognized that accounting issues like those implicated by the Bank's restatement (including the identification and valuation of loan losses for large loan portfolios) are highly judgmental and complex.[18]

*D&T's Knowledge of Franklin Bank.* Mere access to information is not enough to establish scienter. *DSAM Global Value Fund*, 288 F.3d at 390-91 (dismissing complaint alleging the auditor "had in its hands the very documentation that clearly showed" the fraud); *In re aaiPharma, Inc. Sec. Litig.*, 521 F. Supp. 2d 507, 513 (E.D.N.C. 2007) (having "broad access to every book in a library" does not imply that one "has read and chosen to ignore facts contained in a particular book"). D&T's familiarity with Franklin Bank or its books and records does not establish fraudulent intent. The more cogent and compelling inference is that D&T was misled regarding any wrongdoing.[19]

*The 2008-09 Documents.* The allegations and documents incorporated by reference in the Complaint further undermine any inference that D&T acted with scienter. The Complaint relies on two documents in an effort to establish scienter, the February 19, 2008 Wolfe Letter and

---

[18] *See Ind. Elec. Workers' Pension Trust v. Shaw Group*, 537 F.3d 527, 536 (5th Cir. 2008) (Valuations of assets [and] the application of sophisticated accounting standards like "fair value," leave broad scope for judgment and informed estimation; this is another way of saying that determinations on such matters can differ reasonably and sizably."); *see also Fait v. Regions Fin. Corp.*, 2010 WL 1883487, at *4 & n.38 (discussing difficulty of valuing loan portfolios and citing additional authorities).

[19] *See W. Va. Inv. Mgmt. Bd.*, 344 Fed. Appx. at 719-20 (more compelling inference was that the company "concealed its fraud from Pricewaterhouse, just as it concealed its fraud from investors"); AU § 316, at 316.09 *Consideration of Fraud in a Financial Statement Audit* (effective Dec. 15, 2002) ("Typically, [those] engaged in fraud will take steps to conceal the fraud from the auditors."); *id.* at 316.10 ("Fraud also may be concealed through collusion[, which] may cause the auditor who has properly performed the audit to conclude that evidence provided is persuasive when it is, in fact, false.").

the July 2009 OIG Report.  (*See* D&T M. to Dismiss at 19-23.)[20]  But Plaintiff may not rely on those documents from a year or more after D&T's Reports to imply that D&T was aware of purported fraud at Franklin Bank when D&T issued its 2006 Reports.  *See In re Australia & New Zealand Banking Group Ltd. Sec. Litig.*, No. 08 Civ. 11278(DLC), 2010 WL 1875728, at *3, 6 (S.D.N.Y. May 11, 2010) (sanctioning plaintiff's counsel for mischaracterizing a March *2008* report as supporting an allegation of knowledge by defendants in March *2007*).

Moreover, the Wolfe Letter and OIG Report indicate that *D&T* was misled about any wrongdoing at Franklin Bank (¶ 82 & Ex. 2 at 6; D&T M. to Dismiss at 9-10, 20-21) and that the Bank's examiners found no fault with D&T's work (D&T M. to Dismiss at 22-23; RJN, Ex. B at 22-24).  The OIG Report also disproves Plaintiff's claim that the FDIC "conclu[ded] that the outside auditing of the Bank was unsatisfactory."  (Opp. at 54 & n.27.)  The FDIC never reached any such conclusion.  Plaintiff cites page 22 of the OIG Report in support of this claim, but the Report shows that FDIC examinations in 2003, 2004, 2005, 2006, and 2007 found no fault with the Bank's external audits.  (RJN, Ex. B at 22.) The FDIC took issue with the external audit only in 2008 after the Bank failed to file audited financial statements for FY2007.  (*Id.*)

For all these reasons, Plaintiff has failed to raise a strong inference of scienter as to D&T.

## III.   CONCLUSION

Plaintiffs have failed to plead facts that can support a strong inference of scienter with respect to D&T, as required by Rule 9(b) and the PSLRA.  Accordingly, the single 10(b) claim against D&T should be dismissed with prejudice.

---

[20]   A third document, an FDIC examination report, was stricken by the Court and is not addressed here. (Mem. & Order, (Docket No. 214) at 2 (May 12, 2010) (striking allegations).

Dated:  June 4, 2010	Respectfully submitted,

            **SHEPHERD, SCOTT, CLAWATER & HOUSTON, LLP**

              /s/ George W. "Billy" Shepherd, III
            George W. "Billy" Shepherd
            Texas Bar No. 18219700
            S.D. Tex. I.D. No. 10666
            2777 Allen Parkway, 7th Floor
            Houston, Texas 77019
            Telephone:   (713) 650-6600
            Facsimile:    (713) 650-1720
            Email:  bshepherd@sschlaw.com

            **LATHAM & WATKINS LLP**

            James J. Farrell (admitted *pro hac vice*)
            Terri L. Lilley (admitted *pro hac vice*)
            Farbod Moridani (admitted *pro hac vice*)
            355 South Grand Ave.
            Los Angeles, CA 90071
            Phone: (213) 485-1234
            Fax: (213) 891-8763

            Peter Wald (admitted *pro hac vice*)
            Attorney-in-Charge
            505 Montgomery St., Ste. 1900
            San Francisco, CA 94111-2566
            Phone: (415) 395-8006
            Fax: (415) 395-8095

            **ATTORNEYS FOR DEFENDANT**
            **DELOITTE & TOUCHE LLP**

## Certificate Of Service

   I hereby certify that on Friday, June 4, 2010, a true and correct copy of the foregoing instrument was forwarded via electronic filing to all ECF registrants in this matter.

             /s/ George W. "Billy" Shepherd
           Billy Shepherd